IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BENEFICIAL INNOVATIONS, INC. § <br> § <br> v. § <br> § <br> ADVANCE PUBLICATIONS, INC., ET AL. § <br> § <br> § <br> § | Case No. 2:11- CV-229-JRG-RSP |

## REPORT AND RECOMMENDATION

Before the Court is Advance Publications, Inc., ALM Media Properties, LLC, Amazon.com, Inc., American Media, Inc., Autotrader.com, Inc., Expedia, Inc., Scripps Networks, LLC, Viacom Inc., and Village Voice Media Holdings, LLC ("Defendants") Motion for Summary Judgment of Indefiniteness (Dkt. No. 307, filed May 30, 2013.)  The Court, having reviewed the Parties' briefing and the intrinsic records of U.S. Patent Nos. 6,712,702 ("the '702 Patent") and 7,486,946 ("the '943 Patent"), hereby RECOMMENDS that Defendants' motion be DENIED for the reasons set forward below.

## APPLICABLE LAW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Any evidence must be viewed in the light most favorable to the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  Summary judgment is proper when there is no genuine dispute of material fact.  *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247-48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on an issue at trial, then the movant "must establish beyond peradventure all of the essential elements of the claim or defense to warrant [summary] judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

The "determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). "Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent." *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). "A claim is considered indefinite if it does not reasonably apprise those skilled in the art of its scope." *IPXL Holdings, L.L.C. v Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005). "Whether a claim reasonably apprises those skilled in the art of its scope is a question of law that [is] review[ed] de novo." *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008) (hereinafter "MEC").

"If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim

sufficiently clear to avoid invalidity on indefiniteness grounds." *Exxon Research*, 265 F.3d at 1375 (citations omitted). "Proof of indefiniteness requires such an exacting standard because claim construction often poses a difficult task over which expert witnesses, trial courts, and even the judges of this court may disagree." *Halliburton Energy*, 514 F.3d at 1249 (internal quotation and citation omitted). "Nevertheless, this standard is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton Energy*, 514 F.3d at 1249-250.

"A single patent may include claims directed to one or more of the classes of patentable subject matter, but no single claim may cover more than one subject matter class." *MEC*, 520 F.3d at 1374.

A claim that mixes apparatus and method claim forms is indefinite if it is unclear whether the manufacturer or seller of the claimed system might later be sued for contributory infringement for a user's use. *See IPXL Holdings, L.L.C. v Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (citing *Ex Parte Lyell*, No. 89-0461, 17 U.S.P.Q.2d 1548, 1550 (B.P.A.I. 1990) (finding mixed apparatus and method language indefinite when it was unclear whether infringement occurred when one created the system or when a user actually used the system). If it is clear that infringement only occurs at the time of use, there is no improper ambiguity and the claim is not indefinite. *See MEC*, 520 F.3d at 1374-75 (finding a claim of mixed method and apparatus language definite where functional language was used to describe the structure in which a method was used); *see also In re Katz*, 639 F.3d at 1318 (describing that the claims of *MEC* "did not create any confusion as to when the claim was directly infringed").

While it is improper to mix claim forms, an apparatus claim is "not necessarily indefinite for using functional language." *MEC*, 520 F.3d at 1375; *see also In re Schreiber*, 128 F.3d 1478 (Fed. Cir. 1997) ("a patent applicant is free to recite features of an apparatus either structurally or functionally"). An apparatus claim that simply contains functional limitations that describe a structure by reciting its capabilities is not an indefinite mixing of claim forms. *See Biosig Instruments, Inc. v. Nautilus, Inc.*, 715 F.3d 891, 904 (Fed. Cir. 2013) (finding as definite an apparatus claim that included functional language describing how a claimed heart rate monitor is held by a user, calculates the user's heart rate, and displays the user's heart rate).

The question of whether claim language is indefinite for improperly mixing claim forms turns on whether the language used is directed at user actions or system capabilities. *See In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303, 1318 (Fed. Cir. 2011) (holding a claim indefinite where, as in *IPXL*, the language was directed at user actions not system capabilities).

## DISCUSSION

Defendants argue that Claim 53 of the '702 Patent is Indefinite for improperly mixing apparatus and method limitation and that the limitation "determining that a network transmission received at the first network accessible node will be processed in a predetermined expected manner" is indefinite. Defendants also argue that Claims 1, 49, and 67 of the '943 Patent contain limitations that are indefinite. As the '943 Patent is no longer a part of the case between Beneficial Innovations and Amazon.com[1] (the only one of the Defendants remaining in the case), the Court need not address the sections of Defendants' motion directed to the '943 Patent.

---

[1] *See* Order on Joint Motion to Dismiss Certain Claims Asserted by and Between Plaintiff and Defendant Amazon.com, Inc. (Dkt. No. 386, filed October 15, 2013).

