IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| GOOGLE INC., § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | CASE NO. 2:11-cv-229-JRG-RSP |
| § | |
| BENEFICIAL INNOVATIONS, INC., § | |
| § | |
| *Defendant.* § | |

**MEMORANDUM AND OPINION**

Before the Court are the parties' trial briefs concerning whether patent exhaustion properly remains in this case. The Court held a hearing on January 15, 2014 and heard argument from both parties as well as Amazon.com ("Amazon"). Having considered the parties' written submissions and arguments, the Court finds that continued inclusion of patent exhaustion as a live issue in this case is improper. Accordingly and for the reasons below, the Court hereby **DISMISSES** the issue of patent exhaustion as between Google Inc. ("Google") and Beneficial Innovations, Inc. ("Beneficial") in this case.

This case arose from a Settlement Agreement that Google and Beneficial entered into in 2010 ("Settlement Agreement"). (*See* Dkt. No. 273-4.) Thereafter, Beneficial in the instant action sued a number of entities for infringing U.S. Patent Nos. 6,712,702 and 7,496,943 (collectively, the "patents in suit"). Some of the named defendants were Google customers. Google intervened and answered on behalf of the specifically accused Google customers and pled

an affirmative claim for breach of contract (the Settlement Agreement) against Beneficial. (Google's Complaint in Intervention, Dkt. No. 193). Google sought, among other things, a finding that "Beneficial materially breached the terms of the Settlement Agreement granting a license to Google and the Accused Google Partners." (Dkt. No. 193 at 13).

Google first raised the issue of patent exhaustion in its answer on behalf of certain "Accused Google Partners," as an affirmative defense against Beneficial's patent infringement claims. (Dkt. No. 193). Google's Complaint clearly identifies its "Accused Google Partners" as: Advance Publications, Inc.; ALM Media Properties, LLC; American Media, Inc.; Autotrader.com, Inc.; and Demand Media, Inc. (*Id.* at 1). At present, all of these defendants have been dismissed from the case with prejudice. While Google acknowledges this, it nonetheless argues that the issue of patent exhaustion remains in the case "as one of the bases for Google's claim for breach of the Settlement Agreement." (Dkt. No. 488.) The Court will address each of these matters in turn.

## I. Google's Affirmative Defense of Patent Exhaustion Has Become Moot

As part of the "case or controversy'" requirement of Article III of the United States Constitution, the doctrine of mootness prohibits federal courts from considering questions "that cannot affect the rights of litigants in the case before them." *C & H Nationwide, Inc. v. Norwest Bank Texas NA*, 208 F.3d 490, 493 (5th Cir. 2000) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). Under this doctrine, a case or controversy must exist not only at the commencement of the action, but throughout the existence of the litigation. *Dailey v. Vought Aircraft Company*, 141 F.3d 224, 227 (5th Cir. 1998). A claim must be dismissed for want of jurisdiction if, at any time in the course of litigation, the controversy ceases to exist. *Id.*

Here, it is undisputed that Google raised patent exhaustion as an affirmative defense to

Beneficial's patent infringement claims against the "Accused Google Partners." It is also undisputed that all Beneficial's claims against the "Accused Google Partners" have been dismissed with prejudice. As a result, a live controversy has ceased to exist against which the affirmative defense of patent exhaustion could apply in this case. *See Dailay*, 141 F.3d at 227; *see also ExcelStor Tech., Inc. v. Papst Licensing GMBH & Co. KG*, 541 F.3d 1373, 1376 (Fed. Cir. 2008) ("[P]atent exhaustion is a defense to patent infringement, not a cause of action."). Consequently, the affirmative defense of patent exhaustion has become moot in this case and should be dismissed.[1] *See Lodsys Grp., LLC v. Brother Int'l Corp.*, 2:11-CV-00090-JRG, 2013 WL 5353004 (E.D. Tex. Sept. 24, 2013).

## II. Google Cannot Base Its Breach of Contract Claim on Patent Exhaustion

Google further argues that the issue of patent exhaustion may properly remain in this case as "one of the bases for Google's claim for breach of the Settlement Agreement." At the hearing, Google argued that the Settlement Agreement effectively conferred a license not only for itself, but also for its customers through the operation of the patent exhaustion doctrine. (*See also* Google's Motion for Summary Judgment, Dkt. No. 275 at 29). This Court disagrees.

It is well settled that the goal in construing contracts "is to give effect to the parties' mutual intentions." Cal. Civ. Code § 1636; *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 321 (Cal. 2010).[2] "If contractual language is clear and explicit, it governs." Cal. Civ. Code § 1638; *Minkler*, 49 Cal. 4th at 321. "[T]here can be no implied covenant where the subject is completely covered by the contract." *Hinckley v. Bechtel Corp.*, 41 Cal. App. 3d 206, 211 (Cal. Ct. App.

---

[1] At the January 15, 2014 hearing, Google also urged the Court to keep its affirmative defense in the case based on considerations of judicial economy. Google based its argument primarily on the parties' previous Stipulation to Bifurcate Trial (Dkt. No. 455), wherein Amazon.com, Inc. ("Amazon") agreed to be bound by the judgment in the Google trial as it relates to the issue of exhaustion. Judicial economy, however, cannot trump the fundamental requirements of an existing "case or controversy" as mandated by Article III of the Constitution.

[2] The parties agreed that the Settlement Agreement at issue should be construed and controlled by California law. (*See* Dkt. No. 462 at 3.)

1974) (citing *Stockton Dry Goods Co. v. Girsh*, 36 Cal. 2d 677 (Cal. 1951)). Nor can implied terms vary the express terms of the contract. *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1120 (Cal. Ct. App. 2008). Further, the Court will not "rewrite contracts to relieve parties from bad deals nor make better deals for parties than they negotiated for themselves." *Series AGI W. Linn of Appian Grp. Investors DE LLC v. Eves*, 217 Cal. App. 4th 156, 164 (Cal. Ct. App. 2013) (citing *Naify v. Pacific Indemnity Co.*, 11 Cal. 2d 5, 11 (1938)); *see* Cal. Civ. Proc. Code § 1858 ("the office of the Judge is ... not to insert what has been omitted").

Guided by these principles, this Court begins by examining the express language of the Settlement Agreement to determine what right, if any, Google procured on behalf of its customers regarding the practice of the patents in suit. Paragraphs II.A and II.B of the Settlement Agreement provide as follows:

> A. Beneficial and its Affiliates grant a worldwide, royalty-free, non-exclusive, non-transferable (except as provided below) fully paid-up, perpetual, license under the Licensed Patents to (i) Google, YouTube, NBC Universal ("Defendants"), and their past, current, and future Affiliates, including a license for prior activities of future Affiliates, and (ii) ***Defendants and their Affiliates' past, current and future Partners, whether direct or indirect, <u>but only to the extent</u> that Partner's role in making, having made, using, selling, offering for sale, or importing any products or services of Defendants or their Affiliates <u>and only to the extent</u> such act by such Partner would constitute direct or indirect infringement of a claim of the Licensed Patents by Defendants or their Affiliates but for this license.***
>
> B. For the avoidance of doubt, ***the license in subparagraph (ii) above does not license a direct or indirect customer of Defendants or their Affiliates simply because the customer uses a product or service supplied by Defendants or their Affiliates if such use does not constitute direct or indirect infringement of the Licensed Patents by Defendants or their Affiliates.*** For example, assume (a) claim "x" of a Licensed Patent covers some activity of a Third Party's website, (b) the Third Party uses products or services provided by Google when engaging in the infringing activity, and (c) the provision of those products or services would not constitute

> direct or indirect infringement by Google of claim "x." In this example, the Third Party is not licensed under claim "x" to engage in such activity because only the Google products or services are licensed.

(Dkt. No. 273-4 at 2 (emphasis added)). By the clear terms of Paragraph II.A, the parties have set forth the specific circumstances under which Google's customers are licensed to practice the patents in suit, i.e., Google's customers are licensed *only to the extent* that their use of Google's products or services would constitute direct or indirect infringement on Google's part. This is reinforced in Paragraph II.B, where "[f]or the avoidance of doubt," the parties clarified that the agreement "does not license a direct or indirect customer of [Google]… simply because the customer uses a product or service supplied by [Google]…if such use does not constitute direct or indirect infringement of the [patents in suit] by Google." *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). Neither party argues that the contractual language in Paragraphs II.A and II.B is ambiguous and the Court finds it is not. Accordingly, the Settlement Agreement requires that the question of whether or not a customer's use of a particular Google product or service is licensed must be answered by determining if such use constitutes a direct or indirect infringement on Google's part. Undeterred by this clear provision from within the four corners of the Settlement Agreement itself, Google nevertheless argues that it has also procured a license for its customers "[by] operation of patent exhaustion law." According to Google, the Agreement provided a license to Google customers to the extent that the customers use a Google product or service which "substantially embodies the [patented] method" and "has no reasonable noninfringing use." *See Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1373 (Fed. Cir. 2013) (establishing the legal standard for patent exhaustion). The Agreement itself makes no reference to patent exhaustion, and does not contain the above language embodying the legal standard for

5

patent exhaustion.

Google's contention that a license exists for its customers "by operation of patent exhaustion law" is in reality a request that this Court find such through an implied covenant. The Court cannot do so. As discussed above, the scope of Google customers' license has been completely and unambiguously defined within the contract. Any effort to nonetheless impose an implied covenant upon the parties concerning the same subject is improper. *See Hinckley*, 41 Cal. App. 3d at 211. Further, Google has identified no evidence establishing the parties' mutual intent at the time of the contract to also provide Google customers with a license through operation of the patent exhaustion doctrine. *See Minkler*, 49 Cal. 4th at 321. Absent such a showing, this Court is not at liberty to alter the express terms of the license, nor can it rewrite the contract by unilaterally inserting an implied license not previously consented to by the parties, regardless of how much it might now assist Google in the present case. *See* 217 Cal. App. 4th at 164; *Levi Strauss & Co. v. Aetna Casualty & Surety Co.*, 184 Cal. App. 3d 1479, 1486 (Cal. Ct. App. 1986) ("The court…cannot insert in the contract language which one of the parties now wishes were there."). The license to Google's customers being explicitly defined within the express terms of the contract, Google is not now entitled to the benefit of an implied license by way of the patent exhaustion doctrine. The issue of patent exhaustion cannot properly serve as the basis for Google's breach of contract claim and should be dismissed from this case for this additional reason.

To be clear, this ruling does not impede a Google customer's right to raise an affirmative defense of patent exhaustion should Beneficial assert a patent infringement claim against that customer. Nor does this prevent Google from filing a declaratory judgment action, in a venue of its choosing, seeking a judicial declaration that Beneficial's patent right has been exhausted with

respect to certain of Google's products. Much of our nation's commercial conduct has long relied upon the simple rule that when the subject matter is addressed clearly within the four corners of the written agreement, claims of an implied nature will not be permitted to lessen, expand or otherwise alter that agreement. This Court affirms such simple rule and appreciates the certainty which it continues to provide.

### III.     Conclusion

For the reasons stated above, the Court hereby **ORDERS** that the issue of patent exhaustion be and it is **DISMISSED** from this case as between Google and Beneficial.[3]

**So ORDERED and SIGNED this 16th day of January, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[3] Amazon's right to maintain the affirmative defense of patent exhaustion in the bifurcated portion of this case is not affected by this ruling.