```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF TEXAS
 2                     MARSHALL DIVISION

 3   GOOGLE, INC.                    *    Civil Docket No.
                                     *    2:11-CV-229
 4   VS.                             *    Marshall, Texas
                                     *
 5                                   *    January 21, 2014
     BENEFICIAL INNOVATIONS, INC.    *    9:15 A.M.

 6
                     TRANSCRIPT OF JURY TRIAL
 7       BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP
                UNITED STATES DISTRICT JUDGE

 8

 9   APPEARANCES:

10   FOR THE PLAINTIFF:    MS. CHRISTA ANDERSON
                           MS. JENNIFER HUBER
11                         Keker & Van Nest
                           633 Battery Street
12                         San Francisco, CA   94111

13
                           MR. MICHAEL JONES
14                         MR. ALLEN GARDNER
                           Potter Minton Firm
15                         110 North College Street
                           Suite 500
16                         Tyler, TX   75702

17

18   APPEARANCES CONTINUED ON NEXT PAGE:

19

20

21   COURT REPORTERS:      MS. SHELLY HOLMES, CSR
                           MS. SUSAN SIMMONS, CSR
22                         Official Court Reporters
                           100 East Houston, Suite 125
23                         Marshall, TX   75670
                           903/935-3868

24

25   (Proceedings recorded by mechanical stenography,
     transcript produced on CAT system.)
```

APPEARANCES CONTINUED:

FOR THE DEFENDANT:     MR. JULIEN ADAMS
                       Dovel & Luner
                       201 Santa Monica Blvd.
                       Suite 600
                       Santa Monica, CA    90401

                       MR. DAVID ROSEN
                       Murphy Rosen
                       100 Wilshire Blvd.
                       Suite 1300
                       Santa Monica, CA    90401

                       MS. ELIZABETH DERIEUX
                       MR. JEFF RAMBIN
                       Capshaw DeRieux
                       114 East Commerce
                       Gladewater, TX    75647


     *************************************************


                    P R O C E E D I N G S


          COURT SECURITY OFFICER:  All rise.

          (Jury panel in.)

          THE COURT:  Thank you.  Be seated,

please.

          Good morning, ladies and gentlemen.

Thank you for being here.

          My name is Rodney Gilstrap.  And I am the

resident United States District Judge here in the

Marshall Division of the Eastern District of Texas.

I've lived in Marshall since 1981.  I practiced law

1    here, as these lawyers have, until I came on the bench

2    in 2011.

3              I grew up in Florida, but I got to Texas

4    as soon as I could to attend Baylor University and

5    Baylor Law School.  I'm married, and I have two grown

6    children.  My wife owns and operates a retail floral

7    shop here in Marshall.

8              Now, I tell you all that because in a few

9    minutes, each of you are going to get to answer all

10   these questions on the screen and I'm going to learn

11   information about you, and I think it's only fair that

12   you learn as much about me as I'm about to learn about

13   you.

14             We're here this morning to engage in the

15   selection of a jury in a civil case involving

16   principally allegations of breach of contract.  I know

17   that you've seen the patent film this morning about

18   patent cases, and you viewed that film because this case

19   concerns a contract dispute with underlying issues that

20   you will need to decide that are governed by patent law.

21             In civil cases such as this one, the

22   United States of America is the only country on the face

23   of the Earth that guarantees each of its citizens the

24   right to a trial by jury in a civil case.  By you being

25   here this morning and participating in this process, in

1  a very real way, you are doing your part as ordinary

2  citizens to preserve, protect, and defend our

3  Constitution and particularly the Seventh Amendment,

4  which is a part of the Bill of Rights, which sets forth

5  that guarantee of a right to trial by jury in a civil

6  case.

7              I tell jurors in every trial, and I

8  believe it more each day, that jury service is the

9  second highest form of public service that any citizen

10 can perform for their country.  Of course, the highest

11 form of public service are those young men and women who

12 serve in our armed forces and lay their lives on the

13 line to protect us and our freedoms each day.

14             Now, in a few moments when the lawyers

15 address you, they're going to ask you questions, and I

16 want you to understand that they will not be trying to

17 pry unduly into your personal affairs.  They are

18 entitled to ask questions for the purpose of securing a

19 fair and impartial jury to hear the evidence and to try

20 this case.

21             Also, ladies and gentlemen, I don't know

22 if it will happen today.  It usually doesn't, but during

23 the questioning, if you are asked a question that you

24 believe is so personal and private that you are not

25 comfortable answering it in front of the entire panel,

1  then you have the option to simply say you'd like to

2  discuss that with Judge Gilstrap, and I'll make

3  arrangements for you to answer it outside the presence

4  of everyone else.

5              Again, that rarely comes up, but I do

6  want you to know that that option is there.

7              The important thing during this process

8  is for you to give full, complete, and truthful answers

9  to the questions that are asked.  There are no wrong

10 answers as long as your responses are full, complete,

11 and truthful.

12             The trial in this case, the beginning of

13 the evidence will start today, probably right after

14 lunch, and I expect that the trial will continue through

15 Friday of this week, which is, as I see it on the

16 calendar appears to be the 24th.  So if any of you on

17 the panel have surgical procedures scheduled for

18 yourselves or prepaid non-refundable vacation tickets

19 that can't be rescheduled, if you have anything that

20 would prohibit you from being able to be here and serve

21 through the end of this week, if you are selected, I

22 need to know about that.

23             And if you would -- if that's the case,

24 would you please raise your hands and let me make a note

25 of it.

```
 1                    Okay.  Panel Member No. 12.

 2                    Anybody else?

 3                    Okay.  Thank you very much.

 4                    All right.  At this time, I'm going to

 5   call for announcements in the case of Google, Inc.,

 6   versus Beneficial Innovations, Inc.  This is Civil

 7   Action No. 2:11-CV-229.

 8                    And, Counsel, as you give your

 9   announcements, if you would introduce everybody with

10   your trial team at counsel table as well as any

11   corporate representatives that you have with you.

12                    What says the Plaintiff?

13                    MR. JONES:  Your Honor, Mike Jones for

14   the Plaintiff Google, Inc., and Google, Inc., is best

15   known, I guess, for its search engines as that

16   corporation.

17                    At counsel table with me, Your Honor, is

18   Mr. Michael Trinh.

19                    If you'd stand, Mr. Trinh.

20                    He is the representative for Google here

21   today.

22                    Thank you, Mr. Trinh.

23                    At counsel table is Ms. Christa Anderson.

24   She is lead counsel for Google Corporation.

25                    Thank you, Ms. Anderson.
```

1           And also at counsel table is Ms. Jennifer

2   Huber.  She's Ms. Anderson's partner, and she also

3   represents Google, Inc., in this lawsuit.

4           And on behalf of Google, Inc., Your

5   Honor, I would announce that we're ready for trial.

6           THE COURT:  Thank you Mr. Jones.

7           What says the Defendant?

8           MR. RAMBIN:  Good morning, Your Honor.

9   Jeff Rambin on behalf of the Defendant Beneficial

10  Innovations, Inc.  We are here and ready to proceed.

11          With me here today at counsel table, I

12  have Mr. Julien Adams.

13          MR. ADAMS:  Good morning.

14          MR. RAMBIN:  And also Mr. David Rosen.

15  They are with firms out in California.

16          And we also have at counsel table Mr.

17  Sheldon Goldberg.  He is the inventor on the patents you

18  will see in this case and also principal of Beneficial

19  Innovations, Incorporated.  And with him here today

20  seated in the back of the courtroom is his wife, Barb.

21          THE COURT:  Thank you, Mr. Rambin.

22          As I've told you, ladies and gentlemen,

23  this is a breach of contract case centering around a

24  settlement agreement that was previously entered into

25  between the Plaintiff and Defendant.  Plaintiff claims

1  that the Defendant violated the settlement agreement by

2  bringing a patent infringement lawsuit against certain

3  of Plaintiff's customers.  Plaintiff seeks money damages

4  on the basis of that claim.

5             Defendant denies that it violated the

6  settlement agreement and denies that Plaintiff is

7  entitled to any award of damages.

8             Now, this is a very informal way of

9  describing the case in layman's terms.  I remind you,

10 again, that as the jury selection process goes forward,

11 there are no wrong answers to the questions you'll be

12 asked as long as your responses are full, complete, and

13 truthful.

14             If anybody -- if anybody among the trial

15 counsel should ask you a question that I don't think is

16 proper, I will certainly let them know, but these are

17 experienced lawyers, and I do not expect that to be a

18 problem.

19             One thing that I want to call your

20 attention to, because it's quite likely that some of the

21 lawyers may ask you about this and your willingness and

22 ability to apply it during the trial of the case is what

23 we call the burden of proof.  The burden of proof in a

24 civil case like this is called the preponderance of the

25 evidence, and the jury chosen in this case will have to

1  apply the burden of proof to the evidence known as the

2  preponderance of the evidence.

3     When responding to lawyers' questions

4  about the burden of proof, I need to instruct you that

5  when the party has a burden of proof to any claim or

6  defense by a preponderance of the evidence, it means

7  that the jury selected must be persuaded by the credible

8  or believable evidence that that claim or defense is

9  more probably true than not true.  I'll say that again:

10  More probably true than not true.

11     Sometimes this is talked about as being

12  the greater weight and degree of credible testimony.

13     Let me give you an illustration.  I think

14  everyone in the courtroom can see in front of our court

15  reporter the statue of the Lady of Justice.  You'll

16  notice that she's blindfolded.  You'll notice that in

17  her right hand she holds the sword of justice.  You'll

18  notice in her left hand she holds the raised Scales of

19  Justice.

20     I want you to focus on those Scales of

21  Justice.  They are balanced.  They are exactly equal.

22  If during the course of this trial you think about it

23  this way, that the evidence that the jury hears will be

24  placed on those scales.  And when the trial is over and

25  all the evidence has been produced, the jury will be

1  asked to consider various questions, and in weighing

2  that evidence upon the scales, if those scales tip

3  toward the party who has the burden of proof by a

4  preponderance of the evidence, even if they tip ever so

5  slightly, then that burden has been met and that party

6  has proven that issue by a preponderance of the

7  evidence, the greater weight and degree of credible

8  testimony; more likely true than not true.

9           Now, this is not to be confused with what

10 you may have heard on television called beyond a

11 reasonable doubt.  Beyond a reasonable doubt is the

12 burden of proof applied in a criminal case and it has no

13 application in a civil case like this.  Again, I think

14 it's possible that some of the counsel may ask whether

15 you're capable and willing to apply the burden of proof

16 of the preponderance of the evidence, so I wanted to

17 give you that definition so you'd have that.

18          Now, before we go any further, I'm going

19 to give each one of you a chance to tell me as much

20 about you as I began this process by telling you about

21 me, and that involves answering the nine questions that

22 are on the screen here in the courtroom.  We're going to

23 do this one panel member at a time.  We're going to do

24 that with a handheld microphone that we'll pass from

25 member to member.

1          And as you give these answers, I'm going

2 to ask each one at your turn to stand and give those

3 answers with the handheld microphone.  Also as the

4 lawyers ask questions through the rest of this process,

5 if you're called upon to give an answer, then likewise,

6 you'll need to stand and you'll need to wait until you

7 have the handheld microphone.

8          Without the use of that handheld

9 microphone, it's possible that not everyone in the

10 courtroom can hear your answers, so be sure that you

11 wait for that.

12          All right.  We'll start with Panel Member

13 No. 1.  Mr. Bills, if you'll stand and answer those nine

14 questions for us.

15          JUROR BILLS:  My name is Ernie Bills and

16 I live in Douglassville, Texas.  I have three kids, 25,

17 28, and 33, and I've been retired for about 10 years

18 now.  And I previously worked at GTE/Verizon.  I was a

19 quality manager there responsible over ensuring the

20 quality system and performed internal/external audits.

21          Like I said, I've been there -- was there

22 28 years.

23          And I have an associate's degree in

24 electronic technology.  My wife's name is Amy.  She

25 works at Ellington Clinic in Atlanta.  Let's see.  And

1    for -- she's been there about five years, and I've

2    been -- no prior jury services.

3                     THE COURT:  All right.  Panel Member

4    No. 2?

5                     JUROR VAN HUSS:  Good morning.  My name

6    is Jerry Van Huss.  I'm from the big town of Hughes

7    Springs near Douglassville.  I've got two daughters, 17

8    and 11.  I work at a little place called A&E Machine

9    Shop where I'm a fitter welder, safety manager, and

10   quality control.  Been there since December of '11.

11   This is my third time back with this company.

12                     I've got equivalent to -- excuse me --

13   associate's degree in criminal justice.  My spouse's

14   name is Mary Ann.  She works for Greg's Miracle Mart.

15   She's the assistant manager.  She's been there since

16   September '07.

17                     Prior jury service, it depends.  I've got

18   picked once on a criminal, but for nearly eight years in

19   law enforcement, I was testifying and it was criminal.

20                     That's the one thing I understand is

21   criminal, not patents.

22                     Thank you.

23                     THE COURT:  All right.  Mr. Broadway?

24                     JUROR BROADWAY:  My name is Martin

25   Broadway.  I live in Longview.  I have one stepdaughter.

1   I'm -- Contractors Supplies.  I'm a dispatcher for Ready

2   Mix Concrete plant.  I've been there 11 years.  I have a

3   high school education.  My wife's name is Rhonda.  She

4   worked for Kokenzie Floor Store, pretty explanatory.

5   She's been there about 14 years, I guess.  And I've been

6   on one criminal jury.

7            THE COURT:  All right, sir.

8            Mr. Smith?

9            JUROR SMITH:  My name is Clint Smith.  I

10  live here in Marshall.  Have two little boys, five and

11  three.  I work at Eastman Chemical in Longview.  I'm an

12  operator there at the cracking plant.  Worked there four

13  years now.  Got associate's degree in criminal justice.

14           My fiance's name is Maddie, and we've

15  been together four or five years, and she works at the

16  Workforce Center.  She's been there for 12 years.  And

17  no prior service before this.

18           THE COURT:  Thank you.

19           Ms. Yandell?

20           JUROR YANDELL:  My name is Ann Yandell,

21  and I live in Marshall, Texas.  I do not have any

22  children.  I work at Knuckols, Duvall & Hallum.  It's a

23  CPA firm here in Marshall, and I'm a CPA there.  And

24  I've worked there about 15 years.  I have a BBA in

25  accounting, and I'm a CPA.

```
 1                  My husband's name is Kevin, and he's a
 2    CPA and a business manager at Sabine ISD, and he's
 3    worked there about three years.  And I do not have any
 4    prior jury service.
 5                  THE COURT:  Thank you.
 6                  Mr. Carpenter?
 7                  JUROR CARPENTER:  Gary Carpenter.  I live
 8    in Gilmer.  I have three boys, 36, 26, and 17.  I work
 9    at White Oak ISD.  Previously self-employed before that.
10    Hurt my back and had to quit.  I've worked at White Oak
11    since 1998.
12                  My educational background, I have HVAC
13    certification and locksmith certification, which I'm in
14    charge of at the school.  Spouse's name is Romell
15    (phonetic spelling) Carpenter.  She works for Community
16    Healthcore as a THP.  She's worked there 17 years.  And
17    I've been on two civil cases.
18                  THE COURT:  Thank you, sir.
19                  Mr. Foster?
20                  JUROR FOSTER:  Good morning.  My name is
21    Ron Foster.  I live in Longview, Texas.  Actually close
22    to White Oak at one point.  I have three children:  Two
23    boys and a girl.  Two of my children, the youngest boy
24    and girl live in Longview, and my much older son is in
25    Auburn, California.  Been there 25 years.  Can't get him
```

1  back to Texas, but he likes California.

2                    I am a retired school administrator from

3  Winona ISD.  I spent about 30 years in the business of

4  education.  Prior to that, I worked a little bit of

5  criminal justice.  I have a master's degree in -- in

6  education.  My spouse's name is Regina.  She's retired

7  from both Walmart and Neiman Marcus Distribution Center.

8  She was inventory control for both companies.  And, of

9  course, we're both retired.

10                    Prior jury service, I have been called

11  several times, and I served on a civil here in Marshall,

12  and we did render a verdict.

13                    THE COURT:  Thank you, sir.

14                    And our CSO, Court Security Officer, will

15  carry that around to Mr. Bister.

16                    JUROR BISTER:  My name is Tim Bister.  I

17  live here in Marshall.  I have a 25-year-old

18  stepdaughter in Tyler and a 9-year-old son at home.  I'm

19  the District Fishery's biologist for the Texas Parks and

20  Wildlife here in Marshall.  I've been in this office for

21  about eight years.

22                    I've got a bachelor's degree in renewable

23  natural resources and a master's degree in fishery

24  science.  My wife, Jean, works for Texas Health and

25  Human Services for about the past six years.  And I have

1  never served on a jury panel.

2              THE COURT:  Okay.  Mr. Robison?

3              JUROR ROBISON:  My name is Damon Robison.

4  I live in Hughes Springs, Texas.  I have two children,

5  one is 12; one is 11.  I work for Pittsburg Tractor as a

6  small engine technician.  About seven months is as long

7  as I've worked there.

8              I forgot where I was at.  My highest

9  level of education was some college technical training.

10  I lacked two classes to graduate as an associate's

11  degree.  My spouse's name is Donna Robison.  She works

12  as an RN here at Longview Regional Medical Center.  She

13  works in the baby-birthing department.  She's worked

14  there about three to four years.  And I have never

15  served before.

16              THE COURT:  Mr. Phillips?

17              JUROR MICHAEL PHILLIPS:  My name is

18  Michael Phillips.  I have two grown children.  I do -- I

19  live just outside of Marshall, Texas, Harrison County.

20              I'm retired from TSTC Marshall where I

21  was an instructor.  I worked there 16 years.  I have

22  graduated from Marshall High School.  Have a BS degree

23  in mechanical engineering from Texas A&M.

24              My wife's name is Sandra.  She worked --

25  she's retired now.  She worked for Right of Way Land

1  Services in Jefferson.  She worked there about five

2  years.  I have never served on a petit jury.  I did

3  serve a term on a grand jury.

4                THE COURT:  Thank you, sir.

5                Mr. Timmons?

6                JUROR TIMMONS:  I'm Terry Timmons.  I

7  don't have any children.

8                I work for Luminant Mining in Tatum,

9  Texas, maintenance analyst.  We -- we do budgets and --

10  and inspect the equipment to see what kind of work they

11  need to be done on them.  Been there 30 years.

12                I have some college.  My wife's name is

13  Diane.  She is retired.  And she used to work for

14  Hallmark Greeting Cards, and I think she worked there

15  four or five years.

16                Been on jury service before, one of each,

17  civil and criminal.

18                THE COURT:  Thank you.

19                Ms. Hall.

20                JUROR HALL:  My name is Susie Hall,

21  Susan.  I have three children.  They're all grown.

22  I've worked for 25 years cutting hair.  Enjoy it -- 30

23  years.  I have a high school diploma.

24                My husband's name is Bruce, and he owns a

25  small service station/mechanic shop.  He doesn't sell

1  fuel anymore because of obvious reasons, and he's --

2  he's owned that for probably, I would say, 16 years.

3             And I have been called before, but the

4  cases have always been settled before I could serve.

5             THE COURT:  Thank you.

6             Mr. Hearrell.

7             JUROR HEARRELL:  My name is Robert

8  Hearrell.  I've got two girls, 17 and 19, and I have a

9  stepson that's 26.

10            Employed with Crosby-Lebus.  Been out

11 there just over three years.  High school diploma.

12 My wife's name is Sherry.  She's a homemaker.

13            And I served on a jury in Marshall,

14 Texas, a few years ago when I was a snow cone man and

15 had plenty of time.  I volunteered to be on the jury.

16            THE COURT:  Ms. Jorski.

17            JUROR JORSKI:  My name is Melissa Jorski,

18 and I live in Avinger, Texas.  I have three children.

19            I work at Texas Department of Criminal

20 Justice as a parole officer.  I've worked there five

21 years now.  I've got a bachelor's degree in special

22 education.

23            My spouse's name is Jeffrey.  He works at

24 McCorckle Truck Lines as a supervisor, dispatcher, or

25 whatever you want to call it.  How long?  He's worked

```
 1   there probably about five years, too.

 2              And I've sat on a criminal case back in

 3   Oklahoma.

 4              THE COURT:  Thank you, ma'am.

 5              Next, No. 15, Mr. Shuler.

 6              JUROR SHULER:  My name is John Shuler.  I

 7   live in Gilmer, Texas.  I have two girls.

 8              I'm disabled.  Before that, I was a heavy

 9   equipment operator, ran a rigging crew.  Graduated

10   technical school.  Got some college.

11              My wife's name is Stacy.  She's

12   unemployed right now.

13              I've been on criminal jury, and I've been

14   called to this court a few times but never been picked.

15              THE COURT:  All right.  Mr. Moore.

16              JUROR MOORE:  My name is Bruce Moore.  I

17   live in Longview.  Three boys, youngest 21.

18              I'm a letter carrier with the -- the Post

19   Office for 27 years now.  Graduated high school.

20   Divorced.

21              And served -- I was an alternate on a

22   criminal case.

23              THE COURT:  Thank you.

24              Ms. Rich.

25              JUROR RICH:  My name is Lorraine Rich.  I
```

1   have two children.  One is 32, and one is 34.

2                I work at ETEX Telephone Cooperative.

3   I've worked there for 24 years as a dispatcher in

4   workforce management.  I graduated from high school in

5   Baltimore, Maryland.

6                My spouse's name is Graham Rich.  He is

7   retired from Sanvig, but he still works part-time at a

8   local company.  He worked there approximately 16 years.

9                I have served one term on grand jury.

10               THE COURT:  Thank you.

11               No. 18.

12               JUROR DASSONVILLE:  My name is Kari

13   Dassonville.  I live in Gilmer.  I have three children,

14   two stepchildren.

15               I work at Hurwitz in Longview.  It's a

16   retailer store.  I'm an office manager there.  I've been

17   there almost six years.  I finished high school.  I went

18   to a junior college and got my cosmetology degree.

19               My husband's name is Troy Dassonville,

20   and he owns AC Contractors.  It's heating and air

21   conditioning.  He began that business about 15 years

22   ago.

23               And I have not served before.

24               THE COURT:  All right.  Thank you.

25               Next is No. 19, Mr. Shipman.

```
 1              JUROR SHIPMAN:  My name is Ronnie

 2  Shipman.  I live in Gilmer, Texas, and have three

 3  children.  They're all grown.

 4              And been a senior pastor for 43 years; 18

 5  of those years -- the last 18 have been at Spring Hill

 6  Assembly of God Church in Longview, Texas.  Two

 7  bachelor's degrees.  One in pastoral ministries, and one

 8  in behavioral science.

 9              And my wife is a public schoolteacher.

10  She's employed at Harleton Independent School District.

11  She's been there 18 years.

12              And I've served on a couple of civil

13  cases and a couple of criminal cases and one grand jury.

14              THE COURT:  Thank you, sir.

15              Mr. Glenn.

16              JUROR GLENN:  My name is Johnny Glenn.

17  I'm from Gladewater, Texas.  I have four adult children.

18              I'm currently employed by East Texas

19  Medical Center in Tyler.  I am the director of nurses

20  and patient care services for the Behavioral Health

21  Center.

22              Let's see, I've worked for them for the

23  past several years now.  I have a master's degree in

24  nursing, and I have a doctoral degree in business

25  administration for healthcare.
```

 1              My wife's name is Pamela.  She's also a

 2  registered nurse, currently a domestic engineer caring

 3  for her elderly mother in our home.  And let's see,

 4  she's been doing that for the past couple of years.

 5              I have served on two previous civil

 6  cases.

 7              THE COURT:  Thank you.

 8              Mr. Kyle.

 9              JUROR KYLE:  My name is Richard Kyle, go

10  by Mason.  Do not have any children.

11              I work for New Diana Independent School

12  District as a high school social studies teacher.  I

13  teach United States history and government and

14  economics.  Started there in August.

15              Graduated December of 2012 from

16  Northwestern State University with a Bachelor of Arts in

17  history.  And I'm also certified to teach social

18  studies, 8 through 12.

19              I am not married, and this is my first

20  service.

21              THE COURT:  All right.  Mr. Gillette.

22              JUROR GILLETTE:  My name is Richard

23  Gillette.  I've got eight kids from 30 down to 8.

24              I work at SCI Texarkana.  I've been in

25  the military now for about 28 years.  My educational

```
1  background is I got high school and some college and
2  military schools.
3              My wife's name is Karen.  She works for
4  Superior Senior Care.  She takes care of the elderly.
5  And she's worked there about eight years.
6              And I have no prior jury.
7              THE COURT:  Thank you.
8              Ms. Hatfield.
9              JUROR HATFIELD:  Good morning.  My name
10 is Lourdes Hatfield.  I have four children, 44, 42, 41,
11 36.  And I'm retired.  And my education, I have not
12 finished high school because -- due to hard times.
13             My spouse's name is Billy.  He's retired
14 as well.
15             And I have served civil and result.
16 Thank you.
17             JUROR DUNKEL:  Good morning.  My name is
18 Frank Dunkel.  I live in Avinger, Texas.  I have two
19 grown kids.
20             And I teach heating and air conditioning
21 at Sheppard Air Force Base.  And let's see, I've worked
22 there three months so far.  And I got a high school GED
23 and Kilgore College.  I went a year-and-a-half.  I'm
24 divorced.
25             And I've been summoned but never picked.
```

```
 1                    THE COURT:  Thank you, sir.

 2                    Mr. Blackwell.

 3                    JUROR BLACKWELL:  My name is Rodney

 4  Blackwell.  I have two children.

 5                    I work for Texas State Technical College

 6  and Panola College.  I have a master's degree in human

 7  communications.

 8                    My spouse's name is Daryl Lynn.  She

 9  works at Longview Regional Medical Center, and we've --

10  let's see, I've been at TSTC for close to 20 years, 30

11  years.  She's been there for 25.

12                    This is my -- I've done criminal cases,

13  no civil.

14                    THE COURT:  Thank you.

15                    Mr. Zimmerman.

16                    JUROR ZIMMERMAN:  My name is R.J.

17  Zimmerman.  I've got two boys, 21 and 25.

18                    I work for Verizon.  I've been there for

19  15 years.  And I've got wonderful ex-wife.

20                    And I've served on one criminal case.

21                    THE COURT:  All right, sir.

22  Ms. Phillips.

23                    JUROR MORIAH PHILLIPS:  My name is Moriah

24  Phillips.  I live in Gladewater, Texas.  I have two

25  grown children, three stepchildren.
```

```
 1              `                 I work for Big Sandy ISD.  I'm the
 2  technology director, so I fix their computers.  I've
 3  worked there for 14 years.  I have an associate's degree
 4  in computer science.
 5                   My husband's name is Randall.  He works
 6  for Eastman Chemical Company as a production
 7  technologist, so he's a supervisor.  He's been there for
 8  27 years.
 9                   And I've never served.
10                   THE COURT:  Thank you.
11                   Mr. Criner.
12                   JUROR CRINER:  I am Joe David Criner from
13  Marshall, Texas.  I have three daughters.  I retired
14  from the U.S. Postal Service after 37 years.  Let's see,
15  37 years.  I'm a high school grad, three years at
16  Prairie View A&M University.
17                   My spouse is Ruth Criner.  She works at
18  MISD as a third grade instructor.
19                   And I have never served on a jury.
20                   THE COURT:  Thank you.
21                   Thank you, Ladies and Gentlemen.  I need
22  to say a couple more things to you before I turn the
23  questioning over to the lawyers.
24                   The jurors that are selected to make up
25  our jury in this case will actually serve in the role of
```

1  the judges of the facts.  The jurors selected will make

2  the sole determination about what the facts are in this

3  case.

4            My job as the judge is to rule on

5  questions of law, evidence, procedure, and to control

6  the courtroom and the flow of the evidence.

7            Also, I want to say a couple things to

8  you about our judicial system that hopefully will put

9  things in a proper perspective for you.

10            In any jury trial, in addition to the

11  actual parties, there are always three participants:

12  The jurors, the judge, and the lawyers.

13            With regard to the lawyers, our judicial

14  system is an adversary system, which means simply that

15  during each trial, the parties will seek to present

16  their respective cases to the jury in the very best

17  light possible.

18            Now, lawyers are often criticized, it's

19  been my observation, in the media and in the press.  And

20  often I believe that criticism comes from a basic

21  misunderstanding of our adversary system of justice in

22  which the lawyers act as advocates for the competing

23  parties.

24            As an advocate, a lawyer is ethically and

25  legally obligated to zealously assert his or her

1  client's position under the rules of our adversary

2  system.

3              And by presenting the best case possible

4  on behalf of their clients, the lawyers hopefully will

5  enable the jury to better weigh the relevant evidence

6  and determine the truth and arrive at a just verdict

7  based on that evidence.

8              This system of justice has served our

9  country well for over 200 years, and America's lawyers

10  have been and continue to be an essential part of the

11  process.

12              As we go forward during this trial, there

13  may be times when I will frown at the lawyers in this

14  case.  That's simply because I'm trying to make sure

15  that they stay within the boundaries of our adversary

16  system and that their advocacy on behalf of their

17  clients doesn't go outside of -- of those boundaries.

18              But keep in mind, they are doing their

19  jobs, and it's important for all of us to be aware of

20  that as we go through the trial.

21              Also, Ladies and Gentlemen, I want you to

22  know that for those of you that are selected to serve on

23  this jury, throughout the trial, I am going to do my

24  very best to make sure that the jury has no idea about

25  what I think of the evidence that's presented during

1　this case, because evaluating the evidence is the job of

2　the jury.

3　　　　　　　　So you should not take any expressions

4　that you see or think you see as coming from me as a

5　factor to consider in making your decision about the

6　ultimate facts in the case.

7　　　　　　　　All right.  With that, we will begin the

8　questioning by the lawyers.

9　　　　　　　　And, Mr. Jones, you may proceed to

10　address the panel.

11　　　　　　　　MR. JONES:  Thank you, Your Honor.

12　　　　　　　　Could I have a five-minute warning, Your

13　Honor?

14　　　　　　　　THE COURT:  Yes, sir, you can.

15　　　　　　　　MR. JONES:  Thank you very much.

16　　　　　　　　May it please the Court.

17　　　　　　　　Ladies and Gentlemen of the Jury Panel,

18　again, my name is Mike Jones.  It is my privilege in

19　this case to represent Google Corporation.

20　　　　　　　　The first thing I would like to do is

21　follow Judge Gilstrap's good example and give you the

22　same information about me that you've been kind enough

23　to give us about you.

24　　　　　　　　I'm a lawyer from Tyler, Texas.  I

25　received a law degree from Baylor University, and I have

1  worked for Potter Minton Law Firm in Tyler, Texas, for

2  the past -- I think now it's over 35 years.

3                I am married.  My wife is Pam Jones.  She

4  has been a dental hygienist, she has been a teacher, and

5  she has also been a homemaker.  We have two grown

6  children, and we have two wonderful grandchildren and

7  one more on the way.

8                Like I said, I represent Google.

9                And the second thing I'd like to do is to

10 thank you on behalf of my client for your service to our

11 judicial system today.  I would like to thank you

12 personally for your patience in answering my questions.

13                And finally, I would like to thank you

14 for all the time you're going to spend in helping us

15 resolve the issues in this case, whether you're a panel

16 member or whether you're actually selected for the jury.

17                The first questions I'd like to ask are

18 just about the parties.  Again, my client is Google,

19 Inc.  It is famous for search engines.  Their mission

20 statement is that they organize the world's information

21 and make it accessible.

22                How many of you have used Google's search

23 engine?  Could you raise your hands?

24                Okay.  I see that's just nearly

25 everybody.

1                    Besides the fact that you have used

2    Google's search engine, how many of you have knowledge

3    about Google Corporation besides the mere fact that:

4    Oh, on occasion, I have used their search engine?

5                    Anybody?

6                    Thank you -- oh, excuse me.  I didn't see

7    your hand.  Yes, sir.  And I believe that's Mr. Dunkel;

8    is that correct?

9                    I am sorry.  I got it wrong.

10   Mr. Blackwell; is that correct?

11                   JUROR BLACKWELL:  Yes, that's correct.

12                   MR. JONES:  Thank you, sir.

13                   Could you just tell me the source of your

14   information?

15                   JUROR BLACKWELL:  Well, the news media

16   accounts and then personal research.

17                   MR. JONES:  Thank you.

18                   How many -- and let me ask it to the

19   panel, and I'll get right back to you.

20                   But let me ask to the panel, how many

21   have read articles in magazines or newspapers or seen TV

22   shows or heard radio programs that were news and

23   provided information about Google?  If you could, raise

24   your hand.  You're in the same situation that

25   Mr. Blackwell is in.  Anybody here?

```
 1                      And then if I could, I see Mr. Blackwell
 2   and I see Mr. Zimmerman and Ms. Phillips; is that right?
 3   Have I missed anybody that falls into that category?
 4                      Thank you so much.
 5                      Now, the question I would like to ask
 6   you, Mr. Blackwell and Mr. Zimmerman and Ms. Phillips,
 7   is:  Have you formed any opinions about Google
 8   Corporation as a result of what you have learned from
 9   those sources?
10                      And Mr. Blackwell?
11                      JUROR BLACKWELL:  Yes, I have.
12                      MR. JONES:  Okay.  Now, obviously, I'm
13   here today to try to make sure that we select jurors
14   that are fair and impartial in this case.
15                      As we start this case, does those -- that
16   information from whatever source you got it, does it
17   cause Google to have some kind of negative implication
18   in your mind?
19                      JUROR BLACKWELL:  Not really.
20                      MR. JONES:  Okay.  Does it in any way
21   cause Google, as we start out this case -- and I think
22   we all agree, you know, both parties need to start out
23   at the starting line, you know, even-steven.
24                      Does it cause Google in any way to be
25   behind?
```

1                    JUROR BLACKWELL:  No, it does not.

2                    MR. JONES:  Thank you, sir.  I appreciate

3    it, Mr. Blackwell.

4                    Mr. Zimmerman, basically, the same

5    questions to you.

6                    JUROR ZIMMERMAN:  It would not affect my

7    opinion.

8                    MR. JONES:  Okay.  And let me ask one

9    other question that I asked before to Mr. Blackwell.

10                   Would it -- has it created any negative

11   implications in your mind about Google Corporation?

12                   JUROR ZIMMERMAN:  No.

13                   MR. JONES:  Thank you so much, sir.  I

14   appreciate it.

15                   Ms. Phillips, my question to you would be

16   the same.  This information that you've obtained from

17   whatever source, has it caused you to have any negative

18   implications or opinions about Google?

19                   JUROR MORIAH PHILLIPS:  No, it hasn't.

20                   MR. JONES:  Okay.  Does it cause them in

21   any way to start out behind?

22                   JUROR MORIAH PHILLIPS:  No.

23                   MR. JONES:  Thank you very much.  I

24   appreciate it.

25                   Now, another question along these same

 1  lines, but it's a little different.  Has anybody read

 2  any media accounts -- and, again, I'm talking about

 3  newspaper, magazines, radio, TV -- received any

 4  information from sources like that about any lawsuits

 5  that Google may have been involved in?

 6              Anybody know anything about any lawsuit

 7  that Google has ever been involved in?

 8              I see no answers (sic).  So none of you

 9  know anything about that.  Thank you so much.  I

10  appreciate that.

11              Now, I would like to ask basically the

12  same questions about the other party in this case,

13  Beneficial Innovations.  And I believe their owners are

14  Mr. and Mrs. Goldberg that you've been introduced to

15  today.

16              Does anybody know anything about them

17  prior to today, either Beneficial Innovations, Inc., the

18  party, or Mr. or Mrs. Goldberg?  Anybody?

19              Have you heard anything about any

20  lawsuits that they may have been involved in prior to

21  today?  Anybody?

22              Thank you.

23              Now, their attorneys in this case -- I

24  believe there have been three firms that have

25  represented them.  The first is a firm by the name of

1  Capshaw & DeRieux from Gladewater, and the attorneys

2  there, I believe, are Ms. Betty DeRieux, Calvin Capshaw,

3  and Mr. Jeff Rambin.

4              Does anybody know those attorneys or that

5  law firm for any reason?

6              Thank you so much.

7              Another firm I think they've been

8  represented by is Murphy Rosen, Mr. David Rosen and

9  Mr. Mark Nagle.  Does anybody know them prior to today?

10             And another firm is Dovel & Luner, and

11 Mr. Julien Adams.  Does anybody know that law firm or

12 Mr. Adams?

13             Okay.  Thank you.

14             Mr. -- excuse me -- Judge Gilstrap has

15 already told you a little bit about the nature of this

16 case.  For purposes of my next question I'm going to

17 give you just a little bit more background.  In the

18 past -- I think it's undisputed on two occasions --

19 Beneficial has sued Google for infringement of the two

20 patents in question in this suit.

21             That case went on.  There was discovery.

22 They kind of fought it out for a while at the

23 courthouse, but ultimately, a settlement was reached,

24 and a written contract was entered into between

25 Beneficial and Google that settled that lawsuit.  And

1  this was done in November of 2010.

2            As part of that written contract that

3  resulted in the settlement of that lawsuit, Google

4  purchased a license or the authorization to use the two

5  patents-in-suit pursuant to the terms of that written

6  settlement agreement.  Shortly after that written

7  settlement agreement, several months, Beneficial

8  Innovations sued some of Google's customers.

9            And it's the contention of Google in this

10  case that that action was a violation of that contract.

11  And I believe Beneficial Innovations is going to take

12  the position that it was not a violation of that

13  contract.  But that's the controversy in this case;

14  that's the fuss.

15            Now, with that as a background, I think

16  you can obviously see that written contracts are going

17  to be a central part of this case.  And I'd like to ask

18  you a few questions about your experiences with written

19  contracts.

20            Now, most of us go to places every once

21  in a while where we have to sign contracts.  We may want

22  to rent a cell phone -- contract for cell phone service.

23  You may want to rent an apartment or rent some piece of

24  equipment or go to a bank and obtain money.

25            When you do something like that and you

1  sign a written contract -- I tell you what.  I'll pick

2  on you, Ms. Yandell, if I could.

3              Do you read the contract in a situation

4  like that before you sign it?

5              JUROR YANDELL:  Yes.

6              MR. JONES:  Great.  You are so far ahead

7  of me.

8              Now, thank you so much.

9              How many of you say:  I am just like Mrs.

10  Yandell, I -- I read the contract?

11              Thank you.  If you'll keep your hands up.

12  I see on the front row that would be 4 and Juror 7,

13  correct?

14              On the second row, I believe it's

15  Juror 9.

16              Anybody else that I'm missing?

17              Okay.  And then on the back row, we have

18  18, 19, 20, 21, 22, 23, and 27, I believe.  Did I get

19  everybody?

20              Thank you so much.

21              How many would say:  You know, I fall

22  into the other category; I'm like Mr. Jones; I don't

23  read them; I just sign them?  How many fall in that

24  category?

25              If you could, raise your hands.  So we've

```
 1  got a number of people there.
 2              We have 1, 2, 3.  We have 7, 10, 11, 12,
 3  13, 14, 15, 16, and 24.
 4              Thank you so much.  I appreciate it.
 5              Now, next, I tell you what.  I'll pick on
 6  not Mrs. Yandell this time, but I'll pick on Mr. Foster,
 7  if you don't mind, since you're so close to the
 8  microphone.
 9              I -- I would simply like to ask you if
10  you agree or disagree with this statement.  It is more
11  important to obey the spirit of a contract than it is to
12  obey its exact words?  Do you agree with that or
13  disagree?
14              JUROR FOSTER:  I would disagree.
15              MR. JONES:  Thank you, sir.  I appreciate
16  that.  Thank you so much.
17              How many people on the panel would be
18  like Mr. Foster and disagree with that statement?
19              If you would raise your hands.
20              Okay.  So we have everybody on the front
21  row.  We have everybody on the second row but 10; is
22  that correct?
23              JUROR GILLETTE:  I didn't hear the
24  question.
25              MR. JONES:  Excuse me, sir.  I apologize.
```

1    I'll try to speak into the microphone.  I failed to do

2    that.

3                 It is more important to obey the spirit

4    of a contract than to obey its exact words.  Do you

5    agree or disagree?

6                 JUROR GILLETTE:  (Indicating.)

7                 MR. JONES:  Disagree.  Everybody

8    disagrees here, right?

9                 Thank you very much.  I appreciate that.

10                Now, has anybody on the panel ever been a

11   party to a contract?  And I'm going to take out lending

12   agreements, so don't think about lending agreements.

13   Think below other contracts.

14                Has anybody ever been a party to a

15   contract that they felt was unfair?

16                Has anybody ever been a party to a

17   contract that for some reason you needed a redo?

18   Anybody had to renegotiate it?

19                Thank you, sir.  And that would be

20   Mr. Zimmerman, correct?

21                JUROR ZIMMERMAN:  Yes.

22                MR. JONES:  And I'm not going to go into

23   the details of it.  I don't want to pry.  Could you tell

24   me what kind of contract it was, sir?

25                JUROR ZIMMERMAN:  On a cell phone and

```
 1  also with DirecTV.

 2                   MR. JONES:  I understand.  Thank you,

 3  sir.

 4                   Now, has -- excuse me.  Yes, sir,

 5  Mr. Bister.  Did I get that right?  Did I pronounce your

 6  right?

 7                   JUROR BISTER:  Yes, correct.

 8                   The State of Texas Parks and Wildlife

 9  having a contract with one of the local navigation

10  districts at a lake here, and we have to renegotiate

11  with a different amount of funding provided to that

12  organization from year to year.

13                   MR. JONES:  Thank you, sir.  I appreciate

14  that.

15                   Has anyone ever been in a situation where

16  somebody or some company broke a contract that they had

17  with you, violated the contract?  Anybody ever been in

18  that situation?

19                   Nobody.  Thank you so much.

20                   Now, in this particular case, I believe

21  at some point in time, you may receive an instruction

22  from Judge Gilstrap that the size of the parties plays

23  no role in this case.  And I think we all would agree

24  with that.

25                   Just because one company is bigger than
```

1  the other company, that has nothing to do with who

2  should win a particular lawsuit.

3                    In this case, though, I think it's going

4  to be obvious, and everybody will know from the evidence

5  that Beneficial is smaller and Google is larger.  And

6  I'd like to ask you another question.  It's one of those

7  agree questions.  I'll just ask it to the whole panel.

8                    Does anyone agree with the statement that

9  the government must protect smaller businesses from --

10  from larger businesses?  Does anyone agree with that

11  statement?

12                    I take it by your silence that nobody

13  agrees with that statement.

14                    Do any of you think that because Google

15  is larger and -- yes, ma'am, Mrs. Hatfield; is that

16  correct?

17                    JUROR HATFIELD:  Yes, sir.

18                    MR. JONES:  Thank you so much.

19                    JUROR HATFIELD:  I believe small, large,

20  or whatsoever, government should protect the small

21  business.  The poor needs as much as the rich have.

22  That give us a chance and privilege to be somebody and

23  not just the rich.  Let the small business be --

24  accomplish what -- what they are doing.

25                    MR. JONES:  Thank you so much.  Thank

1    you, ma'am.

2                   My -- my next question would be this:  Do

3    any of you feel like that as you went through this case,

4    you might feel like:  Well, since Beneficial is smaller

5    than Google, they're somehow the underdog and we all

6    like to root for underdogs that somehow you might see a

7    need to protect them in any way?  Anybody feel like

8    that?

9                   Thank you so much.

10                  Now, Google in this case is insisting

11   that Beneficial comply with a written contract and is

12   suing with regard to that issue.

13                  Does anybody think that it's wrong for

14   Google to do that for whatever reason?  And let me ask

15   you this way:  Some people just think that there

16   shouldn't be lawsuits, and people should not go to court

17   and should not file lawsuits.  I've met people that feel

18   that way, and I respect their opinions in that regard.

19                  Does anybody fall into that category

20   whether it's for religious reasons or any other reason?

21                  Anybody?

22                  I see no hands.  Thank you so much.

23                  Now, in the past, have you personally or

24   has one of your family members ever had a dispute with a

25   large corporation that was significant that involved,

1    you know, a great consumption of your time or some

2    consumption of your time?  Anybody ever been in that

3    situation?

4                    Thank you.

5                    JUROR ROBISON:  Do you mean personal --

6                    COURT SECURITY OFFICER:  You need to step

7    up.

8                    JUROR ROBISON:  Did you mean personal or

9    in court?

10                   MR. JONES:  I meant personal.  It does

11   not have to be in court.

12                   JUROR ROBISON:  Yes, I have.

13                   MR. JONES:  Thank you, sir.  I appreciate

14   it.  Thank you for your answer.

15                   Now, this -- and since you brought it up,

16   I'll ask this question, which is a little bit similar.

17   I appreciate all the information you provided us on the

18   questionnaires.  It's very helpful.

19                   And you were asked about lawsuits on the

20   questionnaires.  Let me ask this question:  Has there

21   ever been a time in your life where you wanted to file a

22   lawsuit, but for some reason or other you were prevented

23   from doing so?  Has anybody been in that situation?

24                   Thank you so much.

25                   I'd like to move from the contract and

1  ask you a couple questions about your knowledge of

2  computers.

3          Now, how many of you would tell me, you

4  know, I am so good with computers that my family and

5  friends, when they have problems with what they're doing

6  with their computers, they come to me and ask my advice.

7          If you fall into that category, would you

8  raise your hands.

9          So I believe we have Mr. Robison; is that

10  correct, sir?

11          JUROR ROBISON:  Yes.

12          MR. JONES:  Mr. Phillips and Mr. Timmons

13  there.

14          Did I miss anybody?

15          Thank you so much.

16          When we go over here (indicating), I

17  think we have Mr. Kyle.  Is that right?  Thank you.

18          And Mr. Gillette.  Thank you, sir.

19          And then Ms. Phillips; is that correct?

20          Thank you so much.

21          Did I get everybody?

22          Oh, I missed somebody.  Mr. Blackwell; is

23  that correct?  Yes, thank you, sir.

24          How many of you -- and don't be -- don't

25  be shy, don't be bashful.  And you're not bragging

1   because I'm asking.  How many of you say, you know, when

2   I was in school, however far you went, I was good in

3   science?  I mean, I was good in science.

4              I knew you were going to say it,

5   Mr. Bister.  Mr. Bister, you certainly should be with

6   your employment.

7              And, again, another one is Mr. Phillips.

8   Thank you, sir.

9              Anybody else want to join that crowd?

10              Yes, sir?  And that would be Mr. Shuler;

11   is that correct -- or Mr. Shipman.  Okay.  I'm sorry.

12              Anybody else?

13              Thank you, sir.

14              I'm going to ask this question, but I'm

15   going to preface and tell you -- I'm just going to ask

16   you has this ever happened to you.  I promise you I will

17   not pry and ask about details.

18              Has anyone ever been treated unfairly in

19   a significant way by an employer?  If you would raise

20   your hand.  You've been in that situation?  And that

21   will be Mr. Blackwell; is that correct?

22              Thank you, sir.  And I won't ask any

23   details.

24              Anybody else that would join

25   Mr. Blackwell?

1               Yes, sir?  And that would be -- excuse

2  me -- Mr. Broadway, correct, sir?

3               Thank you, sir.

4               How many of you do work that requires you

5  to supervise others in your employment?

6               Thank you.  We have a number of people

7  here:  Juror 1, 2, 3, 7.  Thank you.

8               JUROR MICHAEL PHILLIPS:  I have a

9  question.

10              MR. JONES:  Yes, sir?

11              MR. PHILLIPS:  I'm retired, but I used to

12 supervise.  I currently am retired, but I used to be in

13 the position to supervise.  Does that count?

14              MR. JONES:  It counts.  Yes, sir.  Thank

15 you so much.

16              I think I've gotten through the front

17 row.  On the second row, we have Juror 8, 9, 10.  And

18 then we have Juror 15 and Juror 19 and 20 and 21 and 22;

19 is that correct?  And 24.

20              Have I got everybody?

21              And Mrs. Phillips too.  Thank you so

22 much.

23              Thank y'all.

24              Now, how many of you in your employment

25 on a day-to-day basis are required to negotiate

```
 1   contracts?  Anybody?

 2                Thank you so much.

 3                How many of you belong to a union or have

 4   belonged to a union in the past?

 5                Yes.  Okay.  We've got here Juror 1, 2,

 6   and then we're going to go to Juror 13 and 14.

 7                Did I miss anybody?

 8                Juror 16, Juror 19.

 9                Anybody else?

10                JUROR CRINER:  28.

11                MR. JONES:  And 28.  Thank you, sir.

12                Of those of you who have belonged to

13   unions, how many of you have held an office in the

14   union?  Anybody?

15                How many of you follow the stock market

16   on a daily basis?

17                Juror 1, 10 and 11 and 16 and Jurors 25

18   and 26.  Thank you so much.

19                And -- and, again, this is one of those

20   don't be bashful or shy.  I've done it.  How many of you

21   have written a letter to the editor or have called in a

22   radio talk show for any reason?  Anybody done that?

23   Great.

24                Juror 10.

25                And we have Mr. Kyle, and Mr. Gillette,
```

1  correct?

2                    And Mr. Blackwell.  Thank you so much.

3                    I have just a couple of specific

4  questions.  Ms. Rich?

5                    JUROR RICH:  Yes.

6                    MR. JONES:  I noticed in your

7  questionnaire that in the past you had worked for a

8  lawyer in Gilmer, Texas.  Could you tell me who that

9  was?

10                    JUROR RICH:  No, not in Gilmer.

11                    MR. JONES:  Not in Gilmer?

12                    JUROR RICH:  In Baltimore, when I first

13  got out of the high school, I worked for one for a short

14  period in Greenville, Texas.

15                    MR. JONES:  Who might that be?

16                    JUROR RICH:  In Greenville or in

17  Baltimore?

18                    MR. JONES:  In Greenville.

19                    JUROR RICH:  It was Crouch & Scott.

20                    MR. JONES:  Thank you, ma'am.  I

21  appreciate it.

22                    JUROR RICH:  That was the law firm.  It

23  was Robert Crouch and Robert Scott.

24                    MR. JONES:  Thank you so much.

25                    JUROR RICH:  You're welcome.

```
 1                    THE COURT:  And, Mrs. Hatfield, if I
 2     could ask you one more question.  You indicated you're
 3     retired.  What did you do before you retired?
 4                    JUROR HATFIELD:  I was in food service.
 5                    MR. JONES:  Thank you so much.
 6                    Now, obviously, you've heard a little bit
 7     about this case from Judge Gilstrap.  You've heard a
 8     little bit about it from me, so you have some knowledge
 9     about the case.
10                    My question to you is this:  For whatever
11     reason, whatever source, has anyone heard anything about
12     this case before you came into this courtroom?  Anybody
13     heard anything about it before you got here today?
14                    Thank you so much.
15                    After what you've heard about this case
16     and what you've heard is not evidence, but just after
17     the little introductions you've heard about this case,
18     do any of you -- you know, you're sitting there and you
19     say:  You know, this seems like a movie I've already
20     seen.  You know, this -- this reminds me of a personal
21     experience I've had in my life, and -- and I almost feel
22     like deja vu when I hear what I've heard about this
23     case.
24                    Does anybody have feelings like that as
25     we've embarked upon this case?
```

 1                  You've had some personal experience and

 2     you say:  Well, that's close to what's going on here.

 3                  Anybody?

 4                  And then finally, I'll ask you this

 5     question.  We all try to be very respectful of your

 6     time, and we have limited time to ask questions.  And

 7     then we probably don't always ask all the right

 8     questions.  But obviously it's my job on behalf of

 9     Google to try to ensure that all of the jurors are, as

10     the Judge said, fair and we're all starting even when we

11     begin this case.

12                  So whether I've asked the question or

13     not, is there anyone out there thinking:  You know,

14     Mr. Jones, I might be a good juror on a hundred cases,

15     but on this particular case, there's some reason why I

16     just couldn't be fair to Google, or I wouldn't be the

17     right person for Google?  Whether I've asked it or not,

18     does anybody fall in that situation?

19                  If so, would you just please raise your

20     hand.  Anybody?

21                  Thank you so much.  I appreciate your

22     time and patience.  And I look forward to exploring the

23     issues of this case with those of you ultimately

24     selected to be the jury.

25                  Thank you, Your Honor.

1                    THE COURT:  Mr. Rambin, you may address

2  the panel on behalf of the Defendant.  Would you like a

3  warning on your time?

4                    MR. RAMBIN:  Yes, Your Honor.  Thank you.

5                    THE COURT:  Five minutes?

6                    MR. RAMBIN:  Yes, five minutes.

7                    THE COURT:  Proceed.

8                    MR. RAMBIN:  Good morning, ladies and

9  gentlemen.

10                   Again, my name is Jeff Rambin, and I'm

11 speaking on behalf of Beneficial.  When I was making

12 introductions earlier, there was one person on our team

13 that I neglected to mention because he was out of the

14 courtroom at the time.  Mr. Holst Katsma who is a legal

15 assistant with the firm of Dovel & Luner.  And you might

16 see him coming in and out of the courtroom assisting us.

17                   I'm going to speak with you first a

18 little bit about the voir dire process, and then Judge

19 Gilstrap has permitted me to talk about the case a

20 little bit and ask you some questions.

21                   And Mr. Jones and -- and the Court before

22 laid out the process here.  I mean, we're -- as

23 Americans, we expect -- you know, we expect justice to

24 be blind.  We expect judges and jurors who are no

25 respecters of persons.  And that's something that

1  doesn't happen by accident.  It happens because we have

2  processes like this and processes where -- you know,

3  where -- judges, for example.  They have a code of

4  conduct where the judge has to step aside from a case,

5  if there's something that would even create an

6  appearance of impropriety.

7              And so in voir dire, this is where I get

8  a chance to question you, and you get a chance really to

9  question yourself based on what you hear about the case

10 during voir dire.

11             Now, let me begin by going through some

12 of the questions that we were talking about earlier.  My

13 name is Jeff Rambin.  I live in Tyler, Texas.  I am

14 married and recently separated.  When the Judge said

15 that he wanted full, complete, and truthful answers,

16 well, there you have it.  Sometimes it hurts.

17             We have four wonderful kids ages 12 all

18 the way down to 3 years.  I graduated from Texas A&M in

19 1991.  And then went on to get my law degree at Baylor.

20 I work at Capshaw DeRieux in Gladewater, Texas.

21             When I was explaining this -- this case

22 to my kids, my two older ones, they -- they said:  Dad,

23 why are you against Google?  We like Google.  Well, you

24 know, that wasn't exactly the answer I was looking for,

25 but that's what happens when -- when you listen.  And,

1   you know, that's -- my kids are their own people, and

2   that's their experience, you know.

3                   You know, they're not -- they're not in

4   it just for the old man.  I mean, they -- here's what

5   they've done.  They use computers.  They use Google

6   search engine.  They like these things, and so that was

7   their reaction.

8                   And I'd like to get your reaction as

9   well.  I mean, do any of you have a similar reaction?

10  When the name Google comes up, you're like:  Well, yeah,

11  I like Google.  I use Google.

12                  How many of you have that reaction to

13  Google?

14                  Well, let me go ahead and start -- start

15  with Juror No. 1, Mr. Bills.  I'm sorry.  What's your

16  reaction to Google along those lines?

17                  JUROR BILLS:  Well, like you were saying,

18  I use Google probably every day as a search engine as

19  far as that goes.  Since I'm retired, I've got a little

20  bit of time on my hands, you know, to search all the

21  time.  And that's how, you know, I look at it, so...

22                  MR. RAMBIN:  Thank you, Mr. Bills.

23                  Are there any of you who use Google

24  services other than the search engines?  Google is a

25  company that in the late -- I'll be with you in just a

1  minute, Mr. Blackwell.

2               They have services like Gmail.  They have

3  Google Maps, et cetera.  If you would, raise your hand

4  if you use services other than a Google search engine.

5               Let me see.  There are a number of hands

6  going on up.  I see Jurors No. 3 -- and if you would

7  hold your hands up while I read these off -- 3, 5, 6, 7,

8  8, 9, 10, 11, 13.  And then we've got 15 through 18, 19

9  through 21, 23, and then Jurors 24 through 27.

10              That's quite a lot of you.

11              Let me ask -- ask you, Mr. Broadway, what

12  service did you use other than Google's search engine?

13              JUROR BROADWAY:  Google Maps.  A big part

14  of my job is getting trucks where they need to be.

15              MR. RAMBIN:  And do you use Google Maps

16  day in and day out?

17              JUROR BROADWAY:  Every day.

18              MR. RAMBIN:  And does that cause you to

19  have a favorable -- favorable impression of Google?

20              JUROR BROADWAY:  I like it.  I mean, I

21  like the Google maps.  I mean, it helps me.

22              MR. RAMBIN:  Thank you, Mr. Broadway.

23  And let me see.  I believe Mr. -- Mr. Robison, what

24  other services of Google do you use?

25              JUROR ROBISON:  I use their browser,

```
 1  Google Chrome, and I use Maps.
 2                  MR. RAMBIN:  Okay.  Thank you.
 3                  Is there anybody's use -- well,
 4  Mr. Blackwell, you were the first one to raise your
 5  hand.  Let me ask you about your use of Google services
 6  besides just the search engine.
 7                  JUROR BLACKWELL:  I'm guilty of using
 8  just about all their products, non-commercial products,
 9  but their Chrome, Maps.  I mean, just -- Gmail, just
10  about everything they put out there I have used or am
11  using currently.
12                  MR. RAMBIN:  And do you feel that causes
13  you to start out leaning one way or the other in this
14  case?
15                  JUROR BLACKWELL:  No, because some of
16  their products I've used I don't like.  So there is a
17  balance there between what I like about Google and what
18  I don't like about Google.
19                  MR. RAMBIN:  Thank you, Mr. Blackwell.
20                  Now, a lot of services that Google
21  offers, they offer them for free to the consumers, but I
22  think it's fair to say that Google is a large company,
23  and they get to be a large company by making money.  And
24  a lot of what they do is through advertisements.  You
25  might see them on the Google webpage itself or through
```

1  advertisements with other services to other companies.

2                    Has anybody had occasion to use Google

3  advertising services?  For example, if you had a small

4  business and you wanted to promote your company online,

5  has anybody done any of that?

6                    I take it by your silence that nobody

7  has.  And when I say take it by your silence, we have to

8  read these things into the record so when Ms. Holmes

9  types it up.

10                    I've seen questionnaires from most of

11  you, but there were a few of you that didn't have

12  questionnaires.

13                    Does anybody own stock in Google?

14                    I take it by your silence no one does.

15                    Has anyone, either themselves or through

16  a family member, worked for Google?

17                    What about some companies related to

18  Google?  For example, offers the Android operating

19  system for smartphones, and there are companies

20  affiliated with Google that way?  I mean, they're not

21  necessarily owned by Google, but they're -- they're kind

22  of business-aligned together, companies like Samsung,

23  HTC, Motorola.

24                    Anybody have any connection with those

25  companies?

1        I take it by your silence no one does.

2   Thank you.

3        How many have already -- how many have

4   already formed an impression about this case based on

5   what Mr. Jones told you during his portion of the voir

6   dire, and in particular, his discussion of the breach of

7   contract allegations?

8        No one's formed an impression one way or

9   the other?

10        Okay.  Thank you.

11        How many of you believe that Beneficial

12   needs to prove something in this case?

13        Yes.  Thank you.  Let me lean into the

14   microphone here.

15        How many of you believe that Beneficial

16   needs to prove something in this case?

17        And let me -- please hold your hands up

18   while I read that off into the record.  We have Jurors

19   No. 8, 9, 12, 13, 24.

20        And did I miss anyone else?

21        Well, Ms. Hall, could you -- you raised

22   your hand about you believe that Beneficial needs to

23   prove something in this case.  Could you explain what

24   you're -- what you believe there?

25        JUROR HALL:  Well, I just think that's

```
 1  what we're here for, to -- you know, I think they both

 2  really -- you know, they've got to -- both sides have

 3  got to show me that one side is wrong.  So, yes, they do

 4  have to prove their case to me.  That's just the way I

 5  feel.

 6              MR. RAMBIN:  Well, Ms. Hall, let me ask a

 7  couple of follow-up questions about that.

 8              Google got to speak first because they

 9  brought this lawsuit.  And Google in this case will have

10  the burden of proof.

11              In other words, if we were just to stop

12  the case with no evidence being put on whatsoever, then

13  there would be nothing to tip the scales.

14              JUROR HALL:  Right.

15              MR. RAMBIN:  Is that something that you

16  would be able to do is, if there's no evidence, say that

17  then Google has not met their burden of proof?

18              JUROR HALL:  Well, I -- that's -- that's

19  a hard question to answer really because I haven't heard

20  anything yet.  So right now I am baseline.

21              I -- you know, to me, they -- both

22  sides -- I don't know how to explain what I want to say,

23  but I think, you know, for -- for this to be done right,

24  we need to hear both sides and then weigh it out.  Is

25  that not what we're here for?
```

```
 1                    MR. RAMBIN:  Thank you, Ms. Hall.

 2                    And expanding on what Ms. Hall was -- was

 3   talking about, let me put a statement out there and see

 4   if you agree or disagree.

 5                    The truth of a lawsuit usually isn't

 6   known until both sides have had their say in court.  How

 7   many of you would agree with that statement?

 8                    It appears that most -- most hands agree

 9   with that statement.

10                    Is there anyone who would disagree with

11   the statement that the truth of a lawsuit usually isn't

12   known until both sides have had their say in court?

13                    I didn't see any hands.  Thank you.

14                    Let me follow up on that.  Given that the

15   truth of a lawsuit may not be known until both sides

16   have had their say in court, does anyone have a problem

17   with a party who files a lawsuit based on allegations,

18   based on the best information they have available?

19                    Does -- does that give anybody qualms?

20   And let me put it another way.  Is there anyone that --

21   that believes that if what somebody alleges in a

22   lawsuit, at the end of the day, turns out not to be what

23   the jury finds, what are your views about that lawsuit

24   being filed in the first place?  Anybody -- would

25   anybody have a negative view of a lawsuit based on that?
```

1              Well, let me ask -- let me ask this:  Are

2  any of you members of an organization regarding lawsuit

3  abuse such as East Texans Against Lawsuit Abuse or

4  Texans for Tort Reform?

5              I see no hands.

6              How many people feel there are too many

7  lawsuits in general?

8              I see a number of hands going up.

9              Jurors 3, 4, 10, 11, 15, 18, 19, 21, and

10  25.

11              Let's see, Mr. -- Mr. Timmons, yes, what

12  are your views on lawsuits?

13              JUROR TIMMONS:  Well, it seems you always

14  hear there's too many frivolous lawsuits, and then what

15  you hear is just kind of a basic what this lawsuit was

16  about.

17              And of course, a lot of that has to do

18  with the media and what they're projecting.  What you

19  hear over the news would make it sound like a frivolous

20  lawsuit.

21              Of course, you're not in the courtroom.

22  You really don't know all the details.  But it seems

23  like you hear that there's too many frivolous lawsuits.

24              MR. RAMBIN:  Thank you, Mr. Timmons.

25  You will hear that Beneficial Innovations has filed

1  lawsuits before this one to enforce its patent rights.

2           Does anybody, based on what you've heard

3  so far, have qualms with Beneficial Innovations filing

4  those lawsuits?  I mean, lawsuits before the one that is

5  here today.

6           Mr. Jones briefly summarized the case

7  from Google's point of view.  I'd like to briefly do

8  that from ours now.

9           Mr. Jones, on behalf of Google, he spoke

10  and asked questions about whether it's better to follow

11  the spirit of the contract or the exact words of the

12  contract.

13           And here's what Beneficial contends in

14  this case, is that there was a prior lawsuit by

15  Beneficial against Google alleging patent infringement.

16  We made allegations.  Google denied the allegations.

17  And there was a settlement.

18           Now, arising from that settlement was a

19  contract that will be at issue in this case.

20           Now, it's our contention that the exact

21  words of that contract spell out the rights of the

22  parties, and in particular, what it boils down to is

23  that this is a patent case within a contract case, that

24  there was a license given to Google that would also

25  cover Google's customers, but only to the extent that

1  what the customers did also constituted further

2  infringement by Google.

3            So that was the settlement.  Then we sued

4  some companies that use Google products and services.

5            Based on those facts alone, is there

6  anyone who has qualms with Beneficial suing Google

7  customers?

8            I see no hands.

9            Now, one step further.  Then the next

10  issue is:  What is the exact language of the contract?

11  And I think that's where the patent -- the patent case

12  within a contract case comes in.

13            It's our assertion and our contention in

14  this case that the upshot of the settlement agreement

15  with Google is that in order to prove their contract

16  case, Google is going to have to prove an infringement

17  case against themselves, that what was going on with

18  their customers also amounted to infringement by Google

19  itself.

20            Based on what you've heard today, is

21  there anyone who would have difficulties in holding

22  Google to proof of those facts?

23            Again, I see no hands.

24            Let me ask this question:  Does -- how

25  many of you just in general have qualms about people

 1   settling lawsuits, and in particular, where there's a

 2   settlement where both sides stick to their guns and say

 3   they are -- they were right at the beginning; they're

 4   still right now; but the -- the two parties compromise

 5   with each other; they reach an agreement on money and

 6   other terms, and they make a settlement agreement?

 7              Does anybody have qualms with a

 8   settlement of a lawsuit like that?

 9              How many of you have been in a contract

10   dispute other than where -- something, you know, like a

11   cell phone -- excuse me -- a cell phone carrier, a TV

12   provider, or something like that?

13              How many of you have been in a contract

14   dispute where you weren't necessarily personally

15   involved, but you were part of -- say a member of a

16   union where there was a dispute, where, as a union

17   member, you were having a dispute with an employer?

18              Yes, Juror No. 13.

19              JUROR HEARRELL:  Yes, sir.  I've had

20   disputes with the company that I worked for.

21              MR. RAMBIN:  And were those disputes that

22   you -- were personal to you or you were part of a larger

23   group that was having a dispute with the --

24              JUROR HEARRELL:  They were personal to

25   me.

1              MR. RAMBIN:  Okay.  And were they

2  disputes over an employment contract?

3              JUROR HEARRELL:  No.  It was basically

4  how I was being treated.  I wasn't -- it didn't resolve

5  the way I thought it should have been dealt with, but

6  I'm still employed, so...

7              MR. RAMBIN:  Okay.  Well, good.

8              Let me ask you about your beliefs about

9  the patent laws, and in particular, is there anyone who

10  believes that a company that has patents but doesn't

11  really make anything should be entitled to sue over

12  their patents?

13              Is there -- is there anybody who has

14  difficulty with that?

15              Let me put this another way:  Is there

16  anyone who believes that a company who owns patents but

17  does not manufacture or sell them is entitled to less

18  protection than companies who actually do manufacture

19  products?  Anybody here who feels that way?

20              JUROR CARPENTER:  I'm confused, I guess.

21              MR. RAMBIN:  Yes.

22              JUROR CARPENTER:  I'm confused on this,

23  because you said less protection.  If somebody puts up a

24  patent, I feel like that they should have protected the

25  patent themselves, whether they make it or not at that

1  time.  If somebody else comes along, they should --

2  should be protected on the patent, I think.

3          MR. RAMBIN:  Okay.  And -- and do you

4  feel that way regardless of whether the patent holder

5  makes products or not?

6          JUROR CARPENTER:  I guess so, yes,

7  because he, apparently, come up with the idea first.

8          MR. RAMBIN:  Well, knowing that

9  Beneficial Innovations does not have products and

10  services in the web space currently, is there anyone who

11  would lean against Beneficial on that account?

12          I take it by your silence -- I see no --

13  see no hands.  Thank you.

14          Has anybody read any articles regarding

15  patents or patent cases in the Atlantic Magazine or the

16  Wall Street Journal?

17          Another issue that will come up in this

18  case is gambling.  And gambling can invoke and provoke

19  strong feelings.

20          How many of you have a negative view of

21  gambling?

22          Keep your hands up.  It's Jurors No. 5,

23  10, 19, and 22.

24          Ms. Yandell, could you elaborate on your

25  feelings about gambling?

1              JUROR YANDELL:   I just don't believe in

2  gambling.

3              MR. RAMBIN:   And the reason why I brought

4  up gambling is that you will see in the patents at issue

5  in this case that they deal with the ability to play

6  online games for free and have advertising and other

7  functions associated with that.

8              Is there anything about the fact that Mr.

9  Goldberg, when coming up with this invention, one of the

10  applications for it was setting up free online games,

11  for example, where you could play blackjack online for

12  free, and then the people who were hosting the website

13  could make their money off advertisements?

14              Is there anything about that that would

15  cause you to lean against Mr. Goldberg or Beneficial

16  Innovations?

17              Thank you.

18              The companies that are -- that Beneficial

19  Innovations sued that Google is complaining about are

20  Advance Publications, Inc., ALM Media Properties, Inc.,

21  American Media, Inc., Autotrader.com, Inc., and Demand

22  Media, Inc.

23              Is anybody familiar with any of those

24  companies?

25              And I see a number of hands.

1              Let me ask it this way:  Is there anybody

2    familiar with any of these companies besides

3    Autotrader.com?

4              THE COURT:  You have five minutes

5    remaining, Counsel.

6              MR. RAMBIN:  Thank you, Your Honor.

7              Does anybody on the panel know Mr. Jones,

8    Mr. Allen Gardner in his office, his partner, and/or Ms.

9    Tekell at the law firm of Potter Minton in Tyler?

10             Does anybody know of Mr. Michael Collins

11   of Tyler?

12             Do any of you know each other?

13             I see a number of hands here.  Well,

14   well, let me start here with Mr. Robison.  Who do you

15   know on the panel?

16             JUROR ROBISON:  I know Ms. Hatfield.

17             MR. RAMBIN:  And how do you know

18   Ms. Hatfield?

19             JUROR ROBISON:  I've eaten some of the

20   food she's served.

21             MR. RAMBIN:  You look like a happy man.

22   That's good.

23             JUROR ROBISON:  Not very.

24             MR. RAMBIN:  Mr. Phillips, what about

25   you?

```
 1                  JUROR MICHAEL PHILLIPS:  I know
 2  Mr. Blackwell.  We've taught together at TSTC Marshall.
 3                  MR. RAMBIN:  Anybody else?
 4                  Mr. -- Mr. Hearrell, did you raise your
 5  hand?
 6                  Ms. Hall?
 7                  JUROR HALL:  I guess it's really more of
 8  an acquaintance.  Mr. Van Huss, he used to trade with my
 9  husband.  He'd come in and visit.  But since we don't
10  sell fuel anymore, we don't do business with their
11  company.  But I do know him.
12                  MR. RAMBIN:  Okay.  Thank you, Ms. Hall.
13                  Well, is there any question in your own
14  minds about whether you are -- would be a right juror
15  for this case?
16                  And, again, this is something that, you
17  know, we all come into -- we all want to be fair, but we
18  all have our own personal experience we bring to bear on
19  cases.
20                  You may be thinking that, you know, if
21  only Mr. Rambin or Mr. Jones had asked the right
22  question, then maybe, you know, they would have brought
23  to light something that would bear on my interest or
24  experience in this case.
25                  Anybody have any issues like that?
```

```
 1                    Thank you very much.

 2                    Again, I appreciate your participation in

 3  this process.  Thank you.

 4                    THE COURT:  All right.  Counsel, approach

 5  the bench, please.

 6                    (Bench conference.)

 7                    THE COURT:  I assume not, but does

 8  Plaintiff have any challenges for cause?

 9                    MR. JONES:  No.

10                    THE COURT:  Does Defendant have any

11  challenges for cause?

12                    MR. RAMBIN:  No.

13                    THE COURT:  Okay.  Then we have one lady

14  with a scheduling problem.  I'll talk to her, and then

15  we'll let you strike your lists.  Return to your seats,

16  please.

17                    MR. JONES:  Thank you, Your Honor.

18                    (Bench conference concluded.)

19                    THE COURT:  Ladies and Gentlemen, I'm

20  going to excuse you for a few moments to take a recess,

21  everyone except Ms. Hall.  I'm going to ask you to stay

22  in your seat, Ms. Hall.

23                    The balance of the panel, though, I'm

24  going to excuse.  I'm going to ask you to exit through

25  the double doors to the courtroom.  Stay close by.  The
```

1  water fountains and restrooms are to your left as you go

2  out these double doors.  Don't leave the building, but

3  stay out of the courtroom.

4              And also, ladies and gentlemen, I'm

5  instructing you not to discuss anything that's happened

6  through this selection process -- process so far.

7  You've not heard any evidence, but that notwithstanding,

8  don't discuss the selection process so far.

9              Talk about the weather; talk about the

10  upcoming Super Bowl; talk about whatever; but don't

11  discuss anything that's happened in the courtroom this

12  morning.

13              So with that, everyone except Ms. Hall,

14  if you'd excuse yourselves and exit the courtroom at

15  this time.

16              (Jury panel out.)

17              THE COURT:  All right.  Be seated,

18  please.

19              And, Counsel, if you would approach the

20  bench.

21              And Ms. Hall, would you come and join us

22  here at the bench.

23              (Bench conference.)

24              JUROR HALL:  It's scary.

25              THE COURT:  I promise, nobody's going to

1  bite you.

2              JUROR HALL:  Okay.

3              THE COURT:  You indicated early on that

4  you had a scheduling problem with being able to serve

5  this week.  Can you tell me some more about that?

6              JUROR HALL:  Well, it's really two

7  things.

8              My daughter's finding out today if she's

9  got some problems with her kidneys, and they find out

10 today if we have to do probably surgery.

11             And then last night, we got a call, and

12 my niece has passed away, and she's coming in from

13 Canada, and the funeral will be either Thursday or

14 Friday.

15             THE COURT:  Okay.

16             JUROR HALL:  So I don't know if that's --

17             THE COURT:  Your niece's funeral will be

18 Thursday or Friday this week?

19             JUROR HALL:  Yes.

20             THE COURT:  And where will the funeral

21 be?

22             JUROR HALL:  I don't know if that's --

23             THE COURT:  That's definitely going to

24 happen.  I hope you're -- I hope your kidney situation

25 with your daughter is not serious.

```
 1                    JUROR HALL:  Thank you.  Me too.

 2                    THE COURT:  But the funeral's going to

 3    happen regardless.  And with that, I'm going to excuse

 4    you from the panel.

 5                    JUROR HALL:  I would have loved this.  I

 6    really would, because it's really interesting to me.

 7    But my baby comes first.

 8                    THE COURT:  Well, I understand.  I

 9    understand the family situation.  I'm going to ask you

10    not to discuss anything about this conversation --

11                    JUROR HALL:  Okay.

12                    THE COURT:  -- or anything that you've

13    heard in Court this morning.  We'll have you and the

14    whole panel back in shortly.

15                    JUROR HALL:  That's great.

16                    THE COURT:  Thank you, Ms. Hall.

17                    JUROR HALL:  Thanks, guys.

18                    (Juror Hall exits.)

19                    THE COURT:  Counsel, how long do you need

20    to strike your lists?

21                    11:00 o'clock?

22                    MR. JONES:  Twenty minutes, Your Honor.

23                    JUROR YANDELL:  After 11:00.

24                    MR. JONES:  Your Honor, how many strikes?

25                    THE COURT:  Four per side.
```

```
 1                    MR. JONES:  Four per side.

 2                    (Bench conference concluded.)

 3                    THE COURT:  All right.  We're going to

 4    stand in recess while counsel strikes their peremptory

 5    challenges.  We'll stand in recess until five after

 6    11:00.

 7                    COURT SECURITY OFFICER:  All rise.

 8                    (Recess.)

 9                    COURT SECURITY OFFICER:  All rise.

10                    (Jury panel in.)

11                    THE COURT:  Be seated, please.

12                    All right.  Ladies and gentlemen, if you

13    will listen carefully.  As your name is called, if

14    you'll come forward and take your seat in the jury box.

15                    We're going to seat eight jurors in this

16    case.  Therefore, I'd like to have the first four on the

17    first row and the second four right behind them on the

18    second row of the jury box.

19                    And to make sure that you're centrally

20    positioned -- the jury is centrally positioned in the

21    jury box, if you would leave the last two seats in each

22    row -- those are the seats closest to the back of the

23    courtroom -- vacant.  So the first juror will sit in the

24    third seat from the end, and then we'll have four and

25    then four behind them.  I think that's clear.
```

1           Ms. Lockhart, if you will call the names

2  of the persons selected to serve on our jury.

3           COURTROOM DEPUTY:  Yes, sir.

4           Ernie Bills, Clinton Smith, Ann Yandell,

5  Gary Carpenter, Ronald Foster, Timothy Bister, Michael

6  Phillips, and Terry Timmons.

7           THE COURT:  All of you that were not

8  chosen to serve on the jury, I'm about to excuse you,

9  but I want to excuse you with the sincere appreciation

10  and thanks of the Court.  I know this has been a morning

11  you could have all found something else important to do,

12  and I appreciate very much your willingness to be here

13  and to serve and to offer yourself for jury service in

14  this case.

15           Jury service is, again, a very real and

16  important public service.  Though you weren't chosen,

17  all of you should feel very good about being here and

18  being a part of the process.  We, on the Court side,

19  appreciate and understand your willingness to be here.

20           What we do could not happen without

21  ordinary citizens being willing to be here and to report

22  for and to be available to serve on juries just such as

23  this one.  If you need anything from your employer with

24  regard to where you've been, Ms. Martin in the Clerk's

25  Office, will help you with that.  You'll see her on the

1 way out.

2                     Again, ladies and gentlemen, thank you so

3 much for your willingness to serve and your presence

4 this morning.  If you were not selected on the jury, you

5 are excused at this time.

6                     (Jury panel out.)

7                     (Jury remains.)

8                     THE COURT:  All right.  Be seated,

9 please.

10                     And if the members of the jury will now

11 stand, Ms. Lockhart, our Courtroom Deputy, will

12 administer the oath to you as jurors in this case.

13                     (Jurors sworn.)

14                     THE COURT:  Please be seated.

15                     I'm about to excuse you until the

16 evidence in the trial is to begin.  The trial and the

17 evidence in this case should begin -- I'm going to set

18 it at 12:45.  That's going to give you a long lunch

19 hour, but there are some matters I have to take up with

20 counsel and other things that make it such that 12:45 is

21 about the soonest we can plan to start.

22                     This will give you a good early jump on

23 the local lunch crowd in Marshall so you should have no

24 problems with lunch.

25                     Before we break, though, ladies and

1  gentlemen, I do need to give you a few more

2  instructions.  This case is going to be decided

3  solely -- solely on the evidence that you hear in the

4  courtroom and the exhibits that are introduced and the

5  documents that I permit to be received into evidence.

6            Up until this point, you have heard no

7  evidence whatsoever.  One of the first instructions I'm

8  going to give you, when you get back from lunch and we

9  start the trial, is that what the lawyers tell you in

10 this case is not evidence.  Those are simply their

11 contentions about what they think and hope the evidence

12 will show.

13           It's up to you, the jury, to decide what

14 the facts are in this case.  I will rule on the

15 questions of law, and I'll take up evidentiary and

16 procedural matters that may arise, but you, ladies and

17 gentlemen, as the jury, are the sole judges of the facts

18 in this case.

19           Accordingly, it's very important -- in

20 fact, it's absolutely essential that we do everything

21 possible to avoid you receiving any outside influences.

22 It is critical that your decision about the facts in

23 this case be limited to only the evidence that's

24 received during the trial in this courtroom.  So with

25 that in mind, I'm going to give you a few more

1    instructions.

2              Over the lunch hour, you may run into

3    people you see, and certainly when you get home tonight

4    somebody, I assume, will be waiting there to meet you.

5    The first question you're going to hear is:  Well, how

6    did it go in Court today in Marshall?  Don't answer that

7    question.  If you answer that question, you will start

8    down a slippery slope that will inevitably lead you to

9    violate my instructions to you.

10             Just tell whoever asks, you can't discuss

11   the case.  Blame it on me.  That's part of my job.  Tell

12   them the Judge told you specifically, emphatically you

13   couldn't say anything about the case.

14             Also I want you to understand that my

15   instruction about you not discussing the case applies to

16   the jury as a whole.  You are not to discuss the case

17   among yourselves.  Only after all the evidence is in,

18   the trial is over, and you have been excused to

19   deliberate in the jury room, then and only then can you

20   discuss the evidence in this case among yourselves.

21   Until that time, not only are you prohibited from

22   discussing the case with anyone, you -- that includes

23   the eight of you here are prohibited from discussing the

24   case with each other.  Just simply say, if somebody

25   outside the jury asks you:  The Judge has given me

1  specific instructions I can't talk about the case.  I'm

2  sorry.

3              With that in mind, when I say don't talk

4  about the case, I'm talking about not just verbal

5  communications, but any kind of communications.  So with

6  that in mind, that includes use of any social media or

7  other similar services that are available to you.  That

8  means don't go home and get on Facebook and post about

9  what happened during the trial or the jury selection or

10 anything that happened here in Court.  Don't use

11 Twitter, MySpace, any of the social media outlets that

12 are available to us.

13             Don't research to try to find out

14 anything about the case.  Don't go on the computer.  And

15 whether you use Google search engine or Yahoo!'s or

16 somebody else's, don't try to learn anything about the

17 case either online or from the local library or from

18 newspapers or magazines.  Don't go to any outside

19 sources to obtain any information.

20             Again, it is critical that your decisions

21 in this case be based solely and only on the evidence

22 that comes into this trial under oath and in this

23 courtroom.

24             Also I want you to know -- and I think

25 the chances of this are very remote, but it is within

1  the realm of possibility -- and this is an important

2  case -- if at any time anyone else approaches you and

3  wants to talk about this case or brings it up in a way

4  that you feel is improper or that they may be leading to

5  try and influence you in any way, you should immediately

6  let Ms. Martin in the Clerk's Office know.  She will

7  notify me, and I will deal with it.

8              Again, I don't think the possibility of

9  someone attempting to tamper with this jury is very

10 high, but it is within the realm of possibility, and you

11 need -- you need to be on your guard and at least be

12 made aware it is possible.  If that should happen, let

13 the Court know immediately.

14             Another thing, ladies and gentlemen,

15 during this trial, it's the Court's practice, and I've

16 instructed the lawyers in this case, that they are not

17 to talk with you.  So if you pass them in the hallway or

18 if -- during a recess or if you pass them on the

19 sidewalk coming in or going from the courthouse and they

20 walk right by you, don't think, wow, that lawyer was

21 sure unfriendly; he sure was rude; that's not the way a

22 nice person should be.

23             They're just doing what I've instructed

24 them to do.  So don't hold that against them.  Don't

25 think of that conduct as being rude or unfriendly.  It's

1    simply what the Court requires of them.

2              Also I think it would be a very good

3    practice for each of you, if you haven't already, to

4    make sure before we start back at 12:45 that you have

5    checked in with the Clerk's Office and make sure they

6    have a current cell phone number they can reach you in

7    case any reason today or any day during the trial we

8    need to get ahold of you before you're at the courthouse

9    for any reason.

10              And with regard to cell phones, I'm

11   instructing you to leave your cell phones in your

12   vehicles or at home, but don't bring them into the

13   courtroom with you.  And I have a very strict policy

14   about cell phones in the courtroom.  You will not hear

15   anyone else's cell phone in the courtroom.  If you do,

16   then I will take specific action.  But in regard to your

17   own cell phones, whether they're smartphones or

18   otherwise, leave them in your vehicles or leave them at

19   home.

20              All right.  Ladies and gentlemen, with

21   those instructions, I'm going to excuse you for lunch at

22   this time.  Again, you're going to hear this from me

23   more times than you care to before this trial is over,

24   but I say it repeatedly because it is that critical and

25   that important.

```
 1                    Don't discuss or communicate with anyone
 2  about this case, including each other.  With that,
 3  you're excused for lunch.  Please be back in the jury
 4  room about 12:40.  We'll try to start about 12:45.
 5                    COURT SECURITY OFFICER:  All rise.
 6                    (Jury out.)
 7                    THE COURT:  All right.  Please be seated,
 8  Counsel.
 9                    A couple of housekeeping matters, and
10  then we will break as well.
11                    Speaking of cell phones, somebody's
12  vibrated throughout the voir dire this morning.  I don't
13  know whose it is, but if I hear a cell phone, whether
14  it's a ring phone or a vibration, I will confiscate it.
15                    Does everybody understand that?
16                    That applies to everybody sitting in the
17  courtroom, as well as those at counsel table.  I'm not
18  going to hold the jury to one standard and make it
19  appear that I don't hold counsel or our observers to
20  another standard -- to the same standard.
21                    Also, there was a question raised in our
22  conference in chambers this morning about production of
23  the settlement agreement, and it's the heart of this
24  dispute.
25                    I understand there have been some parties
```

1  who technically have not given their affirmative consent

2  to its production.  To avoid any question about it, the

3  Court is ordering production of the settlement agreement

4  for purposes of this trial.

5              Also, per our discussion in chambers this

6  morning, with regard to the introduction as exhibits in

7  this trial of either the complaint, any amended

8  complaint, or any answers to the complaint from prior

9  lawsuits between these parties, and not specifically

10 relating to the pleadings in this case, complaints and

11 answers from prior lawsuits other than this case are not

12 to be used as exhibits.  They are expressly excluded as

13 exhibits in this case.

14             And as everyone, I clearly think,

15 understands, notwithstanding the original filing and

16 posturing of the parties, we're going to try this case

17 with Google as the Plaintiff and Beneficial as the

18 Defendant, references to the Plaintiff being Google and

19 references to the Defendant being Beneficial.  I think

20 everyone understands that.

21             Are there any questions from counsel or

22 any other matters that are housekeeping before we break

23 for lunch?

24             MS. ANDERSON:  Thank you, Your Honor.

25 I have a couple of housekeeping matters.

1          Would Your Honor prefer that I stand at

2 the podium?

3          THE COURT:  Yes.

4          MS. ANDERSON:  Thank you.

5          THE COURT:  My practice, Counsel, is to

6 basically have all communications with the Court from

7 the podium.

8          MS. ANDERSON:  Thank you, Your Honor.

9 Just a couple of small things.

10          First of all, Google would like to invoke

11 the Rule for exclusion of witnesses except as to experts

12 and corporate representatives.

13          THE COURT:  I'll ask for that after I

14 give my preliminary instructions.

15          MS. ANDERSON:  Thank you, Your Honor.

16          The second point, just for clarification

17 of the record -- and, Your Honor, I think you put on the

18 record the issue of ordering production of the

19 settlement agreement.

20          I just wanted to clarify that indeed the

21 agreement has been produced.  We just want to confirm

22 that that is something we can use publicly during the

23 trial.  It will be a public exhibit during the trial.

24          THE COURT:  That's my understanding.  And

25 whether or not either party moves to seal or redact

1 anything previously admitted at a later date before the

2 transcript goes out, that's another matter.

3          MS. ANDERSON:  Thank you, Your Honor.

4          THE COURT:  But as an -- my intention is

5 that the settlement agreement, as an admitted exhibit,

6 will be freely used during the trial.

7          MS. ANDERSON:  Wonderful.

8          And then just a final housekeeping

9 matter, there are a few issues with respect to

10 evidentiary rulings from Magistrate Judge Payne with

11 respect to which the parties might want to put in an

12 offer of proof just for the record preserving the

13 record.  We wondered what the Court's preference is

14 about how that be done and when that be done.

15          THE COURT:  My preference is that you do

16 that in writing at your discretion, and at a time of

17 your choosing, but primarily it is my preference that it

18 not interrupt the flow of the trial.

19          MS. ANDERSON:  Thank you, Your Honor.

20          THE COURT:  Anything further,

21 Ms. Anderson?

22          MS. ANDERSON:  Nothing further.  Thank

23 you.

24          THE COURT:  Mr. Adams, do you have

25 something?

1                    MR. ADAMS:  Yes, Your Honor.

2                    Your Honor, real quickly, Judge Payne,

3    during the pretrial conference order, said that he

4    thought that Your Honor would allow us 25 minutes for

5    our opening statement.  I wondered if Your Honor has

6    given us your official blessing on that.  I just wanted

7    to make sure we --

8                    THE COURT:  That's my typical time

9    allotment.

10                    MR. ADAMS:  Thank you, Your Honor.

11                    THE COURT:  Will that be satisfactory?

12                    MS. ANDERSON:  Yes, Your Honor.  Thank

13    you.

14                    THE COURT:  Good, because that's what

15    it's going to be anyway.

16                    MR. ADAMS:  Thank you, Your Honor.

17                    THE COURT:  All right.  If you want a

18    warning, whether it's five minutes, three minutes,

19    whatever, just ask for it when you go to the podium.

20                    Anything else, Counsel?

21                    MR. ADAMS:  No, Your Honor.

22                    THE COURT:  Then I will check with you

23    before 12:45, but we'll plan to start with the jury

24    about 12:45.

25                    We stand in recess.

```
 1              COURT SECURITY OFFICER:  All rise.

 2              (Lunch recess.)

 3              * * * * * * * * * * * * * * * * * * * * * *

 4

 5

 6

 7                        CERTIFICATION

 8

 9         I HEREBY CERTIFY that the foregoing is a

10   true and correct transcript from the stenographic notes

11   of the proceedings in the above-entitled matter to the

12   best of my ability.

13

14

15

16   /s/_____              ____1/21/14_____
     SHELLY HOLMES, CSR                     Date
17   Official Court Reporter
     State of Texas No.:  7804
18   Expiration Date  12/31/14

19

20   /s/_____        _1/21/14_____
     SUSAN SIMMONS, CSR                  Date
21   Official Court Reporter
     State of Texas No.:  267
22   Expiration Date  12/31/14

23

24

25
```