```
 1                  IN THE UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF TEXAS
 2                          MARSHALL DIVISION

 3   GOOGLE, INC.                       *    Civil Docket No.
                                        *    2:11-CV-229
 4   VS.                                *    Marshall, Texas
                                        *
 5                                      *    January 23, 2014
     BENEFICIAL INNOVATIONS, INC.       *    10:45 A.M.
 6
                         TRANSCRIPT OF JURY TRIAL
 7         BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP
                    UNITED STATES DISTRICT JUDGE
 8

 9   APPEARANCES:

10   FOR THE PLAINTIFF:     MS. CHRISTA ANDERSON
                            MS. JENNIFER HUBER
11                          Keker & Van Nest
                            633 Battery Street
12                          San Francisco, CA    94111

13
                            MR. MICHAEL JONES
14                          MR. ALLEN GARDNER
                            Potter Minton Firm
15                          110 North College Street
                            Suite 500
16                          Tyler, TX    75702

17

18   APPEARANCES CONTINUED ON NEXT PAGE:

19


20


21   COURT REPORTERS:       MS. SHELLY HOLMES, CSR
                            MS. SUSAN SIMMONS, CSR
22                          Official Court Reporters
                            100 East Houston, Suite 125
23                          Marshall, TX    75670
                            903/935-3868
24

25   (Proceedings recorded by mechanical stenography,
     transcript produced on CAT system.)
```

APPEARANCES CONTINUED:

FOR THE DEFENDANT:     MS. JULIEN ADAMS
                       Dovel & Luner
                       201 Santa Monica Blvd.
                       Suite 600
                       Santa Monica, CA   90401

                       MR. DAVID ROSEN
                       Murphy Rosen
                       100 Wilshire Blvd.
                       Suite 1300
                       Santa Monica, CA   90401

                       MS. ELIZABETH DERIEUX
                       MR. JEFF RAMBIN
                       Capshaw DeRieux
                       114 East Commerce
                       Gladewater, TX   75647


         *************************************************


                   P R O C E E D I N G S

         (Jury out.)

         COURT SECURITY OFFICER:  All rise.

         THE COURT:  Be seated, please.

         All right.  Is the Plaintiff ready to
read into the record any exhibits used during
yesterday's portion of the trial from the preadmitted
exhibit list that have not previously been entered into
the record?

         MS. HUBER:  Yes, Your Honor.

         THE COURT:  Please go to the podium and

1  do so, Counsel.

2              MS. HUBER:  Plaintiff's Exhibits 13, 46,

3  and 88.

4              THE COURT:  Any objections from the

5  Defendant?

6              MR. RAMBIN:  No objections, Your Honor.

7              THE COURT:  Does the Defendant have a

8  corresponding list of exhibits to read into the record?

9              MR. RAMBIN:  Yes, we do, Your Honor.

10              THE COURT:  Please proceed.

11              MR. RAMBIN:  Defendant's Exhibits are

12  508, 509, 510, 511, 512, 520, and 549.

13              THE COURT:  Any objection to that

14  rendition by the -- from the -- from the Plaintiff?

15              MS. HUBER:  No, Your Honor.

16              THE COURT:  All right.  All right.  We'll

17  next move to the formal charge conference.  The -- the

18  Court's previously met with counsel in chambers, after

19  furnishing them with a working draft of the final jury

20  instruction and verdict.  The Court held a lengthy and

21  free-flowing discussion with counsel for both sides

22  regarding any suggested changes or amendments or

23  deletions to the final instructions and verdict form.

24              The Court's reviewed all the counsel's

25  comments and arguments and has now generated what the

1  Court believes to be a final set of jury instructions

2  and verdict form.  Counsel has had an opportunity to

3  review that, and at this time, we'll conduct a formal

4  charge conference where counsel for each party may make

5  formal objections to what's before it on the record.

6             So with that, whoever is going to speak

7  for Plaintiff and whoever is going to speak for

8  Defendant on this, I'll ask you to both go to the podium

9  at the same time.  That will enhance the efficiency of

10  the process.  And then we'll go through the instructions

11  and verdict form on a page-by-page basis, and I'll hear

12  any objections that you might have.  So if counsel will

13  do that at this time.

14             All right.  Turning to the final jury

15  instruction, is there objection from either party to

16  anything on Page 1 of that document?

17             MS. HUBER:  No, Your Honor.

18             MR. ROSEN:  No, Your Honor.

19             THE COURT:  Page 2?

20             MS. HUBER:  No, Your Honor.

21             MR. ROSEN:  No, Your Honor.

22             THE COURT:  Page 3?

23             MS. HUBER:  No, Your Honor.

24             MR. ROSEN:  No, Your Honor.

25             THE COURT:  Page 4?

```
 1                    MS. HUBER:  No objections.

 2                    MR. ROSEN:  No, Your Honor.

 3                    THE COURT:  Page 5?

 4                    MR. ROSEN:  Yes, on behalf of the

 5    Defendants.

 6                    THE COURT:  All right.  Go ahead,

 7    Mr. Rosen.

 8                    MR. ROSEN:  After the Court gives the

 9    instruction regarding the example of circumstantial

10    evidence, we believe it's appropriate to provide an

11    instruction that discusses the power to produce better

12    evidence.  In particular, we proposed:  You may consider

13    the ability of each party to provide evidence.  If a

14    party provided weaker evidence when it could have

15    provided stronger evidence, you may distrust the weaker

16    evidence.

17                    This is a clear and accurate statement of

18    the law, and I think it's an issue in this case that the

19    jury is going to have to decide, particularly with

20    respect to the issue of whether Google intended to cause

21    infringement.  And, you know, the way I believe it's

22    going to play out is Google's going to say we don't have

23    to -- our own people don't have to say they indirectly

24    infringe or they intended to infringe because we have

25    circumstantial evidence.
```

1            And I believe the jury is entitled to

2    know that they can disregard weaker evidence when Google

3    is the sole holder of the strongest evidence on that

4    issue.

5            THE COURT:  Is there a response from the

6    Plaintiff?

7            MS. HUBER:  For the record, Your Honor,

8    we would object to the inclusion of that instruction as

9    inconsistent with the Court's other instructions

10   concerning how the jury may consider the evidence.

11           THE COURT:  All right.  Well, I'm going

12   to overrule the request by the Defendant and elect not

13   to insert the language requested.  Counsel, at this

14   juncture, if I want argument, I'll ask for it.

15           Primarily, I'm affording you an

16   opportunity to make your objections on the record, so if

17   we could limit your comments to the objections

18   themselves.

19           MR. ROSEN:  I appreciate it.

20           Your Honor, as part of my objection, may

21   I state what the instruction we would request is?

22           THE COURT:  I thought you'd already done

23   that.

24           MR. ROSEN:  I mean, going forward as we

25   go through the rest of this.

1              THE COURT:  Well, I don't want in any way

2    to limit you from fully stating your objection.  I just

3    don't want to immediately move into argument about why

4    that's proper or -- or beneficial or why the Court

5    should do it.

6              MR. ROSEN:  Understood.

7              THE COURT:  Okay.  Anything else on

8    Page 5, either side?

9              MR. ROSEN:  No, Your Honor.

10             MS. HUBER:  No, Your Honor.

11             THE COURT:  Page 6?

12             MS. HUBER:  No objections.

13             MR. ROSEN:  No, Your Honor.

14             THE COURT:  Page 7?

15             MS. HUBER:  No objections.

16             MR. ROSEN:  No, Your Honor.

17             THE COURT:  Page 8?

18             MR. ROSEN:  Yes, on behalf of Defendants.

19             THE COURT:  All right.

20             MR. ROSEN:  All right.  There are two

21   things on Page 8.  First of all, we believe the -- with

22   respect to the instruction on nominal damages that --

23   where the Court says, but also that Google was not

24   harmed by Beneficial's conduct, that should be stricken.

25             And at the end of that sentence, the

1  Court should include an instruction that states:

2  However, to award nominal damages, you must first

3  conclude that Google has made a showing that it was

4  actually harmed by Beneficial's breach.

5              THE COURT: All right. Response from the

6  Plaintiff?

7              MS. HUBER: Your Honor, we would object

8  to that proposed revision to the Court's instruction.

9              THE COURT: Well, the objection is

10  sustained and the requested addition is overruled.

11              What's your second item on this page?

12              MR. ROSEN: The second item on this page

13  is at -- at the end of that sentence regarding nominal

14  damages, we would propose that the Court include an

15  instruction that says: Google's filing of this lawsuit

16  cannot be considered as harm to Google and cannot be the

17  basis for an award of actual damages or nominal damages.

18              THE COURT: Plaintiff have a response?

19              MS. HUBER: Your Honor, we would object

20  to the inclusion of that statement.

21              THE COURT: Okay. The Court elects not

22  to include that statement and overrules Defendant's

23  request that it be included.

24              Anything further, Counsel, on Page 8?

25              MR. ROSEN: No, Your Honor.

```
 1                    THE  COURT:   Anything  on  Page  9?

 2                    MR.  ROSEN:   No,  Your  Honor.

 3                    MS.  HUBER:   No  objections.

 4                    THE  COURT:   Page  10?

 5                    MR.  ROSEN:   No,  Your  Honor.

 6                    MS.  HUBER:   No  objection.

 7                    THE  COURT:   Page  11?

 8                    MR.  ROSEN:   No,  Your  Honor.

 9                    MS.  HUBER:   No  objections.

10                    THE  COURT:   Page  12.

11                    MR.  ROSEN:   Nothing,  Your  Honor.

12                    MS.  HUBER:   Your  Honor,  I  believe  that  on

13   Page  12  begins  the  instructions  for  direct  infringement.

14                    Plaintiff  would  object  to  those

15   instructions  as  inconsistent  with  the  language  of  the

16   contract  and  inconsistent  with  --  with  Google's  position

17   that  direct  infringement  can  be  established  by

18   Beneficial's  own  claims  against  Google's  customers.

19                    THE  COURT:   Response  from  the  Defendant?

20                    MR.  ROSEN:   Defendants  would  object  to

21   the  elimination  of  that  instruction.

22                    THE  COURT:   All  right.   Well,  the  --  the

23   objection  is  sustained,  and  the  request  for  inclusion  by

24   the  Plaintiff  is  overruled.

25                    Anything  else  on  Page  12?
```

1              MR. ROSEN:  No, Your Honor.

2              MS. HUBER:  Your Honor, I believe also --

3    also related to the direct infringement instruction,

4    Google would request that if the Court does give a

5    direct infringement instruction, we would -- excuse

6    me -- if the Court does give a direct infringement

7    instruction, we would object to the absence of a

8    statement that direct infringement can be proven by

9    circumstantial evidence, which is particularly

10   appropriate in this case based upon the language of the

11   contract.

12             THE COURT:  All right.  Well, the Court's

13   included an instruction on circumstantial evidence in

14   these final instructions and has made it clear in that

15   instruction that circumstantial evidence, if produced,

16   is adequate to prove any fact on that basis.  I'll

17   overrule your request.

18             All right.  Moving to Page 13, are there

19   any objections from either party?

20             MR. ROSEN:  Page 13, yes, Your Honor, on

21   behalf of Defendants.

22             THE COURT:  All right.

23             MR. ROSEN:  At the conclusion of the

24   direct infringement instruction, we would request that

25   the Court add that the mere filing of the complaint by

1   Google (sic) and the provision of infringement

2   contentions does not constitute evidence that the Google

3   customers actually do directly infringe any claim of the

4   Beneficial patents; rather, you must determine from the

5   evidence presented to you during this trial whether

6   Google has proven by a preponderance of the evidence

7   that the Google customers actually did directly infringe

8   any of the claims of the Beneficial patents, not just

9   whether they -- they were at some point alleged to have

10  infringed.

11             THE COURT:  What's the Plaintiff's

12  response to that request from the Defendant?

13             MS. HUBER:  We object to that request.

14             THE COURT:  Well, the Court is going to

15  overrule the Defendant's request to add that additional

16  instruction, accordingly, grant the Plaintiff's

17  objection.

18             Anything else on 13?

19             MR. ROSEN:  I just want to -- just to

20  clear up the record, I think when I stated what we

21  wanted to include, I said the filing of the complaint by

22  Google.  I meant to say the filing of the complaint by

23  Beneficial.  So I just wanted to correct that.

24             THE COURT:  All right.  Then let's go on

25  to Page 14.  Any objection from either party on Page 14

1    of the instructions?

2                    MR. ROSEN:  Nothing, Your Honor.

3                    MS. HUBER:  No, Your Honor.

4                    THE COURT:  Page 15.

5                    MR. ROSEN:  Yes, on behalf of Defendants.

6                    THE COURT:  All right.  State your

7    objection.

8                    MR. ROSEN:  At -- at the end of the

9    elements of the contributory infringement, we believe

10   the Court should include an instruction that

11   non-infringing uses are substantial when they are not

12   unusual, farfetched, elusory, impractical, occasional,

13   variant, or experimental.

14                   THE COURT:  Response?

15                   MS. HUBER:  Your Honor, we would object

16   to the -- the inclusion of that language.

17                   THE COURT:  The Court finds that that's

18   not necessary.

19                   The Court also has compared this

20   provision with the model generated by the Federal

21   Circuit Bar Association, and that additional instruction

22   is not included.

23                   Accordingly, I'm going to overrule

24   Defendant's request that that be included at this

25   portion of the instruction.

```
 1                    All right.  Anything else on Page 15?

 2                    MR. ROSEN:  No, Your Honor.

 3                    MS. HUBER:  No, Your Honor.

 4                    THE COURT:  Let's turn to Page 16.  Any

 5  objections from either party there?

 6                    MR. ROSEN:  No, Your Honor.

 7                    MS. HUBER:  No objections.

 8                    THE COURT:  Page 17.

 9                    MR. ROSEN:  No, Your Honor.

10                    MS. HUBER:  No objections.

11                    THE COURT:  Page 17 is the final page of

12  the final jury instructions.

13                    Turning to the proposed verdict form, are

14  there any objections from either party as to any portion

15  of the proposed verdict form?

16                    MS. HUBER:  No objections from Plaintiff,

17  Your Honor.

18                    MR. ROSEN:  No objections.

19                    THE COURT:  All right.  Then that

20  concludes the formal charge conference.

21                    We'll stand in recess for a few moments

22  while I reproduce the requisite number of copies for the

23  jury.  Then as soon as possible, I'll be back in Court,

24  we'll bring in the jury, give them the charge, and

25  proceed with closing arguments.
```

```
 1                    I've discussed closing arguments with

 2   counsel in chambers.  For the Plaintiff, Ms. Anderson,

 3   you're going to present the closing; is that correct?

 4                    MS. ANDERSON:  Yes, Your Honor.

 5                    THE COURT:  Are you going to present both

 6   -- both portions of the Plaintiff's closing?

 7                    MS. ANDERSON:  Yes, Your Honor.

 8                    THE COURT:  All right.  And for the

 9   Defendant, Mr. Adams?

10                    MR. ADAMS:  Yes, Your Honor.

11                    THE COURT:  Okay.  Counsel presenting

12   closing arguments, if you want a warning as to your

13   time, just simply ask for it when you go to the podium.

14                    All right.  With that, we stand in

15   recess.

16                    COURT SECURITY OFFICER:  All rise.

17                    (Recess.)

18                    (Jury out.)

19                    COURT SECURITY OFFICER:  All rise.

20                    THE COURT:  Be seated, please.

21                    All right.  Mr. McAteer, would you bring

22   in the jury, please?

23                    COURT SECURITY OFFICER:  Yes, sir.

24   All rise for the jury.

25                    (Jury in.)
```

1              THE COURT:  Be seated, please.

2              Ladies and Gentlemen of the Jury, you

3  have now heard the evidence in this case.  I will now

4  instruct you on the law that you must apply to that

5  evidence.  Each of you are going to receive a copy of

6  these instructions in written form that I'm giving you

7  now orally.  So unless you particularly want to, there's

8  no reason for you to make notes at this time.  You'll

9  have a copy to refer to later.

10             It's your duty to follow the law as I

11  give it to you.  However, you are the sole judges of the

12  facts.  Accordingly, do not consider any statement that

13  I have made during the trial or that I make in these

14  instructions as an indication that I have any opinion

15  about the facts in this case.

16             After I give you these instructions, the

17  attorneys will make their closing arguments.  States --

18  statements and arguments of the attorneys are not

19  evidence and are not instructions on the law.  They are

20  intended only to assist you in understanding the

21  evidence and the parties' contentions.

22             A verdict form has been prepared for you,

23  and you will take that verdict form with your copies of

24  the instructions into the jury room.  And when you've

25  reached a unanimous agreement as to your verdict, you

1  will have your foreperson fill in the blanks on that

2  form, date it, and sign it.

3              Answer each question in the verdict form

4  from the facts as you find them to be.  Do not decide

5  who you think should win and then answer the questions

6  to reach that result.  Your answers and your verdict

7  must be unanimous.

8              In determining whether any fact has been

9  proved in this case, you may, unless otherwise

10  instructed, consider the testimony of all witnesses,

11  regardless of who may have called them, and all the

12  exhibits received into evidence, regardless of who may

13  have produced them.  You may also consider any

14  stipulations received into evidence.

15              By the Court allowing testimony or other

16  evidence to be introduced over the objection of an

17  attorney, the Court did not indicate an opinion as to

18  the weight or effect of such evidence.  As I've stated

19  before, you are the sole judges of the credibility of

20  all the witnesses and the weight and effect, if any, to

21  be given to all the evidence.

22              When the Court sustained an objection to

23  a question addressed to a witness, you must disregard

24  the question entirely, and you may draw no inference or

25  speculate from the wording about what the witness would

1  have said, if he or she had been permitted to answer the

2  question.

3              At times during the trial, it was

4  necessary for the Court to talk to the lawyers at the

5  bench out of your hearing or by calling a recess.  We

6  met because often during a trial, things come up that do

7  not concern the jury.  You must not speculate about what

8  was said during such discussions outside of your

9  presence.

10              While you should consider only the

11  evidence in this case, you are permitted to draw such

12  reasonable inferences from the testimony and exhibits as

13  you feel are justified in the light of common

14  experience.  In other words, ladies and gentlemen, you

15  may make deductions and reach conclusions that reason

16  and common sense lead you to draw from the facts that

17  have been established by the testimony and evidence in

18  this case.

19              You are the sole judges of the

20  credibility or believability of each witness and the

21  weight to be given to each witness' testimony.  An

22  important part of your job will be making judgments

23  about the testimony of the witnesses who testified in

24  this case.  You should decide whether you believe all or

25  any part of what each witness had to say and how

1  important that testimony was.

2              In determining the weight to be given to

3  the testimony of a witness, you should ask yourself

4  whether there was evidence tending to prove that the

5  witness testified falsely concerning some important fact

6  or whether there was evidence that at some other time,

7  the witness said or did something or failed to say or do

8  something that was different from the testimony the

9  witness gave before you during the trial.

10              The testimony of a single witness may be

11  sufficient to prove any fact, even if a greater number

12  of witnesses have testified to the contrary if, after

13  considering all of the evidence, you believe that single

14  witness.

15              In making that suggestion -- excuse me --

16  in making that decision, I suggest that you ask

17  yourselves a few questions.

18              Did the person impress you as being

19  honest?

20              Did the witness have any particular

21  reason not to tell the truth?

22              Did the witness have a personal interest

23  in the outcome of the case?

24              Did the witness have any relationship

25  with either the Plaintiff or the Defendant?

1          Did the witness seem to have a good

2  memory?

3          Did the witness clearly see and hear the

4  things about which he or she testified?

5          And did the witness have the ability to

6  understand the questions clearly and answer them

7  directly?

8          Did the witness' testimony differ from

9  the testimony of other witnesses?

10          These are just a few of the

11  considerations that will help you determine the accuracy

12  of each witness and what they said.

13          You should keep in mind, of course, that

14  a simple mistake by a witness does not necessarily mean

15  that the witness was not telling the truth as he or she

16  remembers it, because people may forget things from time

17  to time or remember things inaccurately.  So if a

18  witness has made a misstatement, you need to consider

19  whether that misstatement was an intentional falsehood

20  or simply an innocent lapse of memory, and the

21  significance of that may depend on whether it had to do

22  with an important fact or only an unimportant detail.

23          Certain testimony in this case has been

24  presented to you through depositions.  A deposition is

25  the sworn, recorded answers to questions from the

1    witness in advance of the trial.  If a witness cannot be

2    present to testify in person from the witness stand, the

3    witness' testimony may be presented under oath in the

4    form of a deposition.

5              Before this trial, attorneys representing

6    the parties in this case questioned these deposition

7    witnesses under oath.  A court reporter was present and

8    recorded the testimony.  Deposition testimony is

9    entitled to the same consideration as testimony given by

10   a witness from the witness stand.

11             Accordingly, you should judge the

12   credibility and the weight -- you should judge the

13   credibility of and weigh the importance of deposition

14   testimony to the best of your ability just as if the

15   witness had testified before you in person in court.

16             Evidence was presented to you in the form

17   of answers to one of the party's written interrogatories

18   submitted by the other side.  These answers were given

19   in writing and under oath before the actual trial in

20   response to questions that were submitted in writing

21   under established court procedures.  You should consider

22   the answers insofar as possible in the same way as if

23   they were made from the witness stand.

24             Before each trial -- before this trial,

25   rather, each party had the right to ask another party to

admit in writing that certain matters are true through what are called requests for admissions.  If the other party admits those matters, you must accept them as true.  No further evidence is required to prove them.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence; that is, the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct or circumstantial evidence but simply requires that you find the facts based on the evidence presented, both direct and circumstantial.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.

However, other evidence, such as a turned on water hose, may provide a different explanation for the presence of the water on the sidewalk.

Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

1              When knowledge of a technical subject may

2   be helpful to the jury, a person who has special

3   training or experience in that technical field called an

4   expert witness is permitted to state his or her opinion

5   of those technical matters.

6              However, you are not required to accept

7   that opinion.  As with any other witness, it is solely

8   up to you to decide whether to rely on it or not.

9              There is one standard of proof that you

10  should apply in this case.  As I mentioned at the

11  beginning of the trial, preponderance of the evidence

12  means evidence that persuades you that a claim is more

13  likely true than not true.

14             In determining whether any fact has been

15  proved, you may, unless otherwise instructed, consider

16  the stipulations, the testimony of all the witnesses

17  regardless of who called them, and all exhibits received

18  into evidence regardless of who may have produced them.

19             As I did at the start of the case, I'll

20  first give you a summary of each side's contentions in

21  this case.  I'll then provide you with detailed

22  instructions on what each side must prove to win on each

23  of its contentions.

24             The Plaintiff in this case, Google,

25  Inc. -- the Plaintiff in this case is Google, Inc.  The

1  Defendant in this case is Beneficial Innovations, Inc.

2  Google's claim against Beneficial is for breach of a

3  contract.  In -- in 2010, Google and Beneficial entered

4  into a settlement agreement that gave Google and its

5  customers licenses to Patents No. 6,712,702 called the

6  '702 patent, and Patent 7,496,943 called the '943

7  patent, collectively called the asserted patents in

8  exchange for the payment of money by Google to

9  Beneficial.

10            In 2011, Google (sic) sued a number of

11  companies alleging infringement of the '702 and the '943

12  patents, and some of those companies were customers of

13  Google.

14            Google intervened to become a party to

15  that lawsuit and has alleged that Beneficial breached

16  the settlement agreement by bringing a patent

17  infringement lawsuit against these Google customers

18  using Google advertising products and services when that

19  use was licensed under the settlement agreement.

20            Google contends that Beneficial's claims

21  of infringement against these Google customers, based

22  upon their use of Google products and services violated

23  the licenses that Google paid for pursuant to the

24  settlement agreement.

25            Beneficial Innovations, which I'll simply

1 call Beneficial, denies that it breached the settlement

2 agreement with Google.  Specifically, Beneficial denies

3 that the Google customers are licensed to use the

4 patents.

5              The settlement agreement only creates a

6 license for Google customers if certain conditions are

7 met, and it is Beneficial's position that the conditions

8 necessary to create a license for Google's customers are

9 not met.

10              To fulfill your duty as jurors, you must

11 decide whether Google (sic) has breached the settlement

12 agreement, and if so, whether that breach caused damages

13 to Google.

14              To assist you in your duty as jurors, the

15 parties have stipulated to the following facts.  This

16 means that both sides agree that these are facts.  You

17 must, therefore, treat these facts as having been

18 proven.

19              (1) Beneficial, Inc. is a Nevada

20 corporation with its principal place of business in

21 Las Vegas, Nevada.

22              (2) Google, Inc. is a Delaware

23 corporation with its principal place of business in

24 Mountain View, California.

25              (3) On December the 20th, 2007,

1  Beneficial sued Google and others in the United States

2  District Court for the Eastern District of Texas in an

3  action titled Beneficial Innovations, Inc., versus AOL,

4  LLC, et al, called the AOL case.

5           Next, on June the 1st, 2009, Beneficial

6  sued Google and others in the United States District

7  Court for the Eastern District of Texas in an action

8  titled Beneficial Innovations versus CareerBuilder, LLC,

9  and others, which is called the CareerBuilder case.

10          Next, Google and Beneficial entered into

11 a contract, which shall be referred to as the settlement

12 agreement, effective November 2nd, 2010, resolving the

13 AOL and CareerBuilder cases.

14          Next, as part of the settlement

15 agreement, Beneficial granted Google a license to the

16 entire Beneficial patent portfolio, including the '702

17 and the '943 patents.

18          Next, also as a part of the settlement

19 agreement, Google paid Beneficial financial

20 consideration as specified in that agreement.

21          Next, DoubleClick, Inc., was acquired by

22 Google in March of 2008 and is a wholly-owned subsidiary

23 of Google.

24          Next, the current lawsuit was filed on

25 April the 20th, 2011, wherein Beneficial sued, among

1  others, Advance Publications, Inc.; ALM Media

2  Properties, LLC; American Media, Inc.; Autotrader.com,

3  Inc.; and Demand Media, Inc.

4          These companies are referred to

5  collectively as the accused Google customers.  In this

6  lawsuit, Beneficial alleged that each of these companies

7  infringe the '702 and the '943 patents.

8          Those are the stipulations.

9          Google alleges that Beneficial breached

10  the settlement agreement by suing the accused Google

11  customers for infringement of the '702 and '943 patents

12  based on their use of Google's DoubleClick product.

13          Google also claims that Beneficial's

14  breach caused harm to Google.  Beneficial denies that it

15  breached the settlement agreement and denies that Google

16  was harmed.

17          To recover damages from Beneficial for

18  breach of contract, Google must prove all of the

19  following:

20          (1) that Beneficial failed to do

21  something that the contract required it to do or did

22  something that the contract prohibited it from doing;

23          And (2) that Google was harmed by

24  Beneficial's conduct.

25          On the other hand, if you decide that

Beneficial failed to do something that the contract

required it to do or did something that the contract

prohibited it from doing but also that Google was not

harmed by Beneficial's conduct, then you may still find

that Beneficial breached the settlement agreement and

award Google nominal damages such as 1 dollar.

In reviewing the settlement agreement,

here are several general rules to guide you.

You should assume that the parties

intended the words in their contract to have their usual

and ordinary meaning unless you decide that the parties

intended the words to have a special meaning.

In deciding what the words of a contract

meant to the parties, you should consider the whole

contract, not just isolated parts.  You should use each

part to help you interpret the others so that all the

parts make sense when taken together.

You should assume that the parties

intended technical words used in the contract to have

the meaning that is usually given to them by people who

work in that technical field unless you decide that the

parties clearly use the words in a different sense.

The settlement agreement at issue is a

contract and contains a license to certain United States

patents, including the '702 and the '943 patents.  I'll

now explain what a patent is, what a license is, what is

direct patent infringement, and what is indirect patent

infringement.

Patents are granted by the United States

Patent and Trademark Office, often called the PTO.  A

valid United States patent gives the patent holder the

right, for up to 20 years from the date of the patent

application, to prevent others from making, using,

offering to sell, or selling the patented invention

within the United States or from importing it into the

United States without the patent holder's permission.

A violation of the patent holder's rights

is called infringement.  The patent holder may try to

enforce a patent against persons it believes to be

infringers by a lawsuit brought in a federal court.

A license to a patent is permission to

make, use, or sell the patented invention.  A license

may be granted by a patent holder in exchange for a fee

called a royalty or other compensation.

The claims of a patent, which are

commonly referred to as the claims, may describe

apparatuses, methods, products, such as machines or

chemical compounds or processes for making or using a

product.  In this case, both apparatus and method claims

are at issue.  Claims 1, 49, and 67 of the '943 patent

1  are method claims.  Claim 53 of the '702 patent is an

2  apparatus claim.

3                    A patent claim sets forth in words a set

4  of requirements in a single sentence.  These claim

5  requirements are usually divided into parts or steps

6  called limitations or elements.  For example, a claim

7  that covers the invention of a table may recite a

8  tabletop, four legs, and the glue that secures the legs

9  to the tabletop.  In this example, the tabletop, legs,

10 and glue are each separate limitations of the claim.

11                    There can be several claims in a patent.

12 A claim may be narrower or broader than another claim by

13 setting forth more or fewer requirements.

14                    You first need to understand what each

15 claim covers in order to decide whether or not there is

16 infringement of the claim.  The law says it is my role

17 to define the terms of the claims, and it is your role

18 to apply my definitions to the issues that you are asked

19 to decide in this case.  Therefore, as I explained to

20 you at the start of the case, I have determined the

21 meanings of certain claim terms, and I have provided you

22 those definitions of these claim terms.  These are in

23 your juror notebooks.

24                    You must accept my definitions to these

25 words in the claims as being correct.  It is your job --

1  job to take these definitions that I have supplied and

2  apply them to the issues that you are asked to decide,

3  including both the issues -- including the issue of

4  infringement.  For the claim terms that I've not

5  construed or defined, you are to use the ordinary

6  meaning of the term in the context of the patent.

7              I'll now explain how a claim defines what

8  it covers.  When a product or service meets all the

9  requirements of a claim, the claim is said to cover that

10 product, and that product is said to fall within the

11 scope of that claim.  In other words, a claim covers a

12 product where each of the claim elements or limitations

13 is present in that product.  If a product is missing

14 even one limitation or element of a claim, the product

15 is not covered by the claim.

16             If the product is not covered by the

17 claim, the product does not infringe that claim, unless

18 there is infringement by the Doctrine of Equivalents,

19 which I'll explain later.  A claim requirement may

20 describe a certain functionality or capability that the

21 device must possess.  In such cases, a device satisfies

22 the requirement if it is reasonably capable of operating

23 in the recited manner.

24             Patent claims may exist in two forms

25 referred to as independent claims and dependent claims.

An independent claim does not refer to any other claim of the patent.  An independent claim sets forth all of the requirements that must be met in order to be covered by that claim.  It is not necessary to look at any other claim to determine what an independent claim covers.

A dependent claim, however, refers to at least one other claim in the patent.  A dependent claim includes each of the limitations of the other claim to which it refers as well as the additional limitations recited in the dependent claim itself.  In this way, the claim depends on another claim.  To determine what a dependent claim covers, it's necessary to look at both the dependent claim and any other claim or claims to which it refers.

To find infringement of a dependent claim, you must first determine whether the independent claim to which it refers has been infringed.  Thus, you -- thus, you must consider all the limitations of both the dependent claim and the independent claim from which it depends.  If you decide that the independent claim has not been infringed, then the dependent claim cannot have been infringed.

If you decide that the independent claim has been infringed, you must then separately determine

1 whether each additional requirement of the dependent

2 claim has also been infringed.  If each additional

3 requirement has been -- has -- if each additional

4 requirement has been included, then the dependent claim

5 has been infringed.

6                    The beginning portion or preamble of a

7 number of claims use the word comprising.  The word

8 comprising, when used in the preamble, means including

9 or containing.  When com -- comprising is used in the

10 preamble, a device that includes all the limitations of

11 the claim is covered by the claim, even if the device

12 contains additional elements.

13                    In reaching your decision on

14 infringement, keep in mind that only the claims of a

15 patent can be infringed.  You must compare the asserted

16 patent claims as I have defined each of them to the

17 accused products and determine whether or not there is

18 infringement.  You should not compare accused products

19 with any specific example set out in the patent or with

20 the patent holder's commercial products or with prior

21 art.  The only correct comparison is with the language

22 of the claim itself as I have explained its meaning to

23 you.

24                    You must consider each claim individually

25 and must -- must reach your decision as to each

```
1  assertion of infringement based on my instructions about
2  the meaning and scope of the claims, the legal
3  requirements for infringement, and the evidence
4  presented to you by the parties.
5              I'll first tell you about direct
6  infringement.  Then I will tell -- then I will tell you
7  about inducement of infringement, and lastly, I'll tell
8  you about contributory infringement.
9              A patent can be directly infringed even
10 if the alleged infringer did not have knowledge of the
11 patent and with -- and without the infringer knowing
12 that what it was doing was infringement of the claim.  A
13 patent may also be directly infringed even though the
14 accused infringer believes in good faith that what it's
15 doing is not infringement of the patent.
16             Infringement does not require proof that
17 a party copied the asserted patent claims.
18             To prove direct infringement by literal
19 infringement of the asserted method claims, Google must
20 prove by a preponderance of the evidence that the
21 accused Google customers performed each and every step
22 of the claimed method in the United States.  Google must
23 prove this separately for each of the accused Google
24 customers.
25             To prove direct infringement by literal
```

1  infringement of the asserted apparatus claims, Google

2  must prove by a preponderance of the evidence that the

3  accused Google customers made, used, sold, or offered

4  for sale within the United States products that include

5  each and every requirement of the asserted apparatus

6  claims.

7            To infringe a patent claim, it must be

8  proved by a preponderance of the evidence that the

9  product or method of use includes each and every

10  requirement of Beneficial's asserted claims.  In

11  determining whether an accused product or service

12  infringes one or more of the asserted claims in this

13  case, you must compare the accused product or service

14  with each and every one of the requirements of the claim

15  to determine whether an accused product or service

16  contains each and every requirement recited in a claim.

17            A claim requirement is present if it

18  exists in an accused product or service or its method of

19  use just as it's described in the claim language,

20  either -- either as I've explained the language to you,

21  or if I did not explain it, as it would have been

22  understood by one of ordinary skill in the art.

23            Any one of the accused products or

24  methods -- if any one of the accused products or methods

25  omits any requirement recited in a claim, then you must

1   find that the particular product or method does not

2   literally infringe that particular claim.

3                   You must determine separately for each

4   asserted claim whether or not there is infringement.

5                   Direct infringement requires a party to

6   practice each and every element of a claimed invention.

7   Where no single party practices every element of a

8   claimed invention but more than one party practices

9   every element of a claimed invention, the claims

10  nonetheless may be directly infringed, if one party has

11  control over the practice of each and every element of

12  the claimed invention so that the practice of all

13  elements of the claimed invention is attributable to the

14  controlling party.

15                  In deciding whether Beneficial breached

16  the settlement agreement, you must determine whether the

17  accused Google customers are licensed pursuant to the

18  provisions of the settlement agreement that relate to

19  indirect infringement.

20                  Google alleges that the accused Google

21  customers' use of DoubleClick would constitute indirect

22  infringement of the patents by Google, except for the

23  license provision of the settlement agreement.

24                  There are two types of indirect

25  infringement:  Inducing infringement and contributory

1  infringement.

2          The act of encouraging or inducing others

3  to infringe a patent is called inducing infringement.

4          The act of contributing to the

5  infringement of others by, for example, supplying them

6  with a component for use in the patented invention is

7  called contributory infringement.

8          A party induces patent infringement if it

9  purposefully causes, urges, or encourages another to

10  infringe the claims of a patent.

11          Inducing infringement cannot incur

12  unintentionally.  This is different from the direct

13  infringement that I previously described which can occur

14  unintentionally.

15          To prove that Google induced patent

16  infringement such that the accused Google customers are

17  licensed under the settlement agreement, Google must

18  prove by a preponderance of the evidence that:

19          (1) Google knew of the patent at that

20  time;

21          (2) Google actively encouraged or

22  instructed another person on how to use a product or

23  perform a process in a way that infringes at least one

24  patent claim;

25          (3) Google knew or should have known that

the encouragement or instructions would result in infringement of at least one patent claim;

And (4) the other person infringed at least one patent claim.

To prove induced infringement, Google must prove that it had a specific intent to induce the infringement.  Google must prove that it knowingly induced infringement, not merely that it knowingly induced the acts that constitute infringement.  The specific intent to induce infringement may be shown by circumstantial evidence.

Finally, Google must prove that there is a direct infringement for each instance of indirect infringement.

The other type of indirect infringement is contributory infringement.  As with direct infringement, you must determine contributory infringement on a claim-by-claim basis.

Contributory infringement can occur when a party, with knowledge of the patent, supplies a part or a component to another for use in a patented product or machine or in a patented process.

In order for there to be contributory infringement by Google, someone other than Google must directly infringe one or more claims of the '702 and/or

1  the '943 patents.  If there is no direct infringement by

2  anyone, there can be no contributory infringement.

3             If you find direct infringement of the

4  '702 and/or the '943 patents, then contributory

5  infringement exists if Google proves each of these

6  factors by a preponderance of the evidence:

7             (1) Google supplied, sold, or offered to

8  sell a component within the United States for use in a

9  product, apparatus, or process during the time

10  Beneficial's patents are in force;

11             (2) The component is not a common or

12  staple item and has no substantial non-infringing use;

13             (3) The component constitutes a material

14  part of the invention;

15             And (4) Google sold or offered for sale

16  the component with the knowledge of the '702 and/or '943

17  patents and knowledge that the component was especially

18  made or adapted for use in an infringing manner.

19             To prove contributory infringement,

20  Google must prove each of the above requirements.

21             This completes my instruction on the

22  applicable -- applicable law in this case, and we will

23  now hear closing arguments from the attorneys from the

24  parties.

25             The Plaintiff may present its first

```
 1   closing argument.
 2                MS. ANDERSON:  Thank you, Your Honor.
 3   May I request a warning at 15 minutes?
 4                THE COURT:  You may.
 5                MS. ANDERSON:  Thank you.
 6                THE COURT:  You may proceed, Counsel.
 7                MS. ANDERSON:  Thank you, Your Honor.
 8                Good morning, ladies and gentlemen.  It's
 9   such a privilege to be here with you today and to thank
10   you on behalf of Google for all the time that you have
11   devoted to this case.  Again, it is such an important
12   service, and both parties thank you.  It is a service of
13   our country's justice system and so very important.
14                We're now at the part of the case where
15   you're almost to the point you can actually talk about
16   the evidence with each other and discuss it and
17   deliberate over the facts and the law.  And throughout
18   the course of your deliberations, you will have before
19   you all the law as presented by the Judge.
20                And you may remember at the beginning of
21   this case, I began by talking with you about the subject
22   of promises.
23                If I could have the next slide, please,
24   Ben.
25                We started talking about promises, and I
```

1  told you at the bottom of this case is the fact that

2  Beneficial made promises, and Beneficial broke them,

3  after having taken $2.45 million from Google in exchange

4  for certain licenses.  And I told you that it would

5  really boil down to these four key points of evidence

6  that we discussed at the very beginning of this case.

7            Well, now at the end of the evidence, we

8  can actually break this down more, because we actually

9  have seen the evidence that has come in.  And what I'd

10  like to do is go through with you a brief timeline of

11  events and cover some of the important evidence that you

12  have heard through the course of the trial.

13            Your Honor, may I have permission to

14  approach the easel?

15            THE COURT:  You may.

16            MS. ANDERSON:  So, ladies and gentlemen,

17  I will try to talk loud here, but please raise your hand

18  if you can't hear me.

19            You may remember from the course of the

20  evidence, and it's agreed by both parties that back in

21  2007, we had the first lawsuit.  And it was a lawsuit in

22  which Beneficial said that Google and other companies

23  were infringing the '702 patent.

24            Beneficial -- I'm going to abbreviate

25  Beneficial with a B -- said there was infringement.

1   Google -- Google denied infringement and said it was not

2   infringing.  And that lawsuit started and it started a

3   series of case events.

4               So then we have 2009.  Another lawsuit

5   Beneficial files on the '943 patent.  And what does

6   Beneficial say?  Again, it says Google is infringing.

7   Google and other customers were sued as well.  We have

8   Google denies infringement.

9               These are lawsuits in which we heard

10  testimony from Mr. Trinh.  They're lawsuits over the --

11  the method of advertising on websites.  It's lawsuits in

12  which Beneficial said both those patents were infringed.

13  And it's lawsuits in which DoubleClick was discussed as

14  part of discovery, using DoubleClick to put up ads.

15              So what happens?

16              The parties fight in those lawsuits for a

17  few years.  And you heard from Mr. Trinh that Google

18  decided that it would stop fighting and agree to a

19  settlement agreement.  2010, we have the settlement.

20  And there is a license.  A license.

21              This settlement license, which is Exhibit

22  1, which you'll have in the jury room and it's in your

23  juror notebooks, you may remember it had whereas

24  clauses.  Those are recitals where the parties agree,

25  hey, we are resolving this 2011 -- 2007 lawsuit.  We're

1   resolving the 2009 lawsuit.

2              At the very bottom there, it says the

3   parties desire to settle and resolve all differences and

4   disputes that may -- may -- that exist or may exist.

5   They wanted peace.  They agreed to licenses, and they

6   wanted to resolve disputes.  That's what they said in

7   the agreement.

8              And as part of that agreement, we know

9   Google agreed to and did pay $2.45 million.

10             So what happens?

11             This is November 2010.  Only a few months

12  later, in 2011, Beneficial sues all over again.

13             Beneficial files a lawsuit and alleges

14  infringement of the '702 and the -- the '943 patent all

15  over again.  Beneficial says infringement.  Beneficial

16  sues Google customers, customers that use DoubleClick.

17             And Google says, deny infringement.

18             Why?  Because we are licensed.  Our

19  customers -- our customers are licensed.  We deny

20  infringement, because we have the right to use those

21  inventions.  We paid money.  We resolved the dispute.

22             Ladies and gentlemen, that -- that is the

23  breach.  This was resolved.  The parties had agreed to

24  license terms.  This is the breach.

25             So what happens next?

1                   Well, 2012, 2013, these are years in

2    which that 2011 lawsuit continues.  And you heard

3    evidence about the fact that discovery went on through

4    those cases.  And discovery is an exchange of

5    information and situations in which Beneficial was asked

6    questions about Google and Beneficial was asked

7    questions about:  Are you accusing Google customers of

8    infringing, and are you accusing them of infringing

9    because of using DoubleClick products, the stuff --

10   DoubleClick products that were implicated in those

11   earlier products.

12                  Well, Beneficial says, oh, yeah.

13   Beneficial says again and again in Exhibit 12, in

14   Exhibit 13, in Exhibit 88, and Exhibit 8 and 9.  Very

15   important exhibits in this case.

16                  Exhibit 12, if we could have that up on

17   the screen, please, Ben.

18                  Exhibit 12 is a response to certain

19   interrogatories.  They're questions that Beneficial had

20   to answer.  And remember, there's a little bit of

21   switching of who's named the Plaintiff here.  This

22   Exhibit 12, Plaintiff is actually Beneficial, and you

23   can see that on the front page.  And Beneficial had to

24   answer those questions.

25                  So if we could have the next, Page 3 of

1   this exhibit up there, Ben.  The first line of that

2   sentence, if we could highlight it.

3                Plaintiff contends that each of the

4   accused Google partners infringes the patent-in-suit.

5   And then the last sentence, Ben, if we could highlight

6   that.

7                And that -- that was Beneficial's

8   position.  Whether the ads are served by Google or

9   someone else doesn't change the analysis.

10               They are admitting -- and this is an

11  interrogatory response.  As you heard from the Judge,

12  that's as good as testimony.  That's Beneficial's

13  testimony in this case.

14               Then we have Exhibit 13, ladies and

15  gentlemen, which also you'll have with you in the jury

16  room.  These are Beneficial's responses to Google's

17  requests for admission.  This is -- this is a fact in

18  this case.  What they admit in this is a fact in this

19  case.

20               Ben, if we could please show the page --

21  second page.  Let's show the jury what the question is

22  on the second page of Exhibit -- yes, Exhibit 13.

23               Yeah, there we go.

24               The question is:  Please admit that

25  Beneficial's allegations of infringement against Advance

1   Publications are based at least in part on its use of an

2   advertising product included by Google, including but

3   not limited to DoubleClick.  Google asked that question

4   with respect to all the accused Google partners.

5                   And what was Beneficial's answer?

6                   Let's see the next slide, please.

7                   It said:  Whether the advertising

8   presentations are served by Google, some other party, or

9   by a Defendant itself does not change the analysis.

10                  Plaintiff admits that its contentions are

11  based at least in part on the Defendant's use of

12  advertising presentations.  Here, Beneficial's saying we

13  are accusing customers of infringing, and we are not

14  carving out Google.  It doesn't matter.  We're saying

15  everything they are doing infringes.

16                  And that is -- as the Court explained to

17  you, this is an admission that must be accepted as true,

18  because this is Beneficial's own admission in a request

19  for admission.

20                  So if -- if we could take that down,

21  please, Ben.

22                  You also heard lots of testimony about

23  Exhibits 8 and 9.  And as you'll see in the jury room,

24  Exhibits 8 and 9, those are the infringement

25  contentions.  These are big, very big documents.  You

1    heard testimony that the appendix to these documents is

2    more than a hundred pages long.  And it sets out in

3    detail all of the explanation why Beneficial says Google

4    customers are infringing.  And never once said that they

5    were carving out in any way Google products.

6               So this is Beneficial embracing their

7    view that they put forth to the Court in order to get

8    more money from Google customers, their view that Google

9    customers infringe both patents, for the way they do

10   advertising using Google products.  So here, again,

11   Beneficial saying infringement.  Google's denying

12   infringement because licensed, okay?

13              So now here we are in 2014, and we're in

14   the trial.  What does Beneficial say?

15              Beneficial is running away from

16   everything it said in the course of this case before in

17   discovery and saying:  Oh, no, you can't prove

18   infringement.  There's no infringement here.  Even

19   though there's evidence in the case that we said there

20   is, we don't think that's true anymore.  They're denying

21   infringement all of a sudden, because, ladies and

22   gentlemen, you heard from Dr. Almeroth.

23              They apparently settled with those

24   customers that they chased in lawsuits and accused of

25   infringement and wrote those long documents to get them

```
 1  to settle.
 2                  Ladies and gentlemen, this is wrong.  The
 3  only party that's been inconsistent here is Beneficial,
 4  because it suits them in this trial to do that.
 5                  Hold them to their word.
 6                  So let's take a moment, ladies and
 7  gentlemen -- I'm going to leave the easel.
 8                  And if I can, Ben, could I please have
 9  Slide 3.
10                  I'm going to touch briefly on the core
11  things that Members of the Jury will be addressing in
12  the course of your deliberations.  The fundamental
13  question here, which will be on the verdict form, is
14  whether or not Beneficial breached the contract
15  settlement agreement.
16                  Did it do something that it wasn't
17  allowed to do, sue in violation of the license
18  provision.
19                  And was Google harmed?  It was.
20                  Let's talk about that quickly.  First of
21  all -- Slide 4, please.
22                  You know that it provided for a payment
23  that was made.  It is undisputed.
24                  Next slide, please.
25                  We know that this is the license
```

1  provision, and you'll have it before you in the jury

2  room, but this is the core license provision at issue in

3  this case.

4              Next slide, please.

5              We know that this has been diagrammed.

6              And, ladies and gentlemen, I have this up

7  here with some circles.  This is the part of Section 2-A

8  that deals with the license to the customers, and we saw

9  in the beginning of the case that what it talks about is

10  the fact that Defendants and their affiliates past,

11  current, and future partners.

12              Well, they're customers.  Those are the

13  folks that get the benefit of the license.  They have a

14  license but only to the extent of their role in using,

15  using the products or services of the Defendants.

16              That's Google.  And only to the extent

17  that the act by such partner would constitute direct or

18  indirect infringement of a claim of the licensed patents

19  by Google.

20              So here, ladies and gentlemen, the

21  question that you're posed with is:  Do we have using

22  and do we have indirect infringement?  And you may

23  remember indirect infringement is something that comes

24  in two flavors, inducement and contributory

25  infringement.

1              So let's talk about that.  Let's break

2   that down a little bit.

3              But what we will show is that Google has

4   proven in this case that those partners are licensed,

5   whether you consider it inducement or contributory

6   infringement.

7              Let's take a look, please, Ben, at

8   Slide 11.  Thank you.

9              So three main points here.  Why are the

10  Google customers licensed?

11             They're licensed because they use

12  DoubleClick to show ads in their websites.  They're

13  licensed because Google induces customers to do

14  advertising just the way Beneficial has said over and

15  over again it infringes.  And last, the customers are

16  licensed because Google contributes important components

17  to the things that Beneficial says infringes.

18             So let's take this one-by-one.

19             Next slide, please.

20             We'll start with use.  Do we know that

21  Google's customers use DoubleClick to show ads?

22             Next slide.

23             We certainly do.

24             Next slide, please, Ben.

25             You heard testimony in the course of the

1  case, and nothing has contradicted that testimony that

2  the customers that were sued use DoubleClick to show ads

3  just like in this picture we saw earlier in the

4  advertisement for iTunes in the top right corner.

5                    THE COURT:  You've used 15 minutes,

6  Counsel.

7                    MS. ANDERSON:  Thank you, Your Honor.

8                    Next slide, please.

9                    So let's move on to the second bullet,

10 because the first bullet is undisputed.

11                   Second bullet:  How do we know that

12 Google induces customers to do advertising in a way that

13 Beneficial says infringes?

14                   Well, ladies and gentlemen, let's look at

15 the elements of what you need to show to have

16 inducement.  And what I have on the board here is a

17 paraphrase of the Court elements of inducement.

18                   Again, it is the Judge's instructions

19 that govern, but I have paraphrased them on a -- on a

20 slide here just to make it a little easier to go through

21 together.

22                   First of all, to show inducement, you

23 need to show that there was knowledge of the patent at

24 the time.  There's no dispute here that Google was aware

25 of those patents.  It was sued on them starting in 2007.

1   So knowledge of the patent, proven.

2                   Second element:  Do we have active

3   encouragement or instruction of customers on how to use

4   a product in a way that infringes?

5                   Well, ladies and gentlemen, you heard so

6   much testimony from Mr. Jonathan Bellack, none of it

7   contradicted, about all the things that Google does to

8   instruct and encourage customers to use Google's

9   DoubleClick products to show ads in the websites, the

10  very websites that were sued for doing that very

11  advertising.

12                  So active encouragement and instruction,

13  absolutely met.

14                  Now, let's go to the third bullet

15  point -- actually, before I move on, and in a way that

16  encourages at least one patent claim.

17                  Ladies and gentlemen, you heard from

18  Mr. Trinh and Mr. Bellack Google has instructed and

19  encouraged our customers to use those -- those products

20  in just the way that in the contentions, Beneficial says

21  infringes the patent.

22                  So this element has been met.

23                  Third element:  Knew or should have known

24  that the encouragement or instructions would result in

25  infringement of at least one patent claim.

1                    Certainly, ladies and gentlemen, having

2    shown that Google was aware of these patents, that

3    Google continued to instruct and encourage its customers

4    to use those products just the way they'd always been

5    using them, that is showing of the knowledge necessary

6    here.

7                    And we know that in this case, Google

8    knew Beneficial was saying that that's infringing of the

9    patent.  They've been saying it since 2007.  So that has

10   been proven with that evidence.

11                   And finally, infringement of at least one

12   patent claim.

13                   Ladies and gentlemen, that's been proven

14   by the words of Beneficial itself.  Those exhibits I

15   went through with you from 2012 and 2013, including

16   binding statements on Beneficial, admissions by

17   Beneficial of what they say to be true, that establishes

18   here that under Beneficial's theory of this case, their

19   own words, there is infringement.

20                   So let's turn now to Slide 21, please.

21   Thank you.

22                   So let's go to the subject of

23   contribution.  Contributory infringement is something

24   that, again, has multiple elements, as you heard from

25   the Court.

```
 1                    Can we have Slide 22 up?  Thank you.

 2                    It has multiple elements.  And, again, I

 3     have paraphrased them.  It is the Judge's instruction

 4     that governs.  You have to have direct infringement of

 5     the patent.

 6                    Ladies and gentlemen, just like in

 7     inducement, as we just talked about, proven by the words

 8     of Beneficial itself.

 9                    And you heard -- you heard criticism from

10     Dr. Almeroth criticizing Dr. Alexander for not having

11     done an infringement analysis and criticizing through

12     the questioning of Dr. Alexander, but yet we were

13     relying here on evidence from the mouth of Beneficial

14     itself, and you never heard Dr. Almeroth once say that

15     he looked at those contentions and didn't agree with

16     them and thought they were false.  Never said it.  The

17     gentleman who was hired by an expert by Beneficial never

18     did that here.

19                    So what the -- the evidence we have

20     before us today are all the words that Beneficial made

21     in these proceedings about what they think infringes.

22                    So let's go now to the second bullet

23     point:  Supplied a component for use in a product or

24     apparatus.  There's undisputed evidence that Google

25     provides DoubleClick for use in the websites that have
```

1  been accused.

2            Third element:  Component is not a common

3  or staple item and has no substantial non-infringing

4  use.

5            And there are instructions on this, but

6  at its core, this is an argument by Beneficial

7  suggesting that they have proven that there's no

8  contribution, because they claim Google's DoubleClick

9  has substantial non-infringing uses under their theory

10  of this -- of the infringement.

11            However, if you listen closely to the

12  evidence and review closely the evidence and review in

13  your memory the testimony of the witnesses, you'll

14  recall that the evidence put forward on substantial

15  non-infringing uses, much of it only applied to some of

16  the claims at issue, not all.

17            And if Beneficial sued on even one of

18  those claims with respect to which there were no

19  substantial non-infringing uses, that's breach.

20            Secondly, we know that the evidence they

21  put forward on substantial non-infringing use wasn't

22  substantial at all.  We heard testimony on, for example,

23  on whether or not users disable cookies.  That is

24  something that is very infrequently done, and we heard

25  that from Mr. Bellack himself.

1          So, ladies and gentlemen, that -- that

2    establishes that Google's DoubleClick is not a common or

3    staple item and has no substantial non-infringing use

4    under Beneficial's theory.

5          Fourth point, we know this from

6    Mr. Goldberg's testimony that we heard on -- on the

7    deposition tape.  We know it from the testimony we heard

8    throughout this case about Google's DoubleClick ad tag.

9    And the products related to it clearly are a material

10   part of performing what Beneficial says is that its

11   invention can't even show an ad without that in the

12   website.  And we heard that from the witnesses

13   throughout the case.  That is how the ad gets there, and

14   the heart of the invention is the use of an ad with

15   content.

16          And finally, that the component was sold

17   or offered for sale with knowledge of the patent and

18   knowledge that it was especially made or adapted for use

19   in an infringing manner.

20          Ladies and gentlemen, we have shown this

21   and discussed it earlier, but Google's DoubleClick's

22   only purpose is to get those ads to show.  So that

23   element has been satisfied.

24          If I can go back to Slide 3, please, Ben.

25          So, ladies and gentlemen, under the

license, Beneficial did something the contract

prohibited it from doing.  It sued customers when they

were licensed and never should have been sued.

            And the second bullet point is that

Google has been harmed.

            Ladies and gentlemen, Google bought peace

for its customers.  Google bought peace under the terms

of the license, and those terms have been met here, and

they should never have been sued, which Beneficial did

in contravention of that agreement.

            So, ladies and gentlemen -- if I could go

to Slide 27.

            I ask that you please, please hold

Beneficial to its promises.  Beneficial was paid for

those licenses, and Beneficial should live up to those

licenses here.

            We'll ask that at the end of your

deliberations, you please find that Beneficial has

breached its contract with Google.

            Thank you very much.

            THE COURT:  Thank you, Counsel.

            If you'll take your board down and move

the easels.

            MR. JONES:  Can I help with that, Your

Honor?

```
1                    THE COURT:  You may assist.

2                    MR. JONES:  Thank you.

3                    THE COURT:  And Defendant may prepare to

4    address the jury with its final arguments.

5                    MR. ADAMS:  May I approach, Your Honor?

6                    THE COURT:  You may.

7                    MR. ADAMS:  Thank you.

8                    THE COURT:  Would you like a warning, Mr.

9    Adams?

10                   MR. ADAMS:  Five minutes would be fine,

11   Your Honor.

12                   THE COURT:  All right.  You may proceed

13   when you're ready.

14                   MR. ADAMS:  Thank you.

15                   Good afternoon -- we're almost to the

16   afternoon.  We're still in the morning session.  Good

17   morning, Members of the Jury.

18                   There is some inconsistency in this case.

19   Someone is being inconsistent, and one of the questions

20   you're going to have to answer is who is.  Who is taking

21   an inconsistent position?

22                   What Google wants you to believe is that

23   Beneficial at some point accused Google of infringement

24   that is now suggesting that there is no infringement.

25                   Let's be clear about this.
```

1              When you look at all of the documents,

2 what you will find is that Beneficial accused Google's

3 website of infringing.  What I mean by that, it

4 include -- it accused the apparatus.  The website that

5 had a store for storing, the website that transmitted

6 cookies, the website that received cookies, the website

7 that provided a service that was combined with

8 advertising to its customers.  It is the website that

9 was accused of infringement in the Google case and in

10 every other case that Beneficial has ever filed.

11              What's the inconsistency?

12              The inconsistency is this:  That this

13 case is not about Google's website.  It's about the

14 component, one part, Google's ad tag and whether or not,

15 if Google did not have a license, simply giving that ad

16 tag to one of its customers would mean that Google

17 infringes.

18              Again, let me make it clear.  We never

19 accused them of infringing just because of the ad tag.

20 But that's what they have to show here.  They have to

21 show that if they didn't have a license, just giving

22 that ad tag to their customers would make them liable

23 for indirect infringement.  That's what this case is

24 about.

25              Who is taking the inconsistent position?

1                Well, here's what you know.  Mr. Trinh

2  got up on the stand and what he told you was this:  At

3  no point either when we sued them or today -- well,

4  yesterday or the day before when he testified, did

5  Google ever admit that they infringed, whether they

6  infringed using their website or whether they infringed

7  indirectly by providing DoubleClick.

8                They've never admitted that.  That's

9  never been their position, and they don't want to even

10  make that position here today.  They don't believe it.

11  They don't believe that using DoubleClick causes them to

12  be indirectly infringing.  But in order for them to show

13  their case in this case -- or prove their case here,

14  they have to take the inconsistent position that giving

15  DoubleClick causes them to be indirectly infringing.

16                That's the inconsistency in the case.

17  It's not on us.  It's on them.

18                What -- what is the case about?  What is

19  it about?

20                Counsel for Google wants you to believe

21  that this is a case about them seeking peace for their

22  partners, and because we sued their partners, we

23  violated that.  That's what they want you to believe.

24                This, Members of the Jury, is what the

25  license agreement would have looked like if, in fact,

1  they had bargained for peace, complete peace.  It would

2  have looked like this.  It would have ended at the point

3  where it said we've got a license to you, Google, and a

4  license to your current and future partners, whether

5  direct or indirect.  It would have ended right there.

6  That's complete peace.  That means you are licensed;

7  your partners are licensed.

8            They would have said in a covenant not to

9  sue, Beneficial hereby irrevocably and unconditionally

10  covenant not to sue or to bring any legal action against

11  Google, YouTube, NBC, or their customers.  If they

12  wanted peace, if that's what they had bargained for,

13  that is what the license agreement would have looked

14  like.

15            But you know, Members of the Jury, that

16  that's not what it looks like.  It looks like this

17  (indicating), and they admit it.  It is not a complete

18  license.  It is a limited license.  And we understand

19  what that limit is.  The limit is, is that you are only

20  licensed, customers, if when we give you DoubleClick, we

21  are contributorily infringing, or we're inducing you to

22  infringe because of the patent.  That's the limit.

23            Now, here's the rub.  When Google

24  executed this license agreement, Mr. Trinh told you that

25  at the moment they signed on this document, they did not

believe that giving DoubleClick would cause them to be

indirectly infringing.

So what happens?

Well, they get letters now.  After

Beneficial sues their customers, they get letters

saying, hey, are we covered by the license?

At the moment Google gets those letters,

they have a decision to make in their head.  What do we

tell our customers?  Do we tell them, well, what we

really licensed or -- or bargained for was a license

that didn't cover you, because we knew at the time that

when we gave you DoubleClick, we knew we weren't

indirectly infringing.  Do they tell that to their

customers?

Or do they pick a fight with us,

Beneficial?  They had a decision to make.

This case is about the fact that Google

was embarrassed to go to their customers and say, look,

you may have thought you had a full license.  You may

have thought you had a blanket license to our

customer -- our products, but we didn't bargain for

that.  We bargained for a limited license, and we know

you're not licensed.

They're embarrassed to tell them that.

So you know what they did?  They picked a fight with

1  Sheldon Goldberg and his company.  That's what they did.

2  That's what this case is about.

3          You have to find -- and it's not our

4  burden, Members of the Jury.  They have to prove that

5  DoubleClick was licensed, and, therefore, their

6  customers were licensed for using DoubleClick, because

7  they are liable for indirect infringement.  It was all

8  their burden.

9          If, Members of the Jury, I didn't put on

10 Dr. Almeroth or any other witness and I stood up at the

11 end of their case and I said, Your Honor, Defendant

12 rests.  We have full right to do that.  You then look to

13 only what they put on to see whether or not they proved

14 their case.  That's the way the rules work.

15         Well, what do we know about the evidence?

16         The jury instruction that you will see

17 says that there has to be all of these things met by

18 them.  They have to put the evidence on to establish it.

19         The second thing is this, Point 2:  The

20 component -- and we're talking about DoubleClick -- is

21 not a common or staple item that has no substantial

22 non-infringing uses.  Everything that defense -- or

23 Plaintiff's counsel just said to you suggested that we

24 had to prove that there were substantial non-infringing

25 uses.

 1                  That is not the way it works.  We didn't

 2   have to prove anything.  We did, but we didn't have to.

 3   They had to show you that there were no substantial

 4   non-infringing uses for DoubleClick.  That was their

 5   burden, not ours.

 6                  Look at No. 4.  Google -- they had to

 7   show that Google sold or offered DoubleClick and that

 8   DoubleClick was especially made or adapted for use in

 9   the infringing manner.  That is, they have to show that

10   when they made DoubleClick, they made it especially

11   adapted to infringe the '702 patent and the '943 patent.

12                  That's what this -- this -- this

13   instruction says.

14                  Well, what do we know?

15                  Look at the evidence they put on to try

16   to show you that this product did not have a substantial

17   non-infringing use.  What -- what did they put on?

18                  They put on their expert who said to you

19   he wasn't here to offer any opinions on whether

20   DoubleClick has non-infringing uses.  He wasn't offering

21   any opinions on infringement period.  That was their

22   evidence.  On that, they have failed.

23                  We went further, though.  We presented

24   the testimony of Dr. Almeroth, who gave you three bases

25   on which DoubleClick has non-infringing uses.  Let me

1  give you an example using the Court's instruction about

2  what we mean by substantial non-infringing uses.

3               Let's assume there's a patent and the

4  patent is on a chair and the patent says you need a

5  chair that has a seat, a back, two handles, four legs,

6  and glue.  That's the patent.  Party A supplies the

7  glue.

8               In order for there to be contributory

9  infringement, that glue has to be made specifically to

10  be used only in the chair.  If the glue can actually

11  glue a table, if it can glue pieces of paper, if it's

12  made to glue the parts of the Lady of Justice over

13  there, then providing that glue does not make you liable

14  for contributory infringement.

15              That's what they have to show, and this

16  is what we showed through Dr. Almeroth.  There are other

17  uses for DoubleClick.

18              Number one, what -- they can use

19  DoubleClick on websites that don't use cookies.

20              Now, Dr. Alexander didn't dispute it,

21  right?  He didn't come in and say, well, I don't believe

22  that's true.  What did he try to do?

23              Well, when you heard from him, he tried

24  to suggest it wasn't substantial, right?  That it's

25  done, but it's only done a little bit of times.

1              Well, Dr. Almeroth said:  No, no, no.

2    It's done many times.  A lot of people disable cookies.

3    You have to judge which one of these experts you want to

4    believe.

5              But let me ask you this, Members of the

6    Jury:  If you had that question in your mind, the

7    question being how many people disable cookies in

8    today's day and age, what's the first thing you would

9    do?

10             Well, I'll suggest many of us would

11   Google it.  We'd -- literally, we'll go to Google, put

12   it on a search term (sic), and say how many people

13   disable cookies.  We would go straight to Google for the

14   answer, right?

15             What did Dr. Alexander do?  Did he go to

16   them and say:  Do a study; you've got a big website;

17   let's try to find out how many people disable cookies

18   when they come through your website?

19             No, he didn't do that.  He went to

20   Google, of course, but you know what they gave him?

21   They gave him smorgasbork.com.  They gave him a piece of

22   paper from a website he had never heard of that did a

23   study on one day about people that came to just their

24   website, and he came in and tried to tell you that this

25   was a scientific study that you should rely on to show

1    that disabling cookies was insubstantial.

2                  Members of the Jury, you need to

3    disregard this evidence, because Dr. Alexander could

4    have done better, and he knows it.  And when he was

5    testifying, he was embarrassed by the fact that he was

6    relying just on this piece of paper given to him by

7    Google.  You need to disregard it.

8                  What about the other ways that they can

9    use it?  Well, Dr. Almeroth told you you can use it on

10   websites that don't have registration.  They don't have

11   stores for storing user information.  Because that's a

12   requirement.

13                 He gave two examples of it.  It's one

14   where you don't have a store, or even if you went to a

15   website that had a store, had registration, and you

16   didn't register.  Those are ways that they use it.

17   Undisputed by Dr. Alexander.

18                 The third reason he gave:  DoubleClick

19   has used websites that do pop-up ads.  That doesn't

20   infringe our patent.  That's another substantial

21   non-infringing use.

22                 What do they say?  Well, we didn't just

23   stop with the fact that Dr. Alexander never disputed it,

24   that they didn't have any evidence; we went to their

25   witnesses, and we elicited testimony from them that

1  proved our point.

2          For example, Mr. Bellack:  DoubleClick

3  can be used when you disable cookies.  He admitted that.

4  What about store for storing user identification?  He

5  admitted:  DoubleClick can be used to serve ads on

6  websites that do not store information, yes.

7          We asked him about whether or not you

8  serve ads to people who don't register.  He admitted it,

9  yes.  What about pop-up ads?  Do you know whether

10  DoubleClick is used by your customers to serve pop-up

11  ads?  It is sometimes, yes.  From their own witnesses.

12          Now, the '943 wasn't talked a lot about,

13  and it's for this reason.  The '943 has this limitation

14  that talks about the overlapping.  In the corner at the

15  top, I show you what that is.  It's this overlapping the

16  ad with the service.  And what we know is, is that the

17  Court's construction precludes DoubleClick from even

18  infringing.

19          So using DoubleClick doesn't even

20  infringe the '943 patent, and, therefore, it is, by

21  definition, a substantial non-infringing use.  There's

22  no infringement.

23          So this is an issue you just need to move

24  on and disregard.  They haven't proven it, haven't even

25  attempted to prove it.  You need to move on.

1              In a nutshell, this is the issue.

2  DoubleClick is used to display ads on all websites.

3  Once you determine this, and you know that there are

4  some websites that don't infringe, you can't find

5  there's contributory infringement.

6              And they admitted it.  There is no

7  website that cannot display DoubleClick ads.  That ends

8  the story, Members of the Jury.  Ends the story of

9  contributory infringement.

10             So what about inducement?  Well, what we

11  know from the Court's instruction is that inducement

12  needs these limitations or these elements:  They have to

13  encourage in the way that infringes at least one patent,

14  and they have to have the specific intent to do so.

15             What's the evidence?  They want you to

16  make it seem as though what this claim or this

17  instruction says is that they have to encourage or

18  instruct in a way that infringes one element of a claim.

19  Because all they've shown you is that they instruct on

20  how to use the ad tag.  That's all they've shown.  They

21  haven't even attempted to show that they instructed any

22  of the other parts of the claims.

23             But that's not enough.  Here's what we

24  know.  The patent, the '702 patent, has a lot of

25  limitations.  The only part of this patent that refers

1  to or relates to the ad tag is in (h), the

2  advertising-related information.

3              What about the '943?  It's here.

4  Advertising presentations.  It's just one part of the

5  claim of the patent, of the invention.

6              Well, what we know is they don't

7  encourage their users to register.  That -- Mr. Bellack

8  admits that.  They don't encourage any of their users

9  to -- and by the way, this one is -- we not only went to

10 Bellack, but we went to their customers.

11             So this is Conde Nast.  Do they encourage

12 you to do this at the store?

13             No.  We heard it from their customers.

14 What about from Viacom?  Do they instruct you on the

15 store?

16             No, they don't.

17             And, in fact, you heard Viacom's -- their

18 customer said:  They don't instruct us on anything on

19 how to build our website.  They don't do that.

20             What about cookies?  This is an important

21 part of our Claim 53.  Bellack admits we don't instruct

22 them on how to use cookies to identify.  We don't.

23             Because of that, Members of the Jury, you

24 will find that they don't induce, they don't instruct,

25 they don't encourage on significant parts of this

invention.

In order for you to find inducement, you've got to find that they're inducing the patent, not just one claim, not just one part of one claim.  They don't do it for the '702, and they don't do it for the '943.

So what about this issue of specific intent?  You have got to find, in order to find that there was inducement, that they specifically intended when they gave DoubleClick that their customers were going to infringe our patents.

That's what they have the burden of proving.  They haven't done that.  Google has already admitted they have never formed the opinion ever that they infringe, that DoubleClick infringes.  Mr. Trinh admits that.

They've said:  Did you ever form the opinion that providing DoubleClick constitutes indirect infringement?

No.

So if they don't even believe it, if that's not their opinion, how could they be actively inducing their customers?  They don't.  They haven't proven the -- the -- any evidence of that.  And, in fact, they've admitted the opposite.

1          What about their position on the ad tags?

2          We asked Mr. Trinh:  Google's position on

3     ad tags doesn't meet the claim limitations, right?

4          No, they don't.

5          He already -- he admits over and over:

6     Given DoubleClick, the ad tags, we don't do that.

7          But you've got to find specific intent.

8     There is none.

9          One of the things we asked Mr. Bellack

10    was this:  When you were training your customers, you

11    couldn't have the intent to cause them to infringe the

12    patent because you didn't know about the patent, right?

13    And we asked that question because Mr. Trinh is the

14    person that actually went out and does the instructions.

15    He's the one that trains, encourages, right?

16          He didn't even know about the patents,

17    and he admitted:  No, I could not have intentionally

18    been inducing infringement because I didn't even know

19    about them.

20          This ends the debate.  It ends the story.

21          Mr. Alexander, their witness, their

22    expert, he had no opinions.  So they didn't put forth

23    any opinions on this.

24          Lastly, this issue of direct infringer,

25    the Court will instruct you, if there is no direct

1  infringement by anyone, there can be no contributory

2  infringement.

3           What's the evidence?  And, again, it's

4  their burden, Members of the Jury.  There is zero

5  evidence that any of the five partners that they

6  intervened for infringes any of the patents.

7           We asked Mr. Trinh:  You understand that

8  you needed to present to this jury evidence that

9  somebody infringed?

10          He answered:  Yes.

11          And you have full opportunity to have an

12  expert that, if hired, would do that infringement

13  contention.

14          And he answered:  Yes.

15          The Court has given you an instruction on

16 what you need for infringement, to find it.

17          Dr. Alexander was fully capable of doing

18 that analysis.  You know what he needed?  He needed the

19 patent, he needed the Court's construction, and then he

20 needed to go to one of their customers and say:  Tell

21 me -- let me see how your system works.  That's all he

22 needed.  He had the full opportunity.

23          For some reason, Google didn't ask their

24 expert to do that.  And you've got to wonder why.  It's

25 because Google knows -- they know and they knew it when

1 they signed the license agreement -- just giving

2 DoubleClick didn't infringe indirectly at all.

3              So they just disregarded it and decided:

4 You know what?  Don't look at that, Dr. Alexander.

5 So they didn't present any evidence.

6              What did they point to?

7              They point to these documents to try to

8 suggest to you that these suggest that we admit that

9 there was infringement by those five partners.  So they

10 point to our complaint, our interrogatory responses, our

11 requests for admissions, and the infringement

12 contentions.  And they say look at those, Members of the

13 Jury.  Those establish that we admit that Google's

14 DoubleClick infringes.

15              Members of the Jury, you look at those

16 documents.  Take a careful look at them.  There will be

17 no evidence in those documents that suggest that we at

18 any point said using DoubleClick constitutes indirect

19 infringement by Google.  Nothing in there says that.

20              Look at our response.  Now, Counsel put

21 up certain sections of our interrogatory responses and

22 she read them.  She read the first sentence:  Plaintiff

23 contends.  She read the last sentence, right?

24              Look at the sentence right after the

25 third sentence.  This contention that we had at the

beginning, this contention is not specifically based on

their use of any particular Google product or service.

What we told all of the Defendant -- it

doesn't matter whether you use DoubleClick or some other

ad tag from somebody else.  That's not the basis of our

contention.

Our contention is you're using

advertising-related information.  We don't care where it

comes from.  We're not specifically accusing anybody.

That's what we told them.

Now, look at the request for admission.

Again, Counsel read the first sentence.  She read

another sentence right around this area (indicating),

but you know what a request for admission is.  It says,

Beneficial, admit this.

What did we do when they say admit this

fact?

Take a look at the last sentence.  The

very first sentence says:  Accordingly, Plaintiff

denies.  This request for admission ended up in a denial

of the admission that they wanted us to make.  We deny

that its contentions are based on their product.  It is

not evidence of admission, Members of the Jury.  It's

the exact opposite.  It's a denial.

So what do we have here?

1          Their case boils down to this, Members of

2     the Jury:  The only thing that they pointed to, to try

3     to get you to believe that there's direct infringement,

4     our infringement contentions, the very big document that

5     they say you need to look to, the Judge pointed you to

6     the Lady of Justice, sitting -- standing right there.

7          The Lady of Justice is important in this

8     case, and I'll tell you why.

9          When I started preparing for this case, I

10    had a big concern and here was my concern:  Google was

11    bringing a case against Mr. Goldberg.  No one knows

12    Mr. Goldberg.  They were accusing him of breaking

13    promises.  Google is a big company.  Admittedly, Google

14    gives us great, great products.  We all may use their

15    search.  We may use their Gmail.  In fact, Google gives

16    away a lot of their products.

17         My concern was this:  There's a phrase

18    that I use and it's called the Google halo, and I

19    literally mean the halo.  And that's that thing that

20    hovers over Google that says we can do no wrong because

21    we're a big company; we give away great products.  My

22    concern was, when Google and their halo brings a lawsuit

23    against Mr. Goldberg and says, you breached their

24    contract.  That's all that's going to matter.

25         THE COURT:  Five minutes, Counsel.

1                    MR. ADAMS:  Thank you, Your Honor.

2                    But you know why I know?  I step into

3    this courtroom many times, and I've seen the Lady of

4    Justice.  Take a look at the Lady of Justice.  There's

5    something over her eyes.  Justice is blind.  She does

6    not see the halo.  It never makes it into this

7    courtroom.  When we picked you as jurors, you promised

8    you're going to base your -- your decision solely on the

9    evidence, not on that halo.  That's what you promised.

10   And that's what we're going to hold you to.

11                   Put the evidence on the scale of whether

12   or not there's infringement.  This is their evidence,

13   our infringement contentions.

14                   Well, what do we know about the other

15   side of the scale?

16                   If you want to look at what we believe at

17   any particular time, look at what they believe.  They

18   say we believe that it constitutes direct infringement.

19   Google doesn't believe that.  So do you know what that

20   means?

21                   At best the scales are even.  At best.

22   But you know what?  We've got more, because not only do

23   they not believe, but take a look at what they say.

24                   Mr. Trinh:  None of the infringement

25   contentions by themselves establishes infringement.

So you know what that does?  We have a little bit more

weight now.  You can't even look at our infringement

contentions just by themselves.  So the scales have

tipped in our favor.

            And lastly, other than the infringement

contentions, do you have any other evidence of -- of

infringement?

            Mr. Trinh says no.  I'm going to put that

testimony on our side as well.  This is what the scales

look like when you take away the halo.  When you put the

blind on Lady Justice, it looks like this.  They have

presented no evidence on direct infringement, Members of

the Jury.  And because of that and that fact alone,

you've got to find that there's been no breach of the

license agreement.

            I don't get to speak again because they

have the burden.  Hold them to that burden.

            Thank you.

            Thank you, Your Honor.

            THE COURT:  Plaintiff has seven minutes

remaining for final closing argument.

            MS. ANDERSON:  Thank you, Your Honor.

            May I request a three-minute warning

before the end?

            THE COURT:  You may.

1           MS. ANDERSON:  Thank you.

2           Ladies and gentlemen, you saw a slide

3    during Beneficial's presentation suggesting there's zero

4    evidence, zero evidence that there is direct

5    infringement, according to Beneficial's theory.  That is

6    not the case.

7           And when I went through the timeline with

8    you, I showed you all the exhibits where Beneficial

9    firmly embraced the fact that they believe that the

10   websites of customers that were sued infringes.

11          And they used those beliefs and

12   statements in court proceedings and used them to get

13   settlements and then come here in this trial and pretend

14   that they didn't say those words.

15          That is wrong.  There is plenty of

16   evidence, ladies and gentlemen.  What you haven't heard

17   is any evidence from Beneficial where they went through

18   those and denied what they said in there.  It hasn't

19   happened.

20          They could have walked through them and

21   said they were false and -- and denied that they had

22   accused of infringement in just the way they said in

23   Exhibits 8 and 9, but they didn't.

24          Also interesting, ladies and gentlemen,

25   is they criticized Dr. Alexander so heavily in

1  examination for having relied on Beneficial's own words

2  to prove infringement.

3              And remember, Exhibits 8 and 9, those

4  long contentions, they go through every claim, every

5  limitation, and prove in Beneficial's words why there's

6  infringement of all those claims.

7              They criticized Dr. Alexander for relying

8  on them in this case.  Yet, those are documents that are

9  signed by -- by Mr. Rosen, who examined Dr. Alexander.

10  The same gentleman that signed them was criticizing Dr.

11  Alexander on the stand for relying on them.

12              He also signed Exhibits 12 and 13.  He is

13  the mouthpiece for Beneficial.  Came to this court,

14  filed documents to sue customers, and Beneficial should

15  be held to those words.

16              It's also important to know that in this

17  case, as we saw in some of the slides in the beginning

18  of this case -- if I could have Slide 7 up, please, Ben.

19  Google, in the settlement agreement, was never required

20  to admit patent infringement.  That was a term of the

21  deal.  Google paid money for the licenses, got licenses

22  for customers, and Beneficial agreed, no admission of

23  liability for infringement.  Google didn't have to do

24  that to have the benefit of its license.

25              So for Beneficial to come and criticize

1 Google for having denied infringement in this case

2 because customers are licensed is the height of

3 hypocrisy.  It's part of the agreement.  It's right

4 there in there.

5 So, ladies and gentlemen, we heard

6 arguments from Beneficial suggesting that somehow Google

7 was embarrassed, embarrassed for having paid almost

8 $2-1/2 million for licenses for its customers.

9 Embarrassed?

10 Ladies and gentlemen, Google fought and

11 came to court, voluntarily put itself in this lawsuit

12 just to prove up in a court of law that its customers

13 were licensed and come to you and ask you to please find

14 that there has been a broken promise here and only award

15 $1 of damage.

16 We just want a finding that's clear so

17 this stops happening, so Beneficial doesn't go running

18 out suing customers again and again, putting in long

19 documents explaining why those customers are infringers,

20 never excluding DoubleClick products, and then turn

21 around settle.

22 And when called to the carpet again in a

23 lawsuit, claim:  Oh, we didn't mean anything we said; we

24 just -- you know, didn't really happen.

25 THE COURT:  Three minutes, Counsel.

```
 1              MS. ANDERSON:   Thank you, Your Honor.

 2              That's wrong, ladies and gentlemen.   We

 3   have a situation in this case where our customers have

 4   been sued and Google has been harmed.   There was an

 5   agreement in this case, and the harm is the deprivation

 6   of the peace, the freedom from litigation, that our

 7   customers can use our products in the way licensed

 8   without fear of suit.

 9              And you may note, and when you have the

10   evidence before you in the jury room, you're going to

11   see examples like Exhibits 31, 32, and 37 of the

12   complaints of our customers who are saying:   We've been

13   sued for using DoubleClick.   And those are complaints

14   because they were sued in violation of the license.

15              So, ladies and gentlemen, please remember

16   also, when you're evaluating the license provisions,

17   that to establish indirect infringement, you can do it

18   one of two ways.   It can be inducement or contributory.

19   And either way, those customers are licensed.

20              It's also important to remember that the

21   evidence that you heard throughout the case establishes

22   that Beneficial has consistently taken one position

23   until the point at which it's not very helpful to them

24   in this case, because they want to turn around and do it

25   again.
```

1          So, ladies and gentlemen, when you get to

2 the jury room, you're going to have with you a verdict

3 form, and you will be at the conclusion of your

4 deliberations.

5          And we're going to ask that when you fill

6 this out and answer the question, did Beneficial breach

7 the settlement agreement between Beneficial and Google

8 by bringing a lawsuit against accused Google customers

9 for infringement of the '702 and '943 patents, based on

10 their use of Google's DoubleClick product, please

11 answer, yes, Beneficial has breached, has broken the

12 promise.

13          And please find that Google is entitled

14 to $1 in damages so that we are not having to fight

15 through on this again and again with Beneficial refusing

16 to live up to their promise and dragging customers into

17 court and settling so that they don't have to answer for

18 what they've done.

19          Thank you, ladies and gentlemen, so much

20 for your time.  We very much appreciate it.

21          THE COURT:  All right.  That completes

22 closing arguments from the attorneys.  I now have a few

23 final instructions for the jury before you begin your

24 deliberations.

25          You must perform your duty as jurors

1  without bias or prejudice as to any party.  The law does

2  not permit you to be controlled by sympathy, prejudice,

3  or public opinion.

4           All parties expect that you will

5  carefully and impartially consider all the evidence,

6  follow the law as I've given it to you, and reach a just

7  verdict, regardless of the consequences.

8           Answer each question from the facts as

9  you find them.  Do not decide who you think should win

10 and then answer the answers accordingly.

11          Again, ladies and gentlemen, your answers

12 and your verdict must be unanimous.

13          You should consider and decide this case

14 as -- as a dispute between persons of equal standing in

15 the community, of equal worth and holding the same or

16 similar stations in life.

17          This is true in patent cases between

18 corporations, partnerships, and individuals, and a

19 patent owner is entitled to protect its patent rights

20 under the United States Constitution.  This includes

21 bringing a suit in a United States District Court such

22 as this for money damages for infringement.

23          The law recognizes no distinction between

24 the types of parties.  All corporations, partnerships,

25 and other organizations stand equal before the law,

1  regardless of their size, who owns them, and they are to

2  be treated as equals.

3          When you retire to the jury room to

4  deliberate upon your verdict, you will each have a copy

5  of this written charge to take with you.

6          If you desire to review any of the

7  exhibits which the Court has admitted into evidence

8  during the trial, you should advise me by a written note

9  signed by your foreperson and delivered to the court

10 security officer, and I will then send those exhibits or

11 that exhibit to you.

12         Once you retire, you should first select

13 your foreperson and then conduct your deliberations.

14 If you recess during your deliberations, follow all the

15 instructions the Court has given you about your conduct

16 during the trial.

17         After you have reached your verdict, your

18 foreperson is to fill in on the verdict form your

19 unanimous answers to the questions, then date it and

20 sign it.

21         Do not reveal your answers until such

22 time as you are discharged, unless otherwise directed by

23 me.  And you must never disclose to anyone, not even me,

24 your numerical division on any question.

25         Any notes that you have taken during this

1  trial are aids to your memory only.  If your memory

2  should differ from your notes, then you should rely on

3  your memory and not your notes.  The notes are not

4  evidence.

5          A juror who has not taken notes should

6  rely on his or her own independent recollection of the

7  evidence and should not be unduly influenced by the

8  notes of other jurors.  Notes are not entitled to any

9  greater weight than the recollection or impression of

10  each juror about the testimony.

11          If you want to communicate with me at any

12  time during your deliberations, please give a written

13  message or note to the court security officer, who will

14  bring it to me.

15          I'll then respond as promptly as possible

16  either in writing or by having you brought back into the

17  courtroom where I can address you orally.  I will always

18  first disclose to the attorneys your question and my

19  response before I answer your question.

20          After you have reached a verdict and I've

21  discharged you, you are not required to talk with anyone

22  about this case unless the Court orders it otherwise.

23  I'll now hand eight copies of the final instructions to

24  the jury and one blank verdict form to the court

25  security officer to deliver to you as you retire.

1              Ladies and gentlemen, you may now retire

2    to the jury room to deliberate upon and reach your

3    verdict.  We await your verdict.

4                   COURT SECURITY OFFICER:  All rise.

5                   (Jury out.)

6                   THE COURT:  Counsel, you are welcome to

7    wait in the courtroom or the courthouse or elsewhere.

8              Please make sure that my clerks have good

9    cell phone numbers for all counsel of record so that if

10   you're outside of the courtroom, we can call you in the

11   event of a note or a verdict.

12                  But until such time, we stand in recess.

13                  (Jury deliberations.)

14                  * * * * * * * * * * * * * * * * * * * *

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATION

2

3            I HEREBY CERTIFY that the foregoing is a

4   true and correct transcript from the stenographic notes

5   of the proceedings in the above-entitled matter to the

6   best of my ability.

7

8

9

10  /s/_____          ___1/23/14_____
    SHELLY HOLMES, CSR                    Date
11  Official Court Reporter
    State of Texas No.:  7804
12  Expiration Date  12/31/14

13

14  /s/_____        ___1/23/14_____
    SUSAN SIMMONS, CSR                    Date
15  Official Court Reporter
    State of Texas No.:  267
16  Expiration Date  12/31/14

17

18

19

20

21

22

23

24

25