**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| | § | |
| GOOGLE INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 2:11-cv-00229-JRG-RSP |
| | § | |
| BENEFICIAL INNOVATIONS, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## MEMORANDUM AND OPINION

On January 23, 2014, after a three day jury trial, a jury reached a verdict regarding Google

Inc.'s ("Google") breach of contract claim against Beneficial Innovations, Inc. ("Beneficial").

(*See* Dkt. No. 514.)   The jury found that (1) Beneficial had breached the prior Settlement

Agreement between Beneficial and Google by bringing a lawsuit against certain Google customers

for infringement of United States Patent Nos. 6, 712,702 (the "'702 Patent") and 7,496,943 (the

"'943 Patent") based on the customers' use of Google's DoubleClick product; and (2) Google was

entitled to recover nominal damages in the amount of one dollar.   (*Id.*)   Beneficial now seeks

judgment as a matter of law to overturn the jury's verdict.   (*See* Dkt. No. 541.)   Having reviewed

the parties' written submissions, and for the reasons stated below, the Court **DENIES** Beneficial's

motion.

## I.       BACKGROUND

In 2007 and 2009 respectively, Beneficial sued Google (among others) in this Court

alleging infringement of the '702 and '943 Patents.   (*See* Joint Final Pre-Trial Order, Dkt. No.

445, Uncontested Facts.) Google and Beneficial entered into a settlement agreement in 2010 (the

"Settlement Agreement"), which resolved Beneficial's infringement claims against Google in both

the 2007 and 2009 cases. (*Id.*) Paragraphs II.A and II.B of the Settlement Agreement provide as

follows regarding the license Google and its customers obtained under the agreement (the

"license"):

> A. Beneficial and its Affiliates grant a worldwide, royalty-free, non-exclusive,
> non-transferable (except as provided below) fully paid-up, perpetual, license under
> the Licensed Patents to (i) Google, YouTube, NBC Universal ("Defendants"), and
> their past, current, and future Affiliates, including a license for prior activities of
> future Affiliates, and (ii) ***Defendants and their Affiliates' past, current and future
> Partners, whether direct or indirect, <u>but only to the extent</u> that Partner's role in
> making, having made, using, selling, offering for sale, or importing any products
> or services of Defendants or their Affiliates <u>and only to the extent</u> such act by
> such Partner would constitute direct or indirect infringement of a claim of the
> Licensed Patents by Defendants or their Affiliates but for this license.***
>
> B. For the avoidance of doubt, ***the license in subparagraph (ii) above does not
> license a direct or indirect customer of Defendants or their Affiliates simply
> because the customer uses a product or service supplied by Defendants or their
> Affiliates if such use does not constitute direct or indirect infringement of the
> Licensed Patents by Defendants or their Affiliates.*** For example, assume (a)
> claim "x" of a Licensed Patent covers some activity of a Third Party's website, (b)
> the Third Party uses products or services provided by Google when engaging in the
> infringing activity, and (c) the provision of those products or services would not
> constitute direct or indirect infringement by Google of claim "x." In this example,
> the Third Party is not licensed under claim "x" to engage in such activity because
> only the Google products or services are licensed.
>
> (PTX 1 (emphasis added).)

Beneficial subsequently filed the instant case against a number of entities for infringing the

'702 and '943 Patents. Some of the named Defendants were and remain Google customers (the

"Accused Google Customers"). Google intervened and answered on behalf of these Accused

Google Customers and raised an affirmative claim for breach of contract against Beneficial. (*See*

Google's Complaint in Intervention, Dkt No. 193.) Google claims that Beneficial breached the

2

Settlement Agreement by bringing a lawsuit against the Accused Google Customers for infringing the '702 and '943 Patents based on their use of Google's DoubleClick product.   On December 10, 2013, the Court granted all parties' Joint Stipulation to Bifurcate Trial, and bifurcated Google's claim for breach of contract into a separate trial.   (*See* Dkt. No. 460.)   The resulting verdict is at issue here.

## II.   LEGAL STANDARD

A motion for judgment as a matter of law should be granted if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party.   *See* Fed. R. Civ. P. 50.   Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court asks whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict."   Fed. R. Civ. P. 50(b); *Am. Home Assur. Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004).   A jury verdict must stand unless there is lack of substantial evidence to support the jury's factual findings, or the legal conclusions implied from the jury's verdict cannot, in law, be supported by those findings.   *Id.*   "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."   *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000).   "[A] mere scintilla of evidence is insufficient to present a question for the jury."   *Id.*   In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable."   *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted).

## III.   ANALYSIS

Beneficial argues that it is entitled to a judgment as a matter of law because Google has not met its burden of proving that the Accused Google Customers' use of DoubleClick would constitute indirect infringement by Google.   According to the Settlement Agreement, the license only covers Google customers' use of a product or service *to the extent* that such use "would constitute direct or indirect infringement" by Google but for the license.   (*See* Settlement Agreement, PTX1 ¶ II. A.)   At the jury trial, Google presented two theories of indirect infringement – contributory and induced infringement.   Beneficial, however, contends that Google has failed to present substantial evidence establishing either of its indirect infringement theories.

In a footnote, Beneficial also renews its arguments made in its Rule 50(a) motion at the conclusion of the evidence that Google has failed to present sufficient evidence of direct infringement.   (*See* Dkt. No. 541 at 7.)   Given that there can be "no indirect infringement without direct infringement," the Court will first address the direct infringement issue.   *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 134 S. Ct. 2111, 2116 (2014).

## A.      Direct Infringement

Beneficial contends that it is entitled to judgment as a matter of law because Google has not met its burden to prove that the Accused Google Customers' use of Google's DoubleClick directly infringed the asserted patents.   Without proving direct infringement, Google would not be able to prove indirect infringement.   *See Limelight*, 134 S. Ct. at 2116.

The parties do not dispute that Google, as the party alleging breach of the Settlement Agreement, bears the burden to prove that the Accused Google Customers' use of DoubleClick would constitute indirect infringement by Google but for the license.   Accordingly, Google bears

4

the burden to prove that the use of DoubleClick would, without the license, directly infringe the asserted patents.   To satisfy such burden, Google proffered the following evidence at trial: (1) Beneficial's Second Amended Complaint accusing each of the Accused Google Customers of infringing the asserted patents; (PTX 4, ¶¶ 19, 26.)   (2) Beneficial's Infringement Contentions which included an element-by-element claim chart matching each element of the asserted claims to a certain feature on the Accused Google Customers' websites; (PTX 8; PTX 9.)   and (3) Beneficial's responses to two sets of interrogatories in this case.   (PTX 12 at 4; PTX 88 at 3.)   All these exhibits were admitted into evidence over Beneficial's objection.   (*See* Dkt. No. 501.)

Beneficial now argues that none of Google's supporting material constitutes evidence of direct infringement.   First, Beneficial asserts that its Second Amended Complaint is not evidence of infringement.   In the complaint, Beneficial alleges that each of the Accused Google Customers has "infringed" and "will continue to infringe" the '702 and '943 Patents because they used the patented methods on their websites "without a license or permission from Plaintiff."   (PTX 4 ¶¶ 19, 26.)   The complaint then goes on to identify a list of alleged infringing websites, including those of the Accused Google Customers.   (*Id.*)   Beneficial does not appear to dispute that, "[a]s a general rule," pleadings made in the same action is admissible "as admissions of the pleading party to *the facts* alleged therein."   *Continental Ins. Co. of New York v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971) (emphasis added); *Hardy v. Johns-Manville Sales Corp.*, 851 F.2d 742 (5th Cir. 1988) (same).   Beneficial's position is that its complaint contains only legal conclusions regarding infringement, but no factual allegations that may properly be considered as "admissions."   (*See* Dkt. No. 541 at 7 n.1.)

Courts generally distinguish between "legal conclusion" and "factual allegation" when

assessing the probative value of party admissions.   Some courts have held that while "facts alone may be admitted," a legal conclusion cannot be an admission.   *See Interstate Brands Corp. v. Celestial Seasonings, Inc.*, 576 F.2d 926, 929 (C.C.P.A. 1978) (in a trademark appeal, "that confusion is unlikely to occur" held as a legal conclusion and not an "admission"); *see also Giannone v. U. S. Steel Corp.*, 238 F.2d 544 (3d Cir. 1956) ("[L]egal conclusions are not admissions.")   Other courts, recognizing the fine line between factual pleadings and legal conclusions, have held that, where facts are in dispute, a party admission, even one akin to a "legal conclusion" rather than an "admission of fact," would be "an important factor in resolving the conflict in the evidence."   *See Borel v. U.S. Cas. Co.*, 233 F.2d 385, 388 (5th Cir. 1956); *Kiepfer v. Beller*, 944 F.2d 1213, 1219 (5th Cir. 1991) (admissions made in trial court pleadings that an individual "was a duly authorized agent" and that his actions were taken "within the scope of his duties" held to be evidence of the matter admitted).

Here, Beneficial contends that, on the issue of direct infringement, all that is contained in its complaint are legal conclusions which cannot constitute a party admission.   This Court disagrees.   It is axiomatic that a complaint must plead "enough *factual* matter that, when taken as true, states a claim to relief that is plausible on its face."   *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).   A complaint claiming direct infringement based solely on "legal conclusions" would have failed the threshold requirement of Federal Rule of Civil Procedure 8(a)(2).   *See id.*   Here, Beneficial's complaint is one that closely follows the sample complaint for direct patent infringement as set forth in Form 18, which requires, among other things, "a statement that defendant has been infringing the patent "by

making, selling, and using [the accused device] embodying the patent." *K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013) (emphasis added).   Beneficial's complaint alleges that each of the Accused Google Customers has "infringed" and "will continue to infringe" the asserted patents by using the patented methods on their websites, "without a license or permission from Plaintiff."   (PTX 4 ¶¶ 19, 26.)   That the Accused Google Customers have "infringed" and "will continue to infringe" appear to be legal conclusions.   *See id.* (Wallach, J., concurring) (that the defendant "is infringing" found to be legal conclusions).   However, the allegation that the Accused Google Customers have been using the patented methods on their websites, "without a license or permission from Plaintiff" is a factual one.   *See id.* (that the defendant is "making, selling and using electric motors that embody the patented invention" found to be a factual allegation).   Therefore, Beneficial's complaint does not contain only legal conclusions on the question of infringement.   This Court concludes that the factual allegations identified above, though closely intertwined with the ultimate legal conclusion, were properly considered by the jury as Beneficial's admission of the matter alleged.   *See Continental*, 439 F.2d at 1298.

Beneficial next argues that its infringement contentions, which match each element of the asserted claims to a certain feature on the Accused Google Customers' website, are not evidence of direct infringement.   (*See* PTX 8; PTX 9.)   According to Beneficial, infringement contentions are mere procedural tools for providing notice of a plaintiff's specific *theories* of infringement, and thus cannot be offered as evidence.   The Court agrees that infringement contentions are generally used as Beneficial describes.   In a patent infringement case, a plaintiff cannot prove infringement based on contentions alone, and must proffer sufficient evidence supporting the allegations set

forth in the infringement contentions.  *See, e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369 (Fed. Cir. 2006) (affirming a district court's grant of summary judgment of non-infringement when the plaintiff failed to provide evidence supporting its infringement contentions).

However, there have been situations where infringement contentions were properly admitted as evidence in a patent infringement case, and such contentions alone may suffice to prove that a particular device embodied each and every element of the asserted claims.  *See Evans Cooling Sys., Inc. v. General Motors Corp.*, 125 F.3d 1448 (Fed. Cir. 1997); *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363 (Fed. Cir. 2000).  In *Vanmoor*, the defendants moved for summary judgment of invalidity on the basis that the accused product had been on sale before the critical date of the asserted patents.  *See Vanmoor*, 201 F.3d at 1365.  Despite the patentee's objection that the defendants had failed to prove the accused product disclosed each and every element of the asserted claims, the district court granted summary judgment of invalidity, which the Federal Circuit affirmed.  *See id.* at 1366-67.  The Federal Circuit held that, when the item identified as anticipating prior art is the same as that which the patentee contended to be infringing, the patentee's infringement contentions alone satisfy the accused infringer's burden to prove anticipation.  *See id.* at 1367.  Essentially, "the patentee's accusations of infringement serve as a *binding admission*" that the accused device embodies each and every element of the asserted claims.  *Gammino v. Sprint Commc'ns Co. L.P.*, CIV. 10-2493, 2011 WL 3240830, at *2 (E.D. Pa. July 29, 2011) (citing *Vanmoor*, 201 F.3d 1363) (emphasis added).

*Vanmoor* is instructive in the instant case.  Here, Beneficial alleged that each of the Accused Google Customers infringed the '702 and '943 Patents by presenting advertisements on

their websites.   (*See, e.g.*, PTX 12 at 4.)   Beneficial's infringement contentions set forth in detail

how each and every element of the asserted claims were allegedly practiced by these customers' ad

presentations.   (*See* PTX 8 at 2-46; PTX 9 at 2-43.)   Although the contentions did not specifically

identify Google's DoubleClick as the accused infringing product, it is undisputed that all Accused

Google Customers used DoubleClick to present ads on their websites.   (Trial Tr. Jan. 21, 2014

PM at 87:3-7 (Trinh).)   According to Google's witness Mr. Mike Trinh, Beneficial's infringement

contentions describe precisely "what DoubleClick did and what [Google] told [its] customers to do

with DoubleClick."   (*Id.* at 93:25-94:7.)   Beneficial's own discovery response confirms that,

while its infringement contentions did not identify any specific technology, the contentions fully

apply to Google's ad-presentation product (i.e., DoubleClick).   (*See* PTX 12 at 3.)   Like the

defendants in *Vanmoor*, who relied on the plaintiff's infringement contentions to prove that the

accused product embodied each and every element of the asserted claims, Google is entitled to use

Beneficial's contentions in the same regard.   *See Vanmoor*, 201 F.3d at 1367.   In both cases, the

plaintiffs' accusations of infringement serve as a "binding admission" which may properly be

considered as evidence by the jury.   *See Gammino*, 2011 WL 3240830, at *2.

In summary, contrary to Beneficial's assertion, both its complaint and infringement

contentions may properly serve as evidence of direct infringement.   Based on this evidence, a

reasonable jury could have found that the Accused Google Customers' use of DoubleClick

constituted direct infringement but for the license.   Accordingly, the Court **DENIES** Beneficial's

renewed motion for judgment as a matter of law that Google failed to present substantial evidence

of direct infringement.

## B.      Contributory Infringement

As noted above, the Settlement Agreement granted a license to the Accused Google Customers *only to the extent* that a customer's use of Google products would constitute direct or indirect infringement by Google.  (*See* PTX 1.)   At trial, Google argued that such condition is satisfied, because the Accused Google Customers' use of DoubleClick constituted either contributory or induced infringement by Google but for the license.   Beneficial now contends that Google failed to present sufficient evidence on either of these indirect infringement theories.   The Court will address each theory in turn.

Contributory infringement prohibits sale and importation into the United States of a component or apparatus for use in a patented process that has no use except through practice of the patented method.  *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003).   35 U.S.C. § 271(c) sets forth the framework for proving contributory infringement:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).

The parties do not dispute that Google, as the party alleging breach of the Settlement Agreement, bears the burden to prove that, by supplying DoubleClick to the Accused Google Customers, it either contributed to or induced the infringement of the asserted patents, but for the license.   Beneficial asserts that Google failed to carry this burden with respect to contributory infringement, because (1) Google failed to introduce sufficient evidence establishing that DoubleClick was especially made or adapted to infringe Beneficial's patents; (2) Google failed to

10

present sufficient evidence that DoubleClick has no substantial non-infringing use.

In order to prove contributory infringement, it must be shown that the alleged infringer "knew that the combination for which its components were especially made was both patented and infringing," and that those components have "no substantial non-infringing use." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004) ("*Golden Blount I*").   Such "staple article of commerce doctrine codified in § 271(c) was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held for that infringement." *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1338 (Fed. Cir. 2008) (citing *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919-24 (2005)).

### a.       Especially made for use in infringing a patent

At trial, Mr. Sheldon Goldberg, the inventor of the asserted patents and also the sole owner of Beneficial, testified (via video deposition) that the claims asserted in this case "deal with the display of an advertisement, along with website information at the same time" and "in one webpage" to the user.   (Trial Tr. Jan 22, 2014 AM at 61:5-11, 66:11-25 (Goldberg).)   Google's DoubleClick, on the other hand, is "a set of products that Google provides to advertisers" for displaying advertisements on their websites.[1]   (Trial Tr. Jan. 21, 2014 PM at 68:17-20 (Trinh).) Google intended its customers to use DoubleClick to "serve advertisements alongside content and services," much like Mr. Goldberg's description of the asserted claims.   (Trial Tr. Jan. 22, 2014 AM at 40:6-14 (Bellack).)   In the 2007 and 2009 lawsuits, Beneficial sued Google and a Google subsidiary, Youtube, (among others) for infringing the '702 and '943 Patents respectively.   (Trial

---

[1]  DoubleClick used to be a separate company before it was acquired by Google in 2008.   (Trial Tr. Jan. 21, 2014 PM at 69:1-11 (Trinh).)

Tr. Jan. 21, 2014 PM at 63:9-16 (Trinh).)   According to Mr. Trinh, DoubleClick (the product) was part of those prior lawsuits because Youtube was then using DoubleClick to provide advertisements on its website.   (*Id.* at 68:1-9.)   During the discovery process in such prior lawsuits, DoubleClick (the company) provided documentation to Beneficial, and Beneficial also examined Google engineers who worked with DoubleClick.   (*Id.* at 68:10-15.)   Google and Beneficial eventually settled the 2007 and 2009 lawsuits in 2010.   (*See* PTX 1; Trial Tr. Jan 21, 2014 PM at 74:12-22 (Trinh).)   Google, however, made no major changes in the way it teaches its customers how to use DoubleClick after the 2009 lawsuit.   (Trial Tr. Jan. 22, 2014 AM at 40:24-41:3 (Bellack).)

The evidence establishes that Google had knowledge of both the '702 and the '943 Patents no later than the time Beneficial initiated the 2009 lawsuit.[2]   By 2009, Google had acquired DoubleClick (the company) and started offering DoubleClick as a Google product for its customers to use in displaying ads on their websites.   In both the 2007 and 2009 lawsuits, Beneficial accused Youtube, a Google subsidiary, of infringing the '702 and '943 Patents, based at least in part on Youtube's presentation of ads via DoubleClick.   DoubleClick was the subject of extensive discovery in those prior lawsuits.   Also, certain Google engineers who were then working with DoubleClick were examined by Beneficial during the discovery process. Accordingly, since at least the 2009 lawsuit, Google knew that, when a customer, such as Youtube, used DoubleClick for its intended purpose, i.e., to display ads on the customer's website, such use would be accused of infringing both the '702 and the '943 Patents.   In other words, since at least the 2009 lawsuit and based on Beneficial's infringement accusations against Youtube, Google knew that using DoubleClick to display ads on a customer's website was "both patented and

---

[2] The '702 Patent was asserted in the 2007 lawsuit and the '943 Patent was asserted in the 2009 lawsuit.

infringing." *See Golden Blount*, 365 F.3d at 1061.   Accordingly, a reasonable jury could have found that Google possessed the requisite knowledge that DoubleClick was "especially made or especially adapted" for use in infringing Beneficial's patents.

Beneficial argues that to satisfy the "especially made" requirement of contributory infringement, Google must prove that DoubleClick was especially made to infringe each and every limitation of Beneficial's patents.  (*See* Dkt. No. 541 at 21.)  Beneficial failed to provide any authority, and the Court is aware of none, which imposes such a rigid requirement on the "especially made" prong of the test for contributory infringement.   Indeed, in *Pollock v. Thunderline-Z, Inc*., the Federal Circuit held that the accused infringer's knowledge that the component it supplied "was used in an infringing combination…is enough to establish contributory infringement."   *Pollock v. Thunderline-Z, Inc.*, 215 F.3d 1351 (Fed. Cir. 1999); *see also Preemption Devices, Inc. v. Minnesota Min. & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986) (knowledge that the components would be used in an infringing system was held sufficient to satisfy the "especially made" requirement).   Here, Google went through two prior lawsuits where Beneficial accused its subsidiary (Youtube) of infringing the '702 and '943 Patents, based at least in part on Youtube's use of DoubleClick.   Therefore, Google knew that, if it provided DoubleClick to another customer without alteration, that customer would use DoubleClick in an "infringing combination," just as Beneficial had alleged.   *See Pollock*, 215 F.3d 1351.   Despite such knowledge, Google continued providing DoubleClick to more customers and did not alter the way it instructed its customers to use DoubleClick.   Such is sufficient to establish Google's knowledge that DoubleClick was "especially made or adapted" to infringe Beneficial's patents. *See id*.

13

### b.      Substantial non-infringing uses

Beneficial next contends that Google has failed to introduce sufficient evidence demonstrating that DoubleClick has no "substantial non-infringing use."   As noted above, Google bears the burden to prove that its customers' use of DoubleClick constitutes contributory infringement by Google, and accordingly bears the burden to prove that DoubleClick has no substantial non-infringing uses.   Once Google makes out a *prima facie* showing that DoubleClick is not "suitable for substantial non-infringing use," the burden shifts to Beneficial to "introduce some evidence that end-users *actually*" used DoubleClick in a non-infringing way.   *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006) (emphasis added).

Here, Google cites Beneficial's infringement contentions, which identified 123 websites. All these websites used DoubleClick to display ads, and all of them, according to Beneficial's own admission, infringed each and every limitation of the asserted patents.   (*See, e.g.*, PTX 8.) Google's witness Mr. Trinh testified that Beneficial's infringement contentions describe precisely "what DoubleClick did and what [Google] told [its] customers to do with DoubleClick."   (Trial Tr. Jan. 21, 2014 PM at 93:25-94:7, 167:19-25 (Trinh).)   Google's witnesses further testified that Google intended its customers to use DoubleClick to "serve advertisements alongside content and services," which is a "distinguishing" feature of the asserted patents as identified by Mr. Goldberg, the inventor.   (Trial Tr. Jan 22, 2014 AM at 61:5-11, 66:11-25 (Goldberg); Trial Tr. Jan. 22, 2014 AM at 40:6-14 (Bellack); Trial Tr. Jan. 21, 2014 PM at 95:18-21 (Trinh).)   Based on the above, a reasonable jury could have found that, per Google's instructions, its customers only used DoubleClick in an infringing fashion as described in detail in Beneficial's infringement contentions.   Google has made out a *prima facie* showing that DoubleClick is not "suitable for

substantial non-infringing use."

> i.       *Using DoubleClick to serve ads to users who have disabled cookies*

To rebut Google's *prima facie* showing, Beneficial's expert Dr. Kevin Almeroth presented three purported "substantial non-infringing uses" of DoubleClick. First, Dr. Almeroth testified that "DoubleClick can be used to serve ads to users who have disabled cookies." (Trial Tr. Jan. 22, 2014 PM at 89:7-16 (Almeroth).) According to Dr. Almeroth, such is a non-infringing use to Claim 53 of the '702 Patent, and Claims 49 and 67 of the '943 Patent. (*Id.*) This is because these claims all require that "[o]n the subsequent network communication, the responsive information is provided back to" the service providing network accessible node ("SPNAN"). (*Id.* at 38:23-39:5.) Dr. Almeroth explained that, in order for the responsive information to be transferred from the user back to the website as claimed, a cookie needs to be established. (*Id.* at 40:15-24.) As such, Dr. Almeroth opined that using DoubleClick to serve ads to users who have disabled cookies is a substantial non-infringing use.

Google's witness Mr. Bellack admitted that DoubleClick "can be used to serve ads on websites that don't use cookies." (Trial Tr. Jan. 21, 2014 PM at 202:1-3 (Bellack).) However, he testified that he personally did not know of any Accused Google Customers who disable cookies, because a lot of features of DoubleClick "stop working without the cookies." (*Id.* at 180:3-13; Trial Tr. Jan. 22, 2014 AM at 38:8-23 (Bellack).) Google's expert Dr. Peter Alexander also testified that, based on his own opinion and knowledge, "it's an extremely small percentage of users who disable cookies." (Trial Tr. Jan. 22, 2014 AM at 97:7-13 (Alexander).) Based on this testimony, a reasonable jury could have found that, although DoubleClick *can* be used in a non-infringing way, i.e., to serve ads to users who have disabled cookies, such use is clearly less

15

than "substantial." Accordingly, a reasonable jury could have found that serving ads to users who have disabled cookies is not a *substantial* non-infringing use of DoubleClick.

ii.        *Using DoubleClick to serve ads to a website that does not store user identification*

Second, Dr. Almeroth testified that serving ads to a website that does not store user identification or serving ads to users that do not provide user identification is another substantial non-infringing use of DoubleClick. (Trial Tr. Jan. 22, 2014 PM at 56:19-57:18 (Almeroth).) Claim 53 of the '702 Patent is an apparatus claim which requires, among other things, that the apparatus (i.e., a website) contain a "store for storing user identification." (PTX 29, Col. 39:49.) At trial, Dr. Almeroth identified an actual website, MomsWhoThink, which used DoubleClick to serve ads without providing a function for user registration. (Trial Tr. Jan. 22, 2014 PM at 55:3-56:3 (Almeroth).) Thus, MomsWhoThink did not contain a "store for storing user identification." Dr. Almeroth further testified that there are other websites like MomsWhoThink, which are "informational sites that don't require registration and just allow a user to access information." (*Id.* at 57:15-18.) Dr. Almeroth also testified that, even with websites which do collect user identification information, many users would go to such websites without providing any information about themselves. (*Id.* at 57:6-8.)

Google's witness Mr. Bellack agreed that DoubleClick can be used to serve ads on a website that "does not store information that's used to identify a user," on a website that does not ask a user any information about themselves, and when users don't provide their identification information. (Trial Tr. Jan. 21, 2014 PM at 201:4-7, 12-19 (Bellack).) However, Mr. Goldberg, inventor of the asserted patents, testified that, although he was "constantly on the Internet" looking for "websites that appear to be violating the patent[s]," he was "personally…not aware of any

16

website that shows advertising where the underlying web server stores no data about its user[s.]" (Trial Tr. Jan. 22, 2014 AM at 57:11-21, 73:25-74:7 (Goldberg).)   Indeed, by Beneficial's own admission, each of the 123 websites identified in its infringement contentions had a "store for storing user identification."   (*See* PTX 8 at A6-A9.)

The Court finds that serving ads to users who do not provide identification information is not necessarily a non-infringing use.   Claim 53 of the '702 Patent is an apparatus claim which requires "a store for storing user identification."   So long as the underlying website is "reasonably capable" of collecting and storing user identification, it may be found to infringe such limitation of Claim 53, even if certain users ultimately decline to provide their information.  *See Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001); *Z4 Technologies, Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1350 (Fed. Cir. 2007) ("[I]nfringement is not avoided merely because a non-infringing mode of operation is possible.").

On the other hand, using DoubleClick to serve ads on a website that does not ask users information about themselves, and thus has no "store for storing user identification" is indeed a non-infringing use.   Both sides appear to agree on this point.   They diverge, however, as to whether such use is "substantial."   "[N]on-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental."  *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362 (Fed. Cir. 2012) (citation omitted).   In assessing whether a use is substantial, the fact-finder may consider "the use's frequency,…the use's practicality, the invention's intended purpose, and the intended market."  *Id.*   Here, Beneficial presented some favorable evidence, such as MomsWhoThink's non-infringing use of DoubleClick, which demonstrates that such use is not "impractical."  *See Toshiba*, 681 F.3d at 1362.   In opposition,

however, Google presented substantial evidence establishing that the purported non-infringing use is at least "unusual" or "occasional."  *See id.*  Mr. Goldberg, inventor of the asserted patents, testified that, despite his constant monitoring of the relevant market of the invention, he personally was not aware of any website which shows advertising without storing user data.   While Dr. Almeroth identified a single website (MomsWhoThink) which used DoubleClick without having a "store for storing user identification," Google presented and relied upon Beneficial's infringement contentions which identified 123 separate websites, all of which (by Beneficial's own admission) embodied this claim limitation.   A reasonable jury could have weighed Google's evidence demonstrating a very low frequency of the non-infringing use, against Beneficial's evidence of the practicality of such use, and concluded that Google has carried its burden of showing that the non-infringing use while occasional is not substantial.   *See id.*

### iii.        Non-infringing use to Claims 1, 49 and 67 of the '943 Patent

Lastly, Beneficial contends that *every* use of DoubleClick is a non-infringing use to Claims 1 and 49 of the '943 Patent, because, under the Court's claim construction, ads presentation by DoubleClick does not "overlap[] with" the display presentation, as required by these claims. (PTX 30, Col. 30: 45-46.)   Beneficial made a similar argument regarding Claim 67 of the '943 Patent, asserting that every use of DoubleClick is a non-infringing use to such claim because the following claim limitations are not met: (1) "said first advertising related information (*e.g.*, ad tag) replaceable with alternative information without changing a content: (i) of the particular display presentation P1, and (ii) to which the user input is responsive for the service"; (PTX 30, Col. 40: 8-12.) and (2) "an action by the user, in response to an advertisement (*e.g.*, clicking on a link in an ad)…results in data being transmitted: (a) from said user node, and (b) to a terminal destination

18

node of the Internet."  (PTX 30, Col. 40:22-28.)

Beneficial's argument regarding Claims 1, 49 and 67 of the '943 Patent is, in essence, an argument that, under the Court's claim construction, Google has not proved direct infringement of the claim limitations identified above.  Beneficial argues that Google has proffered no evidence establishing that these claim limitations are met.  This Court disagrees.  As explained above, Beneficial's complaint and infringement contentions are both party admissions which may properly serve as evidence of direct infringement.  The infringement contentions set forth in detail how each of the above claim limitations is practiced by the 123 websites Beneficial identified. (*See* PTX 8; PTX 9.)  Beneficial's own discovery responses confirm that the infringement contentions fully apply to Google's ad-presentation product (i.e., DoubleClick).  (*See* PTX 12 at 3.)  Beneficial now argues that the Court's subsequent claim construction invalidates certain of its earlier infringement contentions made without the benefit of the Court's construction.  For example, Beneficial cites to Mr. Bellack's testimony that, under the Court's construction of the term "overlapping," the "general way that DoubleClick works" is that ads do not overlap with services, and thus does not infringe the "overlapping" limitation of Claims 1 or 49 of the '943 Patent.  (Trial Tr. Jan. 22, 2014 AM at 19:5-18 (Bellack).)  However, the fact that infringement contentions were made without the benefit of the Court's claim construction does not diminish their evidentiary value as party admissions.  *See Vanmoor*, 201 F.3d at 1366 (the patentee's infringement contentions alone held sufficient to establish that the accused device embodied each and every limitation of the asserted claims).  A reasonable jury could have weighed Beneficial's infringement contentions against Mr. Bellack's testimony, and concluded that they believed what Beneficial had put in writing in an official court document, as opposed to Mr. Bellack's oral

19

testimony.   Under such circumstances, it is improper for this Court to replace the jury's finding with the contrary result, which Beneficial now promotes.   *See E.E.O.C.*, 731 F.3d at 451. Therefore, the Court finds that a reasonable jury could have concluded that the claim limitations of Claims 1, 49 and 67 of the '943 Patent, as identified above, have been satisfied by the Accused Google Customers' use of DoubleClick.   Accordingly, Beneficial's argument that every use of DoubleClick is a non-infringing use of such claims must fail.

In summary, the Court finds that Google has made a *prima facie* showing that DoubleClick is substantially used only in an infringing fashion.   While Beneficial has identified two specific non-infringing uses (i.e., serving ads to users who have disabled cookies; serving ads to a website that does not store user identification), Google proffered sufficient evidence in opposition to convince a reasonable jury that such uses are not substantial.   Finally, Beneficial's argument that every use of DoubleClick is a non-infringing use to Claims 1, 49 and 67 of the '943 Patent fails as noted above.   Therefore, a reasonable jury could have concluded that Google has met its burden to demonstrate that DoubleClick has no substantial non-infringing use.

To recount the Court's findings regarding contributory infringement, the Court finds that a reasonable jury could have concluded that (1) the Accused Google Customers' use of DoubleClick would constitute direct infringement of Beneficial's patents, but for a license; (2) Google knew DoubleClick was "especially made or adapted" to infringe Beneficial's patents; and (3) DoubleClick has no substantial non-infringing use.   Therefore, a reasonable jury could have found that, by supplying DoubleClick to its customers for ads presentation, Google would contribute to the infringement of Beneficial's patents, but for the license.   Accordingly, the Court **DENIES** Beneficial's motion for judgment as a matter of law that Google failed to prove its

customers' use of DoubleClick constituted contributory infringement by Google but for the license.

## IV.     Induced Infringement

Beneficial next argues that Google has failed to meet its burden of proving that its customers' use of DoubleClick would constitute induced infringement by Google, but for the license.   Specifically, Beneficial asserts that Google failed to present substantial evidence that it actively encouraged its customers to infringe the asserted claims, or that it specifically intended its customers to infringe Beneficial's patents.

A finding of inducement requires both knowledge of the existence of the patent and "knowledge that the induced acts constitute patent infringement."   *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367 (Fed. Cir. 2013).   The "intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement."   *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).   Rather, inducement requires "that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."   *Id.*   Accordingly, inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities.   *Id.*

Beneficial argues that Google has failed to present sufficient evidence establishing its intent to induce infringement.   According to Beneficial, to prove such requisite intent, Google must present "substantial evidence that it induced infringement of *each limitation* of the asserted claims."   (*See* Dkt. No. 541 at 27.)   Beneficial contends that Google only instructed its customers regarding one limitation of the claims, i.e., how to insert an ad tag into the HTML code transmitted

to a user such that the user is presented with ads and content on the same page.   Based on such, Beneficial urges the Court to find, as a matter of law, that Google has failed its burden to prove the intent requirement for induced infringement.

Beneficial relies on *epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*, which in turn relied on the Federal Circuit's opinion in *MercExchange, LLC v. eBay, Inc*, for the proposition that one who "encouraged activities related to some but not all limitations of the asserted claims" cannot be held liable for active inducement.   *epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608, 635 (E.D. Tex. 2007); *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1332 (Fed. Cir. 2005) *vacated and remanded on other grounds sub nom. eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).   In *MercExchange*, on-line auction website eBay was accused of actively inducing another entity to infringe the plaintiff's patents which were directed at conducting on-line sales.   *MercExchange*, 401 F.3d at 1325-26.   There, the plaintiff presented the following evidence attempting to establish eBay's intent for inducement: (1) eBay invested in the accused direct infringer and had an "observer" on such entity's board; (2) eBay granted such entity the right to post goods in volume on eBay's website; (3) eBay was the "primary venue" for such entity's sales; and (4) eBay supplied engineers to work with the accused direct infringer to facilitate posting goods for sale through eBay.   *See id.* at 1332.   The Federal Circuit held that such evidence was insufficient to demonstrate eBay's intent to induce infringement.   *See id.*   The Federal Circuit noted that, while eBay might have encouraged the alleged direct infringer to post goods for sale on eBay's website, such act was "relevant to only one limitation of the claims."   *Id.*   Finding no evidence in the record showing that eBay intended to induce any other limitations of the asserted claims, the Federal Circuit reversed the portion of the judgment finding

22

eBay liable for induced infringement.   *Id.* at 1333.

*MercExchange*, however, is readily distinguishable from the instant case.   There, all eBay did was to allow the accused direct infringer to post goods on its website, which acts pertained to only one limitation of the asserted claims.   *See id.* at 1332.   In contrast, Google provided to its customers the entire DoubleClick product, which had been accused of infringing *each and every* limitation of the asserted claims in Beneficial's 2007 and 2009 lawsuits.   As a defendant in both lawsuits, Google was well aware of Beneficial's infringement accusations.   Despite such knowledge and despite the fact that DoubleClick had never been cleared of infringement, Google continued supplying the same DoubleClick product to its customers and instructed the customers to use the product in the exact same way as prior to the 2009 lawsuit.   Among other things, Google instructed its customers to use DoubleClick to "serve advertisements alongside content and services," which is a "distinguishing" feature of the asserted patents as identified by the inventor.   (*See* Trial Tr. Jan 22, 2014 AM at 61:5-11, 66:11-25 (Goldberg); Trial Tr. Jan. 22, 2014 AM at 40:6-14 (Bellack); Trial Tr. Jan. 21, 2014 PM at 95:18-21 (Trinh).)   Based on this evidence, a reasonable jury could have concluded that Google possessed the specific intent to induce infringement and did in fact encourage its customers to use DoubleClick in an infringing fashion.

Beneficial next argues that Google could not have intended to induce infringement because Google believes that its DoubleClick ad tags do not satisfy the limitations of the asserted claims. Beneficial cited the following trial testimony of Mr. Trinh:

Q. Sure. One of the things that Google asserted, when the lawsuit was filed against

them by Beneficial, was that that Claim Limitation (h) that I put on the board

several times that requires the programmatic elements for combining advertising-related information with search-related information, Google's position has always been that they provide ad tags, and those ad tags do not meet the claim language advertising related information, true?

A. Correct.

Q. And Google maintains that today, right?

A. Correct.

(Trial Tr. Jan. 21, 2014 PM at 139:21-140:7 (Trinh).)

Q. Sure. Google has never formed the opinion that based on their analysis of the claim language and their analysis of the way their system works that providing DoubleClick to any of its customers constitutes indirect infringement by Google, right?

A. Correct. We have never reached that.

(*Id.* at 143:12-18.)

Mr. Trinh, however, also testified as follows regarding Google's belief of whether or not DoubleClick infringed the asserted patents:

A. By suing our customers for the use of our products, they deprived -- they deprived us of the peace and the resolution that we bargained for. They – *if these products actually infringed, they would be licensed*. If they weren't, there'd be no reason to sue [the customers].

(*Id.* at 100:21-101:1 (emphasis added).)

24

Q. And you read through that language before, but I'd like to particularly draw your attention to the last part where it says: Would constitute direct or indirect infringement of a claim of the licensed patents by Defendants or affiliates but for the license. Do you have that in mind: Would? Starting with: Would?

MS. ANDERSON: If we could have that highlighted. Thank you.

A. Yes, ma'am.

Q. (By Ms. Anderson) And going on to the end. *Does this language I've identified have any relationship one way or another with the answers you were giving to the questions about Google's mindset as to whether or not it believed any of our customers infringed?*

A. Yes, ma'am. So like I said, this -- this entire agreement was about resolving the disputes between the parties, and -- and this language is there because the – *the reason Beneficial would sue us or our partners is for direct or indirect infringement of their patents.*

Q. Okay. And what, if any, relationship does the word would or but for this license have to the -- to the answers you are giving to questions about Google's mindset as to whether or not there was infringement?

A. Yes, ma'am. It was never my -- *it was never my mindset that a customer would have to go through a -- a legal process and get a finding of infringement before it was licensed.*

(*Id.* at 153:3-154:8 (emphasis added).)

Mr. Trinh's testimony regarding Google's belief of whether or not DoubleClick infringed

25

the asserted claims was not entirely consistent throughout the trial. On the one hand, he testified

that it has always been Google's position that providing DoubleClick ad tags does not meet the

advertising-related claim limitations. (Trial Tr. Jan. 21, 2014 PM at 139:21-140:7 (Trinh).) On

the other hand, he appeared to suggest that Beneficial suing the Accused Google Customers alone

is enough proof to establish actual infringement. (*See, e.g.*, *id.* at 100:23-24 ("if these products

actually infringed, they would be licensed."); 153:22-24 ("the reason Beneficial would sue us or

our partners is for direct or indirect infringement of their patents."); 154:5-8 ("it was never my

mindset that a customer would have to go through a legal process and get a finding of infringement

before it was licensed.").) Mr. Trinh's testimony did raise some doubt about Google's alleged

intent to induce infringement. *See Commil*, 720 F.3d at 1367-68 ("Under our case law, it is clear

that a good-faith belief of non-infringement is relevant evidence that tends to show that an accused

inducer lacked the intent required to be held liable for induced infringement."). Judgment as a

matter of law, however, is inappropriate here. As noted above, Google presented substantial

evidence demonstrating its specific intent to induce infringement, including its continued sale of

the same product that had been accused of infringing the '702 and '943 Patents in two prior

lawsuits. While "a good-faith belief of non-infringement" is relevant evidence tending to negate

an accused inducer's intent to induce infringement, nothing in the record suggests that Google's

belief was formed in good faith.[3] *See id.* Beneficial has not established that lack of intent to

induce infringement is the only reasonable conclusion that can be drawn from these facts.

Finally, Beneficial argues that Google's instruction regarding DoubleClick cannot

constitute inducement, as a matter of law, because that instruction can also encourage

---

[3] For example, there is no evidence showing that Google ever obtained an opinion of counsel finding non-infringement.

non-infringing acts.   Beneficial relies on *Warner-Lambert*, where the Federal Circuit rejected the patentee's argument that intent to inducement infringement could be inferred from the fact that 2.1% or fewer than "1 in 46 sales" of the accused product were for infringing uses. *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003).   The Federal Circuit held that "[e]specially where a product has substantial non-infringing uses, intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent."   *Id.*   Beneficial's reliance upon *Warner-Lambert* rests on its claim that DoubleClick has substantial non-infringing uses.   However, as explained above, the Court finds that Google presented sufficient evidence for the jury to conclude that DoubleClick has no substantial non-infringing uses.   Beneficial's reliance on *Warner-Lambert* is misplaced.

Further, Federal Circuit cases more recent than *Warner-Lambert* have clarified that, "even where a product has substantial non-infringing uses…liability for active inducement may be found where evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement." *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1059 (Fed. Cir. 2010).   In *AstraZeneca*, the Federal Circuit found that intent to induce infringement could be inferred where the accused inducer was on notice that the product's proposed label could cause "potential infringement problems," but nevertheless decided to proceed with the label.   *Id.   AstraZeneca* demonstrates that, to prove intent to induce infringement, the Court need not find that the accused inducer's acts would cause infringement in every instance, so long as those acts "would inevitably lead some consumers to practice the claimed method."   *Id.* at 1060; *see also Genentech, Inc. v. Trustees of University of Pennsylvania*, 871 F. Supp. 2d 963, 978 (N.D. Cal. 2012) (same).   Here, much like

the accused inducer in *AstraZeneca*, Google was well aware that DoubleClick had been accused of infringing the '702 and '943 Patents, based on, among other things, Beneficial's claims against Youtube in the 2007 and 2009 lawsuits.   Google, however, continued supplying DoubleClick without any substantive alterations.   Such conduct goes well beyond the mere knowledge that DoubleClick "may be put to infringing uses," and instead demonstrates that Google's "actions [were] directed to promoting infringement."   *Id.* at 1059.   This is true even while acknowledging that DoubleClick may have some non-infringing uses.   *See id.*   The Court disagrees with Beneficial's contention that it should find, as a matter of law, that Google lacked the intent to induce infringement.

In summary, the Court finds that a reasonable jury could have concluded that Google possessed the specific intent to induce infringement.   Beneficial has failed to persuade the Court otherwise.   Accordingly, the Court **DENIES** Beneficial's motion for judgment as a matter of law that Google has failed to prove its customers' use of DoubleClick would constitute induced infringement by Google, but for the license.

## V.   CONCLUSION

For the reasons set forth above, the Court finds that Google has presented substantial evidence demonstrating that its customers' use of DoubleClick would constitute indirect infringement (both contributory and induced infringement) by Google, but for the license.   Under the terms of the Settlement Agreement, once such condition has been satisfied, the Accused Google Customers are licensed to use Beneficial's patented technologies.   Therefore, the jury's verdict that Beneficial breached the Settlement Agreement by bringing the instant lawsuit against the Accused Google Customers must stand.   The Court hereby **DENIES** Beneficial's motion for

judgment as a matter of law in its entirety.[4]   (*See* Dkt. No. 541.)


**So Ordered and Signed on this**

**Aug 21, 2014**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[4] By the instant motion, Beneficial also seeks a judgment as a matter of law that Google is not entitled to any declaratory relief.   (*See* Dkt. No. 541 at 32-33.)   No declaratory relief is included within or provided by means of the jury's verdict.   (*See* Dkt. No. 514.)   The Court will address such issue in a separate opinion, together with Google's motion for entry of judgment (Dkt. No. 540).