Defendants argue that the following emphasized limitations of Claim 53 of the '702 Patent improperly recite method steps in an apparatus claim:

> An apparatus for a service on a communications network, comprising:
>
> a store for storing user identification, for first and second users, said store accessible by a service providing network accessible node (SPNAN);
>
> a network interface for transmitting, via the network, from the SPNAN, first information related to communications between: (a1) the SPNAN, and (a2) a first network accessible node from which the first user communicates with the SPNAN;
>
> **wherein said first information is utilized in subsequent network communications between the SPNAN and the first network accessible node**, and **wherein said first information is stored on the first network accessible node so that it is available in a subsequent different network connection by the first user**;
>
> wherein said network interface receives, via the network, first responsive information indicative of said first information being present on said first network accessible node;
>
> **wherein said first responsive information is used for one or more of: (b1) providing the first user with access to a service offered by the SPNAN, (b2) determining that a network transmission received at the first network accessible node will be processed in a predetermined expected manner, and (b3) determining that the first network accessible node has a predetermined program element available**;
>
> a controller for providing access to an instance of a first service to the first user, wherein one or more corresponding service display representations of the first service are transmitted from the SPNAN to the first user via the first network accessible node, wherein at least most of the service display representations are interactive with the first user for providing corresponding responsive transmissions on the network via the SPNAN during the instance of the first service;
>
> **wherein said SPNAN provides a second instance of a service with the second user, wherein one or more corresponding service representations for the second instance are transmitted**

> **from the SPNAN to a second network accessible node for presenting the service representations of the second instance to the second user**, wherein the service representations of the second instance are transmitted to the second network accessible node while the first user is interacting with the instance of the first service;
>
> one or more programmatic elements for combining advertising related information with service related information to obtain a resulting combination that is in a format: (a) acceptable for being transmitted on the network by the SPNAN to at least the first user, and (b) processed by the first network accessible node so that, as a consequence of such processing, a display of an advertising presentation corresponding to said advertising information is provided on said first network accessible node, said display occurring concurrently with a display of one of the corresponding service representations for the instance of the first service, said advertising presentation presenting advertising related to a purchase of a product or service;
>
> **wherein said SPNAN receives said first responsive information for identifying the first user, and said SPNAN receives said first responsive information when the first user has reconnected the first network accessible node to the network after (i) and (ii) following: (i) said first information has been stored on the first network accessible node, and (ii) said first network accessible node has disconnected from the network**.[2]

(Dkt. No. 307, p. 4). Defendants argue that these limitations make it "impossible to determine whether this claim is infringed when the apparatus is made, or only later, if and when it is used in accordance with the recited method steps . . . ." (Dkt. No. 307, p. 4). Defendants assert "these limitations plainly describe **actions** that must be performed, including actions that must be performed **by a user** rather than by the apparatus itself." (*Id.* (emphasis in original)). Defendants finally argue that the language of Claim 53 requires action by components outside of the claimed apparatus. (*Id.* at 5).

---

[2] The Court notes that Plaintiff stipulated to a construction for this last limitation that does not require a user action: "SPNAN receives said first responsive information when the first user has reconnected the first network accessible node to the network."

Plaintiff responds with a description of how the claim language for each limitation in question describes a function of the apparatus. (*See* Dkt. No. 310, pp. 3-5).

While the language of Claim 35 is not the most straightforward ever written, its meaning is discernible with reasonable analysis. After such consideration, the Court has concluded that Defendant's arguments do not meet their burden. The language of Claim 53 does not fall squarely within the rationale that *IPXL* and *KATZ* found as indefinite (e.g. "*IPXL* ('wherein … the user uses'), . . . *Katz* [] ('wherein … callers digitally enter data' and 'wherein callers provide … data')") as Defendants suggest. *See, e.g.*, *Katz* 639 F.3d at 684. The language of Claim 53 instead resembles the language that the *Biosig* court found to be definite (e.g. "wherein, said elongate member is held by said user with one hand . . . and with the other hand of the user on said second half contacting said second live electrode") as reciting a structure that achieved specific functions. The limitations of Claim 53 that are in question do not require actions, instead they inform a person of ordinary skill how the claimed apparatus should be constructed.

Defendants argue that the limitation of Claim 53 "determining that a network transmission received at the first network accessible node will be processed in a predetermined expected manner" is indefinite. According to Defendants, this limitation is subjective as "different people have vastly different 'expect[ations].'" (Dkt. No. 307, pp. 6-8).

Plaintiff responds that properly read, in the context of the claim, the limitation is not indefinite. Plaintiff argues that its expert has explained that the language refers to the manner that the SPAN expects a network transmission to be received and that Defendants offer no evidence that a person of ordinary skill would find the language subjective.

Here, the evidence favors the Plaintiff's arguments. Read in the context of the claim and the specification, the limitation in question is not indefinite. Contrary to Defendants' argument,

- 8 -

the "predetermined expected manner" of Claim 53 is not some unknowable aesthetic or philosophical question directed to an average person (e.g. "different people have vastly different 'expect[ations]'"); the limitation is a definite statement directed to one of skill in the art constructing the claimed invention.  The claim in question is directed to an apparatus involving a communications network, and inherent in a communications network is a network protocol for processing network transmissions.  For one of ordinary skill in the art, it is unnecessary to expressly refer in the specification to a specific network protocol, as that would be taken as a given aspect of transmitting information "via a network."  In in the context of the claim "a predetermined and expected manner" is meaningful and promotes the understanding of one of skill that the transmission would be processed according to a protocol.

## CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that Defendants' Motion for Summary Judgment of Indefiniteness be **DENIED** as to Claim 53 of the '703 Patent and be **DENIED AS MOOT** as to the '946 Patent.  A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days after being served with a copy shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings, and legal conclusions accepted and adopted by the district court.  Fed. R. Civ. P. 72(b)(2); see *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 13th day of December, 2013.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